## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE,<br><br>*Plaintiff,*<br><br>v.<br><br>PRINCETON UNIVERSITY, ET AL.,<br>*Defendants.* | Civil Action No. 3:19-cv-07853 BRM-TJB<br><br>Return Date: September 16, 2019 |

## BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND .............................................................................4

LEGAL STANDARD .......................................................................................8

ARGUMENT ....................................................................................................10

I.  Doe's Complaint Fails to State a Claim for Relief Under Title IX. ..................10

    A.  Doe has failed to plead facts sufficient to support an erroneous outcome claim. ...............................................................................11

        1.  Doe fails to allege facts sufficient to cast articulable doubt on the Panel's Decision. ................................................................12

        2.  Doe fails to allege any facts that plausibly demonstrate any causal connection between the Panel's Decision and gender bias. .........................................................................................16

    B.  Doe has failed to plead facts sufficient to support a claim of selective enforcement. ...................................................................22

II.  Doe's Complaint Fails to State a Claim for Negligence. ................................24

    A.  Doe's negligence claim against Princeton and the Individual Defendants is barred by New Jersey's Charitable Immunity Act. ...........24

    B.  Doe's negligence claim fails because he has not alleged the breach of a duty of care owed to him by Princeton or the Individual Defendants. .............................................................................26

III.  Doe's Complaint Fails to State a *Respondeat Superior* Claim as a Matter of Law. ..........................................................................................29

IV.  Doe's Complaint Fails to State a Viable Contract Claim. ..................................30

    A.  Doe has not alleged the breach of an express contract. ........................30

    B.  Doe has not sufficiently alleged the breach of an implied contract. ...............................................................................36

C.      Doe's claim for breach of an implied covenant of good faith and
        fair dealing fails...........................................................................................37

V.    Doe's Complaint Fails to State a Common Law Due Process or
      Fundamental Fairness Claim.................................................................................38

VI.   Doe's Complaint Should Be Dismissed With Prejudice. ....................................40

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................3

*Austin v. Univ. of Oregon*, 205 F. Supp. 3d 1214 (D. Or. 2016), *aff'd*, 2019 WL
   2347380 (9th Cir. June 4, 2019) .............................................................. 20, 21

*Baer v. Chase*, 392 F.3d 609 (3d Cir. 2004) ................................................................37

*Barker v. Our Lady of Mount Carmel School*, 2016 WL 4571388 (D.N.J. Sept. 1,
   2016) ...............................................................................................................30

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................9

*Bieker v. Cmty. House of Moorestown*, 177 A.2d 37 (N.J. 2001) .............................25

*Booker v. Lehigh Univ.*, 800 F. Supp. 234 (E.D. Pa. 1992) .....................................27

*Carter v. Reynolds*, 815 A.2d 460 (N.J. 2003) .........................................................29

*Chemo Iberica, S.A. v. Betachem, Inc.*, 2016 WL 865734 (D.N.J. March 7, 2017)...............36

*Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999) .......................13

*Doe v. Case W. Reserve Univ.*, 2015 WL 5522001 (N.D. Ohio Sept. 16, 2015)................17

*Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875 (N.D. Ohio 2017) .........................................19

*Doe v. Columbia College Chicago*, 299 F. Supp. 3d 939 (N.D. Ill. 2017)........................ 21, 27

*Doe v. Cummins*, 662 F. App'x 437 (6th Cir. 2016) .........................................................passim

*Doe v. N. Michigan Univ.*, 2019 WL 2269721 (W.D. Mich. May 28, 2019).......................21

*Doe v. Oberlin College*, 2019 WL 1439115 (N.D. Ohio Mar. 31, 2019) ....................... 18, 21

*Doe v. Princeton Univ.*, 2018 WL 2396685 (D.N.J. May 24, 2018)..............................passim

*Doe v. Rider Univ.*, 2018 WL 466225 (D.N.J. Jan. 17, 2018) .......................................passim

*Doe v. Trustees of Boston Coll.*, 892 F.3d 67 (1st Cir. 2018) ...................................28

*Doe v. Univ. of Arkansas-Fayetteville*, 2019 WL 1493701 (W.D. Ark. Apr. 3, 2019) .... 9, 12

*Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586 (S.D. Ohio 2016) ..................................... 20

*Doe v. Univ. of Colo., Boulder through Bd. of Regents of Univ. of Colo.*, 255 F. Supp. 3d 1064 (D. Colo. 2017) ........................................................................................ 19, 21

*Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984 (D. Minn. 2017) ................................... 19

*Doe v. Univ. of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009) ............................. 13, 17

*Doe v. W. New England Univ.*, 2017 WL 113059 (D. Mass. Jan. 11, 2017) ...................... 16

*Doe v. Wooster*, 243 F. Supp. 3d 875 (N.D. Ohio 2017) ................................................... 20

*First Resolution Inv. Corp. v. Seker*, 795 A.2d 868 (N.J. 2002) ....................................... 39

*Freeman v. Busch*, 349 F.3d 582 (8th Cir. 2003) ............................................................... 27

*Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635 (3d Cir. 1998) ................................ 36

*Gebser v. Lago Vista Indep. Sch. Distr.*, 524 U.S. 274 (1998) .......................................... 10

*Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618 (D.N.J. 2010) ............................................ 2

*Goss v. Lopez*, 419 U.S. 565 (1975) ................................................................................... 40

*Graber v. Richard Stockton Coll. of N.J.*, 713 A.2d 503 (N.J. Super. Ct. App. Div. 1998) ................................................................................................................................ 25

*Hahn v. OnBoard LLC*, 2009 WL 4508580 (D.N.J. Nov. 16, 2009) ................................. 38

*Harris v. Saint Joseph's Univ.*, 2014 WL 1910242 (E.D. Pa. May 13, 2014) ...................... 9

*Hernandez v. Don Bosco Preparatory High*, 730 A.2d 365 (N.J. Super. App. Div. 1999) ........................................................................................................................... 36, 39

*Johnston v. Univ. of Pitt. of Commonwealth Sys. of Higher Ed.*, 97 F. Supp. 3d 657 (W.D.Pa. 2015) ...................................................................................................................... 2

*Karasek v. Regents of Univ. of California*, 2016 WL 7406431 (N.D. Cal. Dec. 22, 2016) ................................................................................................................................ 10

*Lax v. Princeton Univ.*, 779 A.2d 449 (N.J. Super. Ct. App. Div. 2001) .......................... 25

*Ludlow v. Northwestern Univ.*, 125 F. Supp. 3d 783 (N.D. Ill. 2015)....................................21

*Mason v. Roman Catholic Archdiocese of Trenton*, 2019 U.S. Dist. Lexis 48212
   (D.N.J. March 22, 2019) ....................................................................................26

*Mcclelland v. Saint Peter's Univ.*, 2016 WL 96145 (D.N.J. Jan. 7, 2016) ...............................9

*McMahon v. Salmond*, 573 F. Appx. 128 (3d Cir. 2014) ........................................31

*Mittra v. Univ. of Med. and Dentistry of N.J.*, 719 A.2d 693 (N.J. Super Ct. App.
   Div. 1998) ............................................................................................30

*Moe v. Seton Hall Univ., et al.*, 2010 WL 1609680 (D.N.J. April 20, 2010) ..............passim

*Napolitano v. Trustees of Princeton Univ.*, 453 A.2d 263 (N.J. Super. Ct. App. Div.
   1982) ............................................................................................31, 32

*Nazzaro v. United States*, 304 F. Supp. 2d 605 (D.N.J. 2004) ...........................................25

*Nero v. Kan. St. Univ.*, 861 P.2d 768 (Kan. 1993) ..................................................27

*Nguyen v. Mass. Inst. of Tech., et al.*, 96 N.E.3d 128 (Mass. 2018).....................................27

*O'Connell v. State*, 795 A.2d 857 (N.J. 2002) ........................................................25

*Oakwood Labs., LLC v. Thanoo*, 2019 WL 399211 (D.N.J. Jan. 31, 2019)........................8

*Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994) ..........................8

*Pactiv Corp. v. Perk-Up, Inc.*, 2009 WL 2568105 (D.N.J. Aug. 18, 2009).........................37

*Pawlowski v. Delta Sigma Phi*, 2009 WL 415667 (Conn. Super. Ct. Jan. 23, 2009)...........28

*Plummer v. Univ. of Houston*, 860 F.3d 767 (5th Cir. 2017) ................................................15

*Poole v. Janeski*, 611 A.2d 169 (N.J. Super. Ct. Law Div. 1992) ........................................27

*Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548 (3d Cir. 2002)......................................2

*Rabel v. Ill. Wesleyan Univ.*, 514 N.E.2d 552 (Ill. Ct. App. 1987) ........................................28

*Romeo v. Seton Hall Univ.*, 875 A.2d 1043 (N.J. Super. Ct. App. Div. 2005)...................30

*Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184 (W.D.N.Y. 2013) ....................................23

*Ruff v. Bd. of Regents of Univ. of New Mexico*, 272 F. Supp. 3d 1289 (D.N.M. 2017) ............................................................................................... 9, 16

*S.M. v. United States*, 2016 WL 7374530 (D.N.J. Dec. 20, 2016) ............................. 25, 39

*Sahm v. Miami Univ.*, 110 F. Supp. 3d 774 (S.D. Ohio 2015) ...................................... 17, 21

*Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319 (D.N.J. 2015) ..........................................27

*Sapp v. Premier Educ. Group LP*, 2016 WL 6434137 (D.N.J. Oct. 28, 2016) ...................38

*Smith v. Kroesen*, 9 F. Supp. 3d 439 (D.N.J. 2014)............................................................28

*Tafuto v. N.J. Inst. of Tech.*, 2011 WL 3163240 (D.N.J. July 26, 2011).......................passim

*Tafuto v. N.J. Inst. of Tech.*, 2012 WL 1247145 (D.N.J. Apr. 13, 2012) .............................9

*U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383 (3d Cir. 2002) .......................................2

*Wade v. Kessler Inst.*, 798 A.2d 1251 (N.J. 2002) .............................................................37

*Yusuf v. Vassar Coll.*, 35 F.3d 709 (2d Cir. 1994) ..............................................................12

*Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646 (M.D. Tenn. 2018)........................16, 23, 24

**Statutes**

N.J.S.A. § 2A:53A-7(a)..................................................................................................... 24, 26

The Trustees of Princeton University, a not-for-profit educational corporation of the State of New Jersey ("Princeton" or "the University")[1] and Michele Minter, Regan Hunt Crotty, Joyce Chen Shueh, Walter Wright, Cole M. Crittenden, Kathleen Deignan, W. Rochelle Calhoun, Jill S. Dolan, and Sarah-Jane Leslie (the "Individual Defendants") (collectively, "Defendants"), by and through counsel, respectfully submit this Brief in Support of their Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **INTRODUCTION**

This lawsuit arises from a 2017 disciplinary proceeding in which Princeton investigated and adjudicated, pursuant to its Sex Discrimination and Sexual Misconduct Policy ("Policy"),[2] a complaint of misconduct filed against Plaintiff John Doe ("Doe") by a fellow student, Roe. Roe alleged conduct that resulted in the following charges against Doe: (1) Non-Consensual Sexual Penetration and/or (2) Non-Consensual Sexual Contact. *See* Compl. ¶124.

---

[1] Doe's Complaint is, in part, against "Princeton University." The proper party for actions involving the University is The Trustees of Princeton University.

[2] See Section 1.3 of the University's *Rights, Rules, Responsibilities* (2017 Edition) ("RRR"). Doe's contract-based claims are based on the RRR. *See, e.g.*, Compl. ¶¶141-54, 211-15. A complete copy of the 2017 RRR is attached as Ex. A to the Certification of Laurel Pyke Malson ("Malson Cert.").

1

Over a 10-week period, a panel appointed by the University's Title IX Coordinator ("the Panel")[3] met with Doe three times, interviewed eight additional witnesses suggested by Doe and Roe, and reviewed the evidence provided by Doe, Roe, and the witnesses. The Panel found Doe "not responsible" for the charge of Non-Consensual Sexual Penetration and "responsible" for the charge of Non-Consensual Sexual Contact. *Id.* ¶126; May 25, 2018 Decision Letter (the "Decision Letter") at 1 (Malson Cert., Ex. B).[4] As a sanction for Doe's misconduct, Princeton withheld Doe's undergraduate degree until January 2019—the equivalent of the "suspension" imposed on students found responsible for similar violations but who,

---

[3] The Panel, appointed by Defendant Minter (Vice Provost and Title IX Coordinator), consisted of Defendants Crotty (then Director of Title IX Administration), Shueh (Senior Associate Dean of Undergraduate Students), and Wright (Title IX Investigator).

[4] Doe expressly references, and relies upon in his Complaint, the Decision Letter and its attached May 17, 2018 Memorandum from the Title IX Panel (the "Panel Memo") (Malson Cert., Ex. C) explaining the Panel's decision. *See, e.g.*, Compl. ¶¶126-31. Accordingly, as "document[s] integral [to] or explicitly relied on in the complaint," they are properly considered on a motion to dismiss. *See Johnston v. Univ. of Pitt. of Commonwealth Sys. of Higher Ed.*, 97 F. Supp. 3d 657, 666 (W.D.Pa. 2015) (quoting *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n,* 288 F.3d 548, 560 (3d Cir. 2002) (allowing consideration of documents attached to motion to dismiss "if they are referred to in the plaintiff's complaint and are central to the claim"); *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (same, for "documents referenced in the [c]omplaint" upon which the complaint "relies, directly or indirectly"). Due to the confidential and sensitive nature of these documents, Defendants have moved to file portions of them under seal.

unlike Doe, had not already completed their degree requirements.[5] Consistent with the Policy, Princeton granted both Doe and Roe the opportunity to appeal the Decision to a review committee comprised of yet another group of senior administrators.[6] Doe appealed, and the committee upheld the Decision. Compl. ¶¶132-39.

In a further attempt to reverse Princeton's Decision, Doe filed this lawsuit seeking injunctive relief and money damages against the University alleging (1) violations of Title IX; (2) violations of common law due process/fundamental fairness; (3) breach of contract; (4) breach of implied/quasi-contract; (5) breach of the covenant of good faith and fair dealing; (6) negligence; and (7) *respondeat superior*. Doe's Complaint, however, fails to allege any plausible facts that support these claims. Reduced to their essence, Doe's allegations constitute nothing more than "threadbare recitals of [the] cause[s] of action's elements, supported by mere conclusory statements" and therefore should be dismissed. *Tafuto v. N.J. Inst. of Tech.*, 2011 WL 3163240, at *3 (D.N.J. July 26, 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Moreover, because Doe not only has failed to allege plausible facts sufficient

---

[5] The sanction, pursuant to 1.3.12.2 of the Policy, was determined by a different group of administrators—Defendants Deignan (Dean of Undergraduate Students) and Crittenden (Deputy Dean of the Graduate School).

[6] Doe's appeal was reviewed by Defendants Calhoun (Vice President for Campus Life), Dolan (Dean of the College), and Leslie (Dean of the Graduate School).

to support his claims, but has alleged facts and referenced documents that *refute* those claims, the Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

**The Alleged Assault.** Doe entered Princeton as an undergraduate in Fall 2014, and expected to receive his degree in June 2018. Compl. ¶80. Doe and Roe, a fellow student, dated on and off from Doe's sophomore year through his senior year. *Id.* ¶2. The incident giving rise to the misconduct proceeding, and Doe's claims in this litigation, took place in the early morning hours of November 4, 2017, when Roe alleged that Doe sexually assaulted Roe[7] in his dorm room. *Id.* ¶6. Although Doe and Roe both agreed they had attended a party on the evening of November 3 until approximately 3 am on November 4, *id.* ¶102, after which Doe returned to his room and Roe walked toward the library with some friends, their accounts diverged as to what followed thereafter. *Id.* ¶120; Panel Memo at 3.

Doe's and Roe's different accounts forced the Panel to undertake the "difficult" task of making credibility determinations as between their two stories. *Id.* at 2. Doe maintained that Roe never came to his room at all; that he had returned to his room and gone to sleep by himself because he had to travel early the following morning. Compl. ¶102. Roe maintained, by contrast, that after initially setting off

---

[7] Doe alleges in the Complaint that, during the course of the misconduct proceeding, Roe used either gender-neutral or male pronouns. *Id.* ¶2, n. 2. Defendants refer to Roe in all instances herein as "Roe," without the use of pronouns.

toward the library, Roe went to Doe's room to retrieve Roe's toothbrush which Roe left there the previous night, and the assault ensued. *Id.* ¶¶117, 120.

Based on corroborating documentary and electronic evidence and witness statements, the Panel credited Roe's account. Panel Memo at 3. A 3:11 am text message from Roe to Doe read "dude you have my toothbrush." *Id.* Two witnesses confirmed that, on the way to the library, Roe told them that Roe needed to retrieve Roe's toothbrush from Doe's room and walked off in that direction. *Id.* Moreover, "prox" records[8] show that Roe entered Doe's building at 3:14 am, that Doe's door was open from 3:19 to 3:20 am, and that Roe did not return to Roe's dormitory until noon the next day. Compl. ¶121; Panel Memo at 5.

Although Doe argued that Roe was never in his room that night, he conceded that he could not explain the electronic records showing Roe entering his building, and his room door opening, just minutes after Roe had texted about needing Roe's toothbrush, telling the Panel: "I understand what it looks like, but I don't know . . . I wish I knew but I don't." *Id.* at 6; *see also* Compl. ¶¶122-23.

According to Roe's account, when Roe arrived at Doe's room, Doe asked Roe to spend the night. Compl. ¶117. Once in bed, Doe kept trying to kiss and touch Roe under Roe's clothes, mounted Roe, and touched Roe's breasts under Roe's shirt,

---

[8] "Prox" records are electronic records detailing where and when individuals use their campus ID cards to access building security checkpoints.

despite Roe's repeated and insistent rejections. *Id.* Roe said that Doe "was touching and kissing [Roe's] face and neck, and touching [Roe's] breasts, legs, buttocks and genital area over their clothes." Panel Memo at 3. Roe estimated Roe told Doe to stop "at least ten times." *Id.* at 4.

Roe's story was further corroborated by an electronically time-stamped journal entry Roe made early the next morning, stating: "3:10 am: Stopped by [Doe's] room because he had my toothbrush. Ended up staying but also he was pretty drunk and it was kind of annoying and weird because he kept coming on to me and I was like dude can we not." *Id.* at 4.

Soon after the incident, Roe discussed it with other students, stating consistently that Doe had sexually assaulted Roe, and that Roe had told Doe "no" multiple times. Compl. ¶¶104-12. Doe and Roe maintained contact for several weeks, until Doe formally ended their relationship on December 5, 2017. *Id.* ¶103.

**Princeton's Investigation.** On March 19, 2018, Crotty informed Doe that Roe had complained that he had "engaged in non-consensual sexual contact with [Roe] in [his] dorm[ ] room," and invited Doe to an interview with the Panel. *Id.* ¶114. Over the course of its investigation, the Panel interviewed Doe three different times, and Roe twice. Panel Memo at 2. Following Doe's second interview, on or about April 27, 2018, Crotty provided Doe a case file with a letter formally notifying him that he was charged with (1) Non-Consensual Sexual Penetration, and (2) Non-Consensual Sexual Contact. Compl. ¶¶124-25. The Panel gave Doe time to review and

6

respond to the case file, including the "prox" records and Roe's electronic journal entries,[9] interviewed him a third time on May 14, 2018, and allowed him to submit a final statement addressing the evidence. Panel Memo at 2, 5-6, & 12.

On May 25, 2018, Deans Crittenden and Deignan informed Doe that the Panel unanimously had found him "not responsible" for Non-Consensual Sexual Penetration and "responsible" for Non-Consensual Sexual Contact. Compl. ¶¶126-29. The Panel's 13-page Memo, attached to the Decision Letter, outlined the evidence it had reviewed and the bases for its findings, noting the "difficult[y]" posed by the parties' competing accounts, but stating that it found Roe's "account to be more credible than that provided by [Doe]." Panel Memo at 9. In their May 25 letter, the Deans informed Doe that, after reviewing the Panel's findings, they had determined to withhold the awarding of his degree until January 2019. Decision Letter at 1. The Deans explained that they did not "take lightly the consequences of this decision," but were "persuaded that this outcome is both fair and commensurate with the seriousness of [Doe's] actions." *Id.* at 1, 2. Noting that "others who have engaged in non-consensual sexual contact of the sort you initiated have been suspended," the

---

[9] *See* Doe's June 8, 2018 Appeal (demonstrating that Doe had access to and reviewed Roe's electronical journal entries because he argued that the entries' "odd timestamps" affected their veracity) (Malson Cert., Ex. D). Doe expressly references and relies upon his Appeal in the Complaint and it is therefore properly considered on a motion to dismiss. *See* Compl. ¶¶132-34; *supra* at n.4.

Deans found the punishment "an equivalent sanction for seniors who have essentially completed all degree requirements." *Id.*

On June 8, 2018, Doe appealed the Panel's findings and the sanction, alleging procedural errors and purportedly new, relevant information.[10] Compl. ¶132. On June 26, 2018, the review committee denied Doe's appeal and upheld the Decision, noting that the Panel had reviewed the evidence submitted by Doe and Roe, conducted witness interviews, shared all collected information with Doe, and encouraged Doe to present any information he wished the Panel to consider prior to its credibility determination. *See* Compl. ¶¶135-36; June 26, 2018 Appeal Decision (Malson Cert., Ex. E).[11]

## LEGAL STANDARD

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept as true all the allegations in the Complaint and all reasonable inferences that can be drawn therefrom. *Oakwood Labs., LLC v. Thanoo*, 2019 WL 399211, at *1 (D.N.J. Jan. 31, 2019) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994)). However, the plaintiff must plead "enough facts

---

[10] Doe never states in his Complaint what the "new" information was. His Appeal shows that he was, in fact, requesting the review committee to re-weigh the same evidence, including the "prox" records, which is not appropriate under the RRR. *See* Doe's Appeal; RRR Section 1.3.12(3).

[11] Doe expressly references and relies upon the Appeal Decision in the Complaint and it is therefore properly considered on a motion to dismiss. *See* Compl. ¶¶135-36; *supra* at n.4.

to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). And, "a court will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations." *Tafuto*, 2011 WL 3163240, at *2. In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels or conclusions[.] . . . [F]ormulaic recitation of the elements of a cause of action will not do[.] . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Tafuto v. N.J. Inst. of Tech.* ("Tafuto II"), 2012 WL 1247145, *2 (D.N.J. Apr. 13, 2012) (citations omitted).

Courts—including this one—routinely have dismissed Title IX claims at the 12(b)(6) stage where, as here, the complaint is based on mere "labels" or "conclusions," fails to allege facts from which intentional discrimination plausibly could be inferred, or includes allegations which refute that the challenged conduct was motivated by gender bias. *See, e.g., Doe v. Univ. of Arkansas-Fayetteville*, 2019 WL 1493701, *12 (W.D. Ark. Apr. 3, 2019); *Doe v. Princeton Univ.*, 2018 WL 2396685, *7 (D.N.J. May 24, 2018) ("Princeton I"); *Doe v. Rider Univ.*, 2018 WL 466225, *12 (D.N.J. Jan. 17, 2018); *Ruff v. Bd. of Regents of Univ. of New Mexico*, 272 F. Supp. 3d 1289, 1302 (D.N.M. 2017); *Mcclelland v. Saint Peter's Univ.*, 2016 WL 96145, at *2-3 (D.N.J. Jan. 7, 2016); *Harris v. Saint Joseph's Univ.*, 2014 WL 1910242, at *4 (E.D. Pa. May 13, 2014); *Tafuto*, 2011 WL 3163240, at *5. Dismissal is similarly warranted here.

# ARGUMENT

## I.     Doe's Complaint Fails to State a Claim for Relief Under Title IX.

Dissatisfied with the Panel's Decision and the results of his subsequent appeal, Doe now alleges that the University's actions in resolving Roe's complaint were the result of unlawful gender bias in violation of Title IX. Doe asks the Court to second-guess those actions, alleging that Princeton "employ[ed] gender-based, pre-determined presumptions of [Doe's] guilt from the outset[;]" (Compl. ¶11) and, further, that Doe "was subjected to unfair and gender-biased[ ] treatment." *Id.* ¶7. But Doe pleads no *facts* that plausibly support these conclusory assertions.

To state a claim under Title IX of the Education Amendments of 1972, Doe must allege facts to "show that (1) [he] was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2)[ ] the program receives federal financial assistance; and (3) [his] exclusion was on the basis of [his] gender." *Tafuto*, 2011 WL 3163240, at *2 (citation omitted).[12] Courts evaluate

---

[12] Although Doe relies heavily on Title IX "guidance documents" issued by the U.S. Department of Education ("DoE") to establish his claim, *see* Compl. ¶¶31-59, such reliance is misguided and cannot circumvent Title IX's strict standards for civil liability. As the Supreme Court has stated: "We have never held that [ ] the implied private right of action under Title IX allows recovery in damages for violation of th[ese] sorts of administrative requirements." *Gebser v. Lago Vista Indep. Sch. Distr.*, 524 U.S. 274, 291-98 (1998). *See also Karasek v. Regents of Univ. of California*, 2016 WL 7406431, at *1-2 (N.D. Cal. Dec. 22, 2016) (DoE guidance "does not add requirements to applicable law, but provides information . . . about how [DoE] evaluates whether covered entities are complying with their legal obligations . . . [as distinguished from] [t]he standard in private lawsuits for monetary damages.").

Title IX claims under various theories, but all claims require plausible allegations that gender bias motivated the university's actions. *See, e.g.*, *Rider*, 2018 WL 466225, at *9.

Doe bases his claim of gender bias on two theories: (a) "erroneous outcome" of the disciplinary proceeding and (b) "selective enforcement," whereby he alleges that Princeton favors female respondents over male respondents in disciplinary proceedings. Both theories fail. Doe's claims of discrimination are premised on his disagreement with the Panel's credibility determinations and how it weighed conflicting evidence in finding him responsible for one of the charges (but not the other). Doe, however, fails to allege any *facts* that plausibly suggest the Panel's credibility determinations were motivated by gender bias—a *sine qua non* of any claim under Title IX. Accordingly his Title IX claims must be dismissed.

### A. Doe has failed to plead facts sufficient to support an erroneous outcome claim.

Doe alleges that he was "subjected to a blatantly flawed proceeding and erroneously found to be responsible for violating Princeton's [S]exual [M]isconduct Policy, and [that] gender was a motivating factor behind this erroneous outcome." Compl. ¶174. Such conclusory allegations are insufficient. To plead an erroneous outcome claim, a plaintiff must allege *facts* sufficient to: (1) "cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding;" and (2) demonstrate a "particularized causal connection between the flawed outcome and gender bias." *Doe v. Cummins,* 662 F. App'x 437, 452 (6th Cir. 2016) (citation omitted);

*Univ. of Arkansas-Fayetteville*, 2019 WL 1493701, at *12. In other words, Doe must allege *particular* facts that plausibly show he "was innocent and wrongfully found to have committed an offense," *and* that "gender bias was a motivating factor behind the erroneous finding." *Rider*, 2018 WL 466225, at *8 (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714-15 (2d Cir. 1994)). Doe's allegations fail on all accounts.

1. *Doe fails to allege facts sufficient to cast articulable doubt on the Panel's Decision.*

The key to alleging an actionable "articulable doubt" is "the record before the disciplinary tribunal;" if that record does not support such doubt, "the claim must fail." *Rider*, 2018 WL 466225, at *8 (citation omitted). Far from raising an "articulable doubt" about the outcome of the disciplinary proceeding, Doe's allegations amount to nothing more than his disagreement with how the Panel weighed the evidence before it. He alleges no facts to suggest that the Panel's findings were inaccurate, unsupported, or "doubtful." *See Univ. of Arkansas-Fayetteville*, 2019 WL 1493701, at *12 (finding plaintiff failed to sufficiently allege articulable doubt where he claimed that "the hearing panel made a credibility determination to decide which version of events to believe" but failed to allege facts to support that "his side of events [wa]s particularly more believable").

Doe's mere disagreement with the Panel's evidentiary assessments is not sufficient to warrant judicial review. As the Supreme Court has held, "courts should refrain from second-guessing the disciplinary decisions made by school

12

administrators." *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). Nor should they substitute their credibility and fact determinations for those made by the Panel. *See, e.g., Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 755 (E.D. Tenn. 2009) ("[T]he law does not allow th[e] Court to retry the [u]niversity's disciplinary proceeding.") (citation omitted).

This case in particular demonstrates why courts exercise restraint when reviewing university disciplinary proceedings. Doe acknowledges the thorough and searching steps the Panel took in conducting its lengthy investigation, Compl. ¶¶113-26, a process wholly compliant with the RRR. Moreover, the parties' dispute—even as to whether they were in the same room at the time of the alleged misconduct—forced the Panel to engage in a series of credibility determinations based on the evidence. In his interviews with the Panel, Doe did not acknowledge the interaction and try to explain his behavior; rather, his defense consisted entirely of his argument that Roe was never there, and thus there was no behavior to explain.[13]

To address such stark divergence in the parties' accounts, the Panel met on multiple occasions with Doe and with Roe; interviewed eight witnesses Doe and Roe had identified; reviewed hundreds of pages of documents they and their witnesses submitted; and followed up with Doe to review with him the evidence submitted by

---

[13] Indeed, the Panel explained that it had "noted that [Doe] could have chosen to acknowledge that [Roe] came to his room but that the sexual activity was consensual; however, [Doe] contended that [Roe] did not come to his room at all—a claim that the panel found to be demonstrably false." Panel Memo at 12.

Roe. In the end, the Panel, left to make a credibility determination, found Roe's account "more credible" because it was the only one supported by specific witness accounts *and* documentary evidence, including contemporaneous text messages and journal entries, eyewitness accounts, and electronic time-stamped security records, all of which were "entirely *consistent* with [Roe's] account and entirely *inconsistent* with Doe's account." Panel Memo at 2, 9-10 (emphasis in original).

Any alleged procedural "flaws" Doe now cites are insufficient to cast doubt on the Panel's determination as an "erroneous outcome." First, several of the flaws Doe alleges are wholly speculative "upon information and belief" allegations that, by themselves, are manifestly inadequate to withstand dismissal.[14] As a sister court recently stated in addressing a similar claim, the court must "weed out" such statements and "exclude[ ] [them] from its analysis," *Princeton* I, 2018 WL 2396685, at *4, so that Doe's allegations can be assessed based on the facts alleged, not mere speculation. Second, Doe relies heavily on a series of naked conclusions, including those based entirely on Doe's disagreement with the Panel's evidentiary determinations—allegations that the court also must disregard.[15] Third, Doe

_____

[14] *See e.g.,* Compl. ¶175(g) ("On information and belief, defendants failed to provide Plaintiff with all of the evidence gathered in the investigative process"); ¶175(n) ("On information and belief, the individual defendants were insufficiently and inadequately trained with respect to Title IX, and were partial and biased").

[15] *See e.g.,* Compl. ¶175(a) ("Roe's story was … given more weight in the final analysis and determination of what occurred that night"); ¶175(c) ("Defendants concluded that the prox card records support Roe's story and contradicted Plaintiff's").

14

complains that the Panel "disregarded" evidence in reaching its conclusion.[16] This, too, fails. As the Complaint and the documents it incorporates amply reveal, Doe has failed to identify any evidence the Panel "disregarded." Rather, the Panel reckoned with the inconsistencies in *both* parties' stories, weighed *both* sides based on the evidence it deemed material, and determined that Roe's version was more credible based on overwhelming corroborating evidence. Based on that review, the Panel concluded that the evidence was sufficient to find Doe responsible as to only *one* of the two charges.

Doe's claim that the Panel failed to credit "exculpatory" evidence that favored his account is simply another call for judicial second-guessing of the Panel's decisions as to materiality, relevance, and credibility—determinations properly reserved for university administrators charged with adjudicating student misconduct allegations.[17] For example, Doe cites the failure to interview his dorm neighbors or persons who saw him the following morning, but fails to allege what those witnesses would have said that would have overcome the overwhelming evidence corroborating Roe's

---

[16] *See, e.g.,* ¶175(e) ("Defendants wrote off/ignored all of the inconsistencies in Roe's claims"); ¶175(m) ("Defendants disregarded evidence that Roe had asked Plaintiff in the past to tape his door").

[17] Title IX does not establish Article III courts as supplemental appellate review panels for accused offenders who simply don't like the results of university proceedings. *See Plummer v. Univ. of Houston*, 860 F.3d 767, 772 (5th Cir. 2017) ("It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking in wisdom or compassion.").

account, and disputing his own. Roe's presence in Doe's dormitory was established by undisputed electronic evidence, and Doe does not allege that any of these witnesses could have addressed allegations of what transpired *inside* his dorm room, especially when he maintains Roe wasn't even there.

In short, Doe has alleged no facts that cast any "articulable doubt" on the Panel's process or its findings as a matter of law, and his erroneous outcome claim fails for this reason alone.

2.    *Doe fails to allege any facts that plausibly demonstrate any causal connection between the Panel's Decision and gender bias.*

Even were the Court to find that Doe alleged plausible facts casting some articulable doubt on the accuracy of the Panel's findings, Doe's erroneous outcome claim still would fail because Doe has failed to allege any plausible facts demonstrating that the outcome was the result of gender bias. Mere "[a]llegations of a . . . flawed proceeding that has led to an . . . erroneous outcome *combined* with a conclusory allegation of gender discrimination [are] not sufficient to survive a motion to dismiss." *Rider*, 2018 WL 466225, at *8 (citation omitted). Thus, to withstand dismissal, Doe must advance "*particularized factual allegations* to support a 'causal connection'" between the flawed outcome and gender bias, or that gender bias was a "motivating factor" behind the decision. *Doe v. W. New England Univ.*, 2017 WL 113059, at *30 (D. Mass. Jan. 11, 2017) (emphasis added); *see also Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 679 (M.D. Tenn. 2018); *Ruff*, 272 F. Supp. 3d at 1298.

Doe has alleged no such particularized facts here. Indeed, Doe alleges no facts *at all* of the type required to support a plausible Title IX claim—*i.e.* "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Cummins*, 662 F. App'x at 452. Significantly, Doe does not allege that the Panel or any University official made *any* biased statements, or engaged in *any* conduct that suggests that its investigation and adjudication of Roe's claims was infected with, or motivated by, gender bias. Courts routinely have dismissed erroneous outcome claims where there are no plausible allegations of such gender-biased statements or conduct by decision-makers. *See Rider*, 2018 WL 466225, at *8 (dismissing erroneous outcome claim where plaintiff failed to allege that university personnel made statements indicating gender bias); *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015) (same).

Nor does Doe allege facts plausibly demonstrating "patterns of decision-making that also tend to show the influence of gender." *Cummin*s, 662 F. App'x at 452. "[A] single case by an individual who was displeased by the result of a disciplinary proceeding cannot constitute a pattern of decision-making." *Doe v. Case W. Reserve Univ.*, 2015 WL 5522001, at *6 (N.D. Ohio Sept. 16, 2015) (quoting *Univ. of the S., 687 F. Supp. 2d at 756). Here again, Doe relies on speculation and "information and belief" allegations, with no factual predicate, that "Princeton has engaged in a pattern of unfair investigations and adjudications." Compl. ¶178.

Doe points to a 2017 campus survey showing that more male than female students felt that Princeton was not holding perpetrators of sexual misconduct accountable for their actions. He then alleges that it "*impl[ies]* that Title IX complaints against female students are pursued at a lower rate, and female respondents are found responsible at a lesser rate and sanctioned less harshly than male students accused of sexual misconduct." *Id.* ¶76 (emphasis added). The "implication" Doe asks the Court to draw, however, is pure speculation, is not based on facts, and, indeed, is not supported by Doe's own description of the survey.[18] Doe cannot escape dismissal by recasting survey results to try to meet Title IX's exacting requirements.[19]

Again "on information and belief," Doe alleges that "pressure" on Princeton to prosecute sexual misconduct demonstrates that the Panel's Decision was motivated by gender bias. *See, e.g.*, Compl. ¶¶176-77. Such allegations, that Princeton was "pressured" by the federal government's guidance and actions to adopt a bias against male respondents, are factually unsupported and materially misleading.[20] Even were

---

[18] As described, the survey does not explain *why* more male students held that belief, let alone indicate that it relates to female respondents being treated more favorably.

[19] *See Doe v. Oberlin College*, 2019 WL 1439115, at *6 (N.D. Ohio Mar. 31, 2019) (allegations regarding campus climate statistics and an OCR investigation insufficient to "support a particularized casual connection" to state a gender bias claim).

[20] Specifically, Doe points to a series of general guidance from the DoE— including FAQs, Q&As, and Dear Colleague Letters from OCR—as well as a 2014 Resolution Agreement entered into by Princeton with the DoE, and three ongoing OCR investigations, only one of which involved a female complainant and a male (Continued...)

Doe's allegations of "pressure" accurate, courts overwhelmingly have rejected such allegations as insufficient to raise an inference of gender bias under Title IX. As one court recently observed, "pressure from the federal government to investigate sexual assault allegations more aggressively—either general pressure exerted by the OCR's Dear Colleague Letter or specific pressure exerted by an investigation directed at the [u]niversity, or both—says nothing about the [u]niversity's alleged desire to find men responsible *because they are men.*" *Doe v. Univ. of Colo., Boulder through Bd. of Regents of Univ. of Colo.*, 255 F. Supp. 3d 1064, 1078 (D. Colo. 2017) (emphasis added); *see also Cummins*, 662 F. App'x at 452 (allegation that defendant adopted practice of being biased against male students accused of sexual assault to appease DoE insufficient to support plausible inference of gender bias); *Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875, 886-87(N.D. Ohio 2017) (same with respect to Dear Colleague Letter); *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 992 (D. Minn. 2017) ("[T]his Court joins the majority of federal courts in finding a general reference to federal pressure, by itself, [ ] insufficient to show gender bias.").[21] Or, as another court recently held, "it is not

_____

respondent. *Id* ¶¶31-79. All are gender-neutral, and none says anything about punishing or prosecuting males.

[21] Indeed, allowing Title IX claims to proceed on such a slim reed would threaten serious adverse ramifications for both victims of sexual assault and the courts. First, it would open the floodgates to protracted litigation by effectively rendering the courts an appellate tribunal for every sanctioned sex offender based on the mere possibility that the public interest in the promotion of safe campuses may have impacted the university's decision. And, second, by shifting the final decision-making process from universities to the courts, allowing such claims could have a chilling effect on (Continued...)

reasonable to infer that [a university] has a practice of railroading students accused of sexual misconduct simply to appease the Department of Education and preserve its federal funding. Plaintiffs' mere belief that Defendants acted with such ulterior motives is insufficient to state a claim for relief." *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 602 (S.D. Ohio 2016).

Universities must be able to conduct investigations and make decisions based on the weight of the evidence, without fear that the mere existence of public pressure to protect victims will subject them to legal action whenever they rule in a victim's favor. Therefore, "it stands to reason that evidence that a university has endeavored to comply with federal guidance on Title IX cannot support a violation of Title IX." *Doe v. Wooster*, 243 F. Supp. 3d 875, 887 (N.D. Ohio 2017); *see also Univ. of Cincinnati*, 173 F. Supp. 3d at 607 ("[A]ctions taken by [university] to comply with guidance to implement Title IX cannot have been in violation of Title IX.").

Like Doe, numerous students found responsible for sexual misconduct have sought judicial review, alleging gender bias based on "pressure." The courts have responded by imposing exacting standards on such claims, including the requirement that the alleged "pressure" *relate to the specific disciplinary investigation at issue. See, e.g.,*

_____

universities faced with sexual assault allegations. If the mere existence of such pressure were enough, those institutions would face the dilemma of "[e]ither [ ] com[ing] under public fire for not responding to allegations of sexual assault aggressively enough or [ ] open[ing] themselves to Title IX claims simply by enforcing rules against alleged perpetrators." *Austin v. Univ. of Oregon*, 205 F. Supp. 3d 1214, 1226-27 (D. Or. 2016), *aff'd*, 2019 WL 2347380 (9th Cir. June 4, 2019).

*Oberlin College*, 2019 WL 1439115, at *7-8 (finding no "particularized causal connection" because the plaintiff "did not allege that the circumstances pertaining to his . . . case were widely known on campus and subject to widespread debate . . . media attention or criticism").

Finally, perceived pressure, or even bias, in favor of sexual assault *victims* does not equate to actionable *gender* bias against male perpetrators. *See, e.g., Cummins*, 662 F. App'x at 453 (alleged procedural deficiencies showing bias in favor of sexual assault complainants "do[] not equate to gender bias because sexual-assault victims can be both male and female"); *Sahm*, 110 F. Supp. 3d at 778 ("[d]emonstrating that a university official is biased in favor of the alleged victims [ ], and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students").[22]

In short, it is well settled that universities "have a legitimate basis in complying with the Department of Education's instructions and ensuring that [the university] protects victims of sexual assault." *Doe v. Columbia College Chicago*, 299 F. Supp. 3d 939, 956 (N.D. Ill. 2017). "[I]f anything, the inference of pro-victim bias is an 'obvious alternative explanation,' that overwhelms any potential inference of gender bias." *Univ. of Colo., Boulder*, 255 F. Supp. 3d at 1079 (internal citation omitted). Accordingly,

---

[22] *Accord Ludlow v. Northwestern Univ.*, 125 F. Supp. 3d 783, 792 (N.D. Ill. 2015); *Austin*, 205 F. Supp. 3d at 1226; *Doe v. N. Michigan Univ.*, 2019 WL 2269721, at *9 (W.D. Mich. May 28, 2019).

Doe has failed to allege sufficient plausible facts to demonstrate that the Panel's Decision in his case was motivated by gender bias.

**B.    Doe has failed to plead facts sufficient to support a claim of selective enforcement.**

Doe also claims that the Panel's decision reflects "selective enforcement" in violation of Title IX. This claim fails as well. It is well-settled that "to support a claim of selective enforcement, [a male plaintiff] must demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the [institution]" because of her gender. *Tafuto*, 2011 WL 3163240, at *2 (citations omitted). "[W]holly conclusory allegations [of selective enforcement] [do not] suffice for purposes of Rule 12(b)(6)." *Id.* (citation omitted). Such conclusory allegations, however, are all that Doe alleges here.

Doe fails to allege any facts that plausibly suggest Princeton would have afforded (much less *did* afford) a *similarly-situated* female more favorable treatment—a fundamental pleading requirement for his claim. The only alleged comparator Doe supplies is Roe, his non-male accuser, whom Doe alleges received more favorable treatment. *See, e.g.*, Compl. ¶192. This allegation, however, falls apart at the seams.

First, Roe is not "similarly situated." Doe does not allege that he—or anyone else—filed a complaint of sexual misconduct against Roe. To the contrary, Doe *affirmatively declined* to bring a complaint against Roe for the incident he reported during

one of his interviews with the Panel investigating Roe's complaint against him.[23] *Id*.;
Panel Memo at 9, n.14. *See Rider*, 2018 WL 466225, at *11 (dismissing selective
enforcement claim based on alleged disparate treatment because plaintiff did not
allege that "[the male student] ever sought to file a complaint against [the female
student] and was prevented from doing so"); *Vanderbilt Univ.*, 355 F. Supp. 3d at 678
(same where plaintiff alleged that the female complainant "should somehow have
been investigated," noting that "[plaintiff] does not allege that he made any charge
against [the female complainant] that would have required an investigation . . . , and
the [c]omplaint contains no allegation as to how [the female complainant] might
seriously have been similarly-situated to a student *facing the charges* that [plaintiff]
faced") (emphasis added); *Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 211-12
(W.D.N.Y. 2013) (same where male plaintiff failed to identify a similar complaint
against a female student which was handled more favorably by the university).[24]

Doe further speculates that he was more harshly punished than a female
student would have been because of his gender; however, Doe fails to identify a *single*
female student in similar circumstances who was sanctioned less harshly than him. On

---

[23] The incident reported was that Doe found Roe in his bed the morning following a
night where he had "blacked-out" from drinking. *Id.* ¶92.

[24] Doe's further allegation that Princeton insufficiently responded to reports that Roe
was harassing and stalking his sister, Compl. ¶147(d), also fails to state a claim for
selective enforcement. Here, too, Doe does not allege that his sister pursued any
complaint against Roe, and the alleged conduct (stalking and harassment) was
different than the non-consensual sexual conduct alleged against Doe.

this basis as well, Doe's selective enforcement claim fails. *See Cummins*, 662 F. App'x at 452 n.10 ("Because appellants do not allege that a similarly accused female was treated differently under [the university's] disciplinary process, the 'selective enforcement' standard is inapplicable."); *Vanderbilt Univ.*, 355 F. Supp. 3d at 678 (rejecting selective enforcement claim where "[plaintiff] has neither alleged that he [was] treated less fairly than a female student charged with similar violations of the Sexual Misconduct Policy . . . nor compared the penalty imposed upon him for violating the [ ] Policy . . . to the punishment imposed upon any female student for violating [the] policy").

## II.     Doe's Complaint Fails to State a Claim for Negligence.

### A.     Doe's negligence claim against Princeton and the Individual Defendants is barred by New Jersey's Charitable Immunity Act.

New Jersey's Charitable Immunity Act ("NJCIA") bars Doe's negligence claim against both Princeton and the Individual Defendants. The NJCIA provides:

> No nonprofit corporation, society or association organized exclusively for . . . educational purposes or its trustees, directors, officers, employees, agents, servants or volunteers shall . . . be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation . . . .

N.J.S.A. § 2A:53A-7(a). A sister court has explained that the NJCIA "provides complete immunity . . . from tort liability" where an entity "(1) was formed as a non-profit corporation . . . (2) is organized exclusively for religious[,] charitable, or educational purposes; and (3) was advancing those purposes 'at the time of the injury to plaintiff who was then a beneficiary of the charitable works.'" *S.M. v. United States*,

2016 WL 7374530, at *3 (D.N.J. Dec. 20, 2016) (quoting *Bieker v. Cmty. House of Moorestown*, 177 A.2d 37, 42 (N.J. 2001)); *see also Nazzaro v. United States*, 304 F. Supp. 2d 605, 610 (D.N.J. 2004).

Princeton easily meets the NJCIA's three criteria for tort immunity. It is undisputed that Princeton is a nonprofit university organized for educational purposes. *See Lax v. Princeton Univ.*, 779 A.2d 449, 452 (N.J. Super. Ct. App. Div. 2001) (Princeton is "devoted to educational purposes" and therefore entitled to immunity under the NJCIA.). And Princeton was "advancing those [educational] purposes," *S.M.*, 2016 WL 7374530, at *3, for the benefit of its students (including Doe) at the time of the alleged injury. *See* Compl. ¶¶1, 8-9 (alleging that Doe was a senior when he was subject to disciplinary proceedings and sanctioned). Indeed, the New Jersey courts have held that a "student engaging in education pursuits" is "*per se* a beneficiary" of the university's educational works. *O'Connell v. State*, 795 A.2d 857, 861 (N.J. 2002) (quoting *Graber v. Richard Stockton Coll. of N.J.*, 713 A.2d 503, 507 (N.J. Super. Ct. App. Div. 1998)). Doe's negligence claim is therefore barred by the NJCIA—just as a sister court recently concluded in a similar case against Princeton raising a negligence claim. *See Princeton I*, 2018 WL 2396685, at *9 ("Plaintiff's complaint recognized that he was benefiting from the education program at [Princeton] during the time of Plaintiff's allegations. As such, the negligence claim fails.").

Doe's negligence claim not only fails against Princeton, but also against the Individual Defendants. As noted above, the NJCIA provides complete tort immunity to the "officers [or] employees" of an institution that meets the NJCIA's three-part test. N.J.S.A. § 2A:53A-7(a). The Individual Defendants are deans or other University administrators who either served on one of the panels that addressed the claims against Doe, or hold a position related to Princeton's compliance with its Title IX obligations. *See* Compl. ¶¶18-26 (listing individual defendants and their titles); *see also id.* ¶235 (asserting negligence claim based on individuals' "positions with Princeton" and "obligations with respect to the investigation and adjudication of Title IX complaints"). Accordingly, Doe's negligence claim must be dismissed against all Defendants. *See Mason v. Roman Catholic Archdiocese of Trenton*, 2019 U.S. Dist. Lexis 48212, at *18 (D.N.J. March 22, 2019) (dismissing negligence claim against school employees because NJCIA's "plain language states that it applies to individuals").

**B.  Doe's negligence claim fails because he has not alleged the breach of a duty of care owed to him by Princeton or the Individual Defendants.**

Even were Doe's negligence claim not barred by the NJCIA, it still would fail because Doe has not alleged facts that, if true, would show the breach of a duty of care owed to Doe by the University or its administrators. To assert a negligence claim, a plaintiff must allege facts that would show (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; (3) actual and proximate

26

causation; and (4) damages. *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319 (D.N.J. 2015). Doe's allegations, even if true, fail to satisfy at least two of these requirements.

First, Doe cannot establish that Defendants owed him a duty of care. There is no such duty unless a "special relationship exists" between the plaintiff and the defendant. *Poole v. Janeski*, 611 A.2d 169, 170 (N.J. Super. Ct. Law Div. 1992). Courts generally find a special relationship only where "one person has control of another, when the person's own conduct has created a perilous situation, or where one has voluntarily taken custody of another . . . ." *Id.* No such circumstances existed here. Rather, Doe asserts only that he was a student at Princeton. *See* Compl. ¶234 ("Defendants formed a university-student relationship with Plaintiff"). And, while the New Jersey Supreme Court has not decided the issue, the prevailing view is that no "special relationship" exists between a university and its students. *Freeman v. Busch*, 349 F.3d 582, 587-88 (8th Cir. 2003) ("a college is not an insurer of … its students"); *see also Nguyen v. Mass. Inst. of Tech., et al.*, 96 N.E.3d 128, 141 (Mass. 2018) (there is no "general duty of care to all students in all aspects of their collegiate life") (citation omitted); *Booker v. Lehigh Univ.,* 800 F. Supp. 234, 237-41 (E.D. Pa. 1992) (no special relationship between student and university); *Nero v. Kan. St. Univ.,* 861 P.2d 768, 778 (Kan. 1993) (same).

Further, courts have specifically declined to find a duty of care where universities are conducting student disciplinary proceedings. *See, e.g., Columbia Coll. Chicago,* 299 F. Supp. 3d at 963 (holding that a college "does not owe a duty to its

students 'relating to the implementation of student disciplinary proceedings'")
(citation omitted). Courts also have rejected the assertion that a duty of care arises
where a university "accepted federal funds and followed Title IX's regulations
regarding sexual assault." *Doe v. Trustees of Boston Coll.*, 892 F.3d 67, 94 (1st Cir. 2018).
And courts have declined to find a duty of care based on a university's policies and
procedures in a student handbook like the RRR, noting the chilling effect that could
have on important university practices. *See, e.g., Pawlowski v. Delta Sigma Phi*, 2009 WL
415667, at *6 (Conn. Super. Ct. Jan. 23, 2009) ("a conclusion that a duty arises based
on policies contained in a student handbook . . . could potentially discourage
institutions of higher education from having policies and implementing enforcement
practices"); *Rabel v. Ill. Wesleyan Univ.*, 514 N.E.2d 552, 560-61 (Ill. Ct. App. 1987)
(university did not place itself in a custodial relationship with its students through its
handbook or policies). In short, Doe has alleged no facts indicating that Defendants
owed him a duty of care that could support a negligence claim.

But even if Doe could identify a duty of care, he has not pled facts sufficient to
show that Defendants acted negligently. To sustain a negligence claim, a plaintiff must
show that he has been injured by "the *unreasonable* acts or omissions of the
defendant." *Smith v. Kroesen*, 9 F. Supp. 3d 439, 442 (D.N.J. 2014) (emphasis added).
But Doe's own allegations demonstrate that Princeton's personnel acted reasonably in
the investigation and adjudication of Roe's complaint against him. Among other
things, Doe admits that:

28

- The Panel provided Doe with notice of the allegations (Compl. ¶114);

- The Panel conducted multiple interviews with Doe and Roe, in addition to interviewing numerous other witnesses (*Id.* ¶¶116, 119, 120, 121, 125);

- Doe was provided an opportunity to review and respond to the evidence gathered by the Panel (*Id.* ¶125; Panel Memo at 2);

- Doe was given a written explanation of the Panel's Decision (Compl. ¶126);

- Doe was given the opportunity to appeal (*Id.* ¶¶132-33); and

- The Panel found Doe *not* responsible for one of the charges against him (*Id.* ¶¶8, 126).

Doe's disagreement with the Panel's conclusions and how it weighed the evidence is not sufficient to state a claim for breach of a duty of care—even if one existed at all. Thus, even were Doe's negligence claim *not* barred by the NJCIA, Doe has failed to plead facts sufficient to sustain that claim against Defendants.

## III. Doe's Complaint Fails to State a *Respondeat Superior* Claim as a Matter of Law.

Doe's *respondeat superior* claim fails with his negligence claim.  A claim of vicarious liability requires a showing that an employee acting within the scope of her duties committed a tortious act, which can then be imputed to the employer. *See Carter v. Reynolds*, 815 A.2d 460, 463 (N.J. 2003) (describing the "theoretical underpinning of the doctrine of *respondeat superior*" as the idea that "one who expects to derive a benefit or advantage from an act performed on his behalf must answer for any injury that a third person may sustain from it"). But here, Doe's negligence claim against the Individual Defendants fails because (1) it is barred by the NJCIA, and (2) Doe has not

alleged facts showing that either Princeton *or the Individual Defendants* breached a duty of care owed to Doe. Since Doe's negligence claim is deficient as a matter of law in regard to the Individual Defendants, Doe's *respondeat superior* claim against Princeton also fails.

## IV.    Doe's Complaint Fails to State a Viable Contract Claim.

### A.    Doe has not alleged the breach of an express contract.

Doe alleges that Princeton failed to follow the terms of the RRR and thereby breached a contract. But "[i]t is doubtful whether New Jersey law permits contractual obligations based on provisions of student handbooks." *Barker v. Our Lady of Mount Carmel School*, 2016 WL 4571388, at *16 (D.N.J. Sept. 1, 2016). Indeed, the New Jersey courts consistently have rejected breach of contract claims premised on general university policy documents such as the RRR. *See Romeo v. Seton Hall Univ.*, 875 A.2d 1043, 1050 (N.J. Super. Ct. App. Div. 2005) (reversing lower court's denial of motion to dismiss contract claim based on general anti-discrimination policy); *Mittra v. Univ. of Med. and Dentistry of N.J.*, 719 A.2d 693 (N.J. Super Ct. App. Div. 1998) (dismissing breach of contract claim based on student handbook). As another court in this district recently held, specifically with respect to Princeton's RRR: "[T]o apply pure contract law to the terms [of the RRR] . . . makes no sense." *Princeton I*, 2018 WL 2396685, at *8. The RRR is not an actionable contract, and it should not be subject to "rigid application of contract principles." *Mittra*, 719 A.2d at 697.

It is well-settled that, in assessing such claims against a university, the Court should "defer[] . . . to the internal decision-making process" of the university and limit its inquiry to whether Princeton "substantially complied with its own regulations" in conducting the disciplinary proceeding and whether its "decision was supported by the evidence." *Napolitano v. Trustees of Princeton Univ.*, 453 A.2d 263, 270-75 (N.J. Super. Ct. App. Div. 1982); *see also McMahon v. Salmond*, 573 F. Appx. 128, 132 (3d Cir. 2014) (courts may intervene in disciplinary decisions only "where the institution violates in some *substantial* way its rules and regulations") (citation omitted); *Moe v. Seton Hall Univ., et al.,* 2010 WL 1609680, at *4 (D.N.J. April 20, 2010) (in assessing contract claims arising from disciplinary proceedings under New Jersey law, the court asks only whether a private university "adhered to its own rules," the process was "fundamentally fair," and the decision was based on "sufficient evidence").

Applying this deferential and limited review, another court in this district just recently dismissed a contract claim against Princeton based on alleged violations of the RRR in the context of a disciplinary proceeding for sexual misconduct because: "The University has an obligation under the RRR[] to conduct an investigation, to make factual findings, and if necessary to mete out a remedy. Here, the University did so." *Princeton I*, 2018 WL 2396685, at *8. The University did so here as well. Doe alleges that Princeton conducted a months-long investigation, interviewing numerous witnesses and examining substantial documentary and testimonial evidence, made factual findings, and imposed a sanction. Compl. ¶¶113-40. That is all that is required

31

of a university under the deferential standard of review applicable to contract claims based on university policy documents like the RRR. *See Napolitano*, 453 A.2d at 270; *Moe*, 2010 WL 1609680, at *5. Thus, Doe's contract claim should be dismissed.

Indeed, even without such deferential review, the Complaint and the documents referenced therein demonstrate that Princeton far more than "substantially complied" with the specific RRR terms that Doe invokes. Doe points to the sexual misconduct "Policy," which requires Princeton to make "*reasonable efforts* to investigate and address complaints or reports of sex or gender discrimination, including sexual misconduct, whenever it becomes aware of such a complaint or report." Compl. ¶147 (quoting Section 1.3) (emphasis added). Princeton did that here by promptly investigating Roe's complaint of sexual misconduct. *See* Compl. ¶114. To the extent Doe argues that Princeton failed to investigate his own allegation of sexual misconduct against Roe, the Policy provides only that, absent a formal complaint, the Title IX coordinator "*may* investigate allegations of violations." Compl. ¶147 (quoting RRR Section 1.3.10.1) (emphasis added). Here, Doe did not make a formal complaint against Roe; in fact, he affirmatively declined to bring a complaint after being invited to do so by University personnel. *See* Panel Memo at 9, n.14. Thus, the RRR did not *require* Princeton to initiate any proceeding against Roe. And it was reasonable for the University to exercise its discretion to not press the matter further where Doe not

only declined to make a formal complaint, but alleged misconduct by Roe[25] only after Roe had initiated a Title IX proceeding against him.

Doe also points to the Policy requirement that Title IX panelists be trained, impartial, and unbiased. Compl. ¶149 (citing Section 1.3.12.1). But Doe alleges no facts to support his vague and speculative claim that the panelists here were not so qualified. *See Princeton I*, 2018 WL 2396685, at *4 (court must "exclude from consideration those allegations that are stated in a 'conclusory' fashion") (citing *Iqbal*, 556 U.S. at 680-81). To the contrary, the Panel Memo shows that the Panel exhaustively investigated the claims against Doe, including by critiquing and comparing both Roe's and Doe's testimony to that of many other witnesses. *See* Panel Memo at 3-5 & 9-11. The fact that the Panel reached a conclusion with which Doe disagrees does not reflect bias, partiality, or lack of training. Nor does Doe offer any explanation as to why, if the Panel was so poorly trained and biased against him, it found him *not* responsible for one of the two charges.

Doe next points to the Policy's requirement that the Panel "interview witnesses as necessary." Compl. ¶150. As alleged, the Panel more than fulfilled this obligation, interviewing eight witnesses in addition to Doe and Roe each multiple times. *See id.*

---

[25]As discussed above, Doe alleges that, on one occasion, after becoming intoxicated to the point of "black-out," he woke up in bed with Roe with no memory of what had transpired the night before. Compl. ¶92. *But Doe does not actually allege that Roe engaged in sexual activity with him that night.* Thus, Doe has alleged no facts that call into question the reasonableness of the University's decision not to further investigate Doe's allegation against Roe.

¶¶116, 119, 120, 121, & 125; Panel Memo at 7-8 & 10. Doe argues that Princeton

violated its Policy by failing to interview his dorm neighbors, but he does not allege

that they had specific information that could have changed the Panel's Decision—

which is indeed unlikely given that the events in question occurred after 3 am. *See*

Compl. ¶150(b). Doe also does not allege how testimony regarding his "condition,

behavior, and statements" the morning *after* the incident would have impacted the

Panel's credibility determination in deciding whether to believe his or Roe's version of

events regarding the night before. *See* Compl. ¶150(a). In short, and especially where

the Panel interviewed Doe and Roe multiple times, in addition to eight witnesses

suggested by them, Doe has failed to allege facts supporting a violation of the RRR

requirement that the Panel "interview witnesses as necessary."

    In regard to the sanction imposed, the RRR requires the decision-makers to

base the sanction on "the seriousness of the misconduct as compared to like cases in

the past, and the student's previous disciplinary history (if any)." Compl. ¶153 (citing

Section 1.3.12.2). Doe admits that Princeton based the penalty applied to him—

withholding of Doe's degree for a semester—on penalties imposed in past cases of

Non-Consensual Sexual Contact. Compl. ¶131. Doe argues that this was improper

because he had no prior disciplinary issues. But the statement that "previous

disciplinary history (if any)" may be considered does not compel the University to

downgrade, or decline to impose, a penalty any time there is no such history. Rather,

it suggests only that prior disciplinary infractions might be considered (*i.e.*, as a justification for greater penalties) *if such a history exists.*

Thus, even if the RRR could be considered a traditional contract—which it cannot—Doe has not alleged facts showing that Princeton failed to comply with the terms of the RRR in conducting its disciplinary process. Rather, "the fact that the University did not reach the conclusion that Plaintiff desired is not a breach of contract especially since the University followed its procedures … [under] … the RRR." *Princeton I*, 2018 WL 2396685, at *15.

Finally, Doe's contract claim fails because, on the record, the University's decision was supported by "sufficient evidence." *Moe*, 2010 WL 1609680, at *4. That evidence included, *inter alia*:

- Roe's testimony, which the Panel ultimately determined to be more credible than Doe's (*see* Compl. ¶¶126-27; Panel Memo at 3-5 & 9-12);

- The "prox" records, which supported Roe's testimony that Roe had gone to Doe's room around 3:10 am on November 4, but was at odds with Doe's claim that Roe did not come to his room (*Id.* at 6 & 11-12);

- A text message sent from Roe to Doe at 3:11 am, indicating that Roe was going to Doe's room (*Id.* at 9); and

- Testimony from eight additional witnesses, which the Panel concluded, on the whole, supported Roe's version of events (*Id.* at 7-8 & 10).

In short, Doe's allegations show that Princeton "adhered to its own rules," followed "fundamentally fair" procedures, and based its decision on "sufficient evidence"—which is the extent of the "limited" inquiry appropriate in regard to

contract claims against private universities arising from student disciplinary proceedings. *Moe*, 2010 WL 1609680, at *5; *see also Hernandez v. Don Bosco Preparatory High*, 730 A.2d 365, 375-76 (N.J. Super. App. Div. 1999).  Doe's contract claim therefore should be dismissed.

### B.   Doe has not sufficiently alleged the breach of an implied contract.

To establish a claim for breach of an implied contract, Doe must plead the same elements required to prove an express contract—offer, acceptance, and consideration—but demonstrate them through "conduct of the parties showing . . . their tacit understanding." *Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635, 644 (3d Cir. 1998) (citation omitted); *see also Chemo Iberica, S.A. v. Betachem, Inc.*, 2016 WL 865734, at *1 (D.N.J. March 7, 2017) (quoting *Gardiner*). Doe has not pled facts showing any "tacit understanding" between Princeton and himself. Rather, he alleges simply that he was a student at Princeton, and points to the RRR. Compl. ¶¶1, 80, 141-54. That is not sufficient to support a claim for breach of an *implied* contract.

Doe alleges that his "enrollment in . . . classes at Princeton created in Plaintiff an expectation that he would be allowed to continue his course of study until he earned his degree." Compl. ¶¶218-19. But this "expectation" on Doe's part, uncoupled with any conduct by Princeton indicating that it shared that expectation no matter Doe's behavior, does not give rise to an implied contract imposing specific obligations on Princeton, enforceable as a matter of law. *See Baer v. Chase*, 392 F.3d

609, 616 (3d Cir. 2004) ("An implied-in-fact contract . . .  aris[es] from *mutual agreement and intent* to promise . . . .") (emphasis added and internal quotation omitted). Doe's claim for breach of an implied contract therefore also fails.

### C.    Doe's claim for breach of an implied covenant of good faith and fair dealing fails.

To allege a claim for breach of an implied covenant of good faith and fair dealing, a plaintiff must show the defendant "acted in bad faith or engaged in 'some other form of inequitable conduct *in the performance of a contractual obligation*.'" *Pactiv Corp. v. Perk-Up, Inc.*, 2009 WL 2568105, at *12 (D.N.J. Aug. 18, 2009) (emphasis added) (citation omitted); *see Wade v. Kessler Inst.*, 798 A.2d 1251, 1262 (N.J. 2002) ("the breach of the implied covenant arises when the other party has acted consistent with the contract's literal terms, but has done so in such a manner as to 'have the effect of destroying or injuring the right of the other party to receive the fruits of the contract'") (citation omitted). But there was no contract between Princeton and Doe here. As discussed above, the RRR is not an enforceable contract, and any obligation by Princeton under that document is limited to, at most, "substantial compliance." *See supra* at Section IV(A). Absent an enforceable contract, there can be no breach of an implied covenant of good faith and fair dealing.

Moreover, a plaintiff "may not maintain a separate action for breach of the implied covenant of good faith and fair dealing where it would be duplicative of the breach of contract claim." *Hahn v. OnBoard LLC*, 2009 WL 4508580, at *6 (D.N.J.

Nov. 16, 2009). Here, Doe's allegations of bad faith address the same actions that Doe asserts as the basis for his breach of contract claim. Thus, even if there were a quasi-contractual relationship between Princeton and Doe that could give rise to a claim for breach of an implied covenant of good faith and fair dealing, that claim still fails because it is redundant of Doe's breach of contract claim.

## V.   Doe's Complaint Fails to State a Common Law Due Process or Fundamental Fairness Claim.

There is no freestanding common law due process or fundamental fairness claim against a private university under New Jersey law. As this Court has explained, the New Jersey courts have held that "no traditional due process claim [is] viable" as between a student and a private university, and there is "no support in . . . New Jersey law for . . . a free-standing fundamental fairness claim." *Moe*, 2010 WL 1609680, at *4-5. Instead, a student contesting disciplinary proceedings may raise "fundamental fairness issues" only in the context of a contract claim. *See Sapp v. Premier Educ. Group LP*, 2016 WL 6434137, at *12 (D.N.J. Oct. 28, 2016) (a "fundamental fairness claim *based on a contractual relationship* between a private university student and the university does exist under New Jersey law") (emphasis added).

As discussed above, Doe's contract claim fails because the RRR is not a contract.  At most, any inquiry based on that document should be limited to whether the university "adhered to its own rules," "the procedures followed were fundamentally fair," and its decision was based on "sufficient evidence," *Moe*, 2010

WL 1609680, at *4 (quoting *Hernandez*, 730 A.2d 365), and the Complaint and documents referenced therein show that Princeton met those basic requirements. The Panel provided Doe with notice of the charges and the evidence against him; conducted an investigation that included more than a dozen interviews, including three with Doe; and determined under the evidentiary standard in the Policy that Doe was responsible for one of the charges against him based on a thorough assessment of the evidence gathered. *See supra* at Section IV(A). Thus, any contract-based claim fails here—as does any common law due process or fundamental fairness claim. Indeed, even if the Court declined to dismiss Doe's contract claim, the due process/fundamental fairness claim should still be dismissed because those common law concepts only apply within the context of the contract claim. *See Moe*, 2010 WL 1609680, at *4-5 (dismissing due process/fundamental fairness claim and proceeding to instead "evaluate contract claims through that prism").

Finally, even if New Jersey recognized a non-contract-based[26] common law due process or fundamental fairness claim against private universities, Doe's allegations would not support such a claim. Princeton provided Doe with notice and an opportunity to be heard—the hallmarks of common law due process. *See First Resolution Inv. Corp. v. Seker*, 795 A.2d 868, 874 (N.J. 2002) ("the essential components

---

[26] To the extent Doe is alleging a common law due process claim sounding in tort, such a claim, in any event, would be barred by the NJCIA. *See S.M.*, 2016 WL 7374530, at *3 (NJCIA provides "complete immunity" from tort liability where applicable).

of due process are notice and an opportunity to be heard") (citation omitted); *see also* *Goss v. Lopez*, 419 U.S. 565, 579 (1975) (holding, even with respect to *public* school students, that constitutional due process requires that students "facing suspension . . . must be given some kind of notice and afforded some kind of hearing"). Again, Doe's own allegations establish that Princeton provided him with notice of the charges; interviewed him multiple times; and allowed him to submit a statement addressing the evidence. Compl. ¶¶114, 119, 121 & 125; Panel Memo at 2. Thus, even if "due process" and "fundamental fairness" could support independent claims under New Jersey law, Doe has not pled facts to support a claim that he was denied the "process" and "fairness" due him.

## VI.   Doe's Complaint Should Be Dismissed With Prejudice.

Doe's Complaint fails to state a claim against any of the Defendants under the causes of action asserted in the Complaint, and therefore should be dismissed. Moreover, because the facts, as alleged, demonstrate that Doe's claims are fatally flawed, Doe's Complaint should be dismissed with prejudice as to all Defendants. *See* *Tafuto*, 2011 WL 3163240, at *5 (dismissing claims with prejudice because the plaintiff "cannot change the critical facts of the case" and therefore, any amendment would be "futile").

Respectfully submitted,


By: /s/ Linda Wong
   Linda Wong, Esq.
   WONG FLEMING
   821 Alexander Road, Suite 200
   Princeton, NJ  08543-3663
   Tel. (609) 951-9520
   Fax (609) 951-0270
   E-mail: lwong@wongfleming.com


Laurel Pyke Malson, Esq. (*pro hac vice*)
Aryeh Portnoy, Esq. (*pro hac vice*)
Nathiya Nagendra, Esq. (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel:  (202) 624-2576
LMalson@crowell.com
APortnoy@crowell.com
NNagendra@crowell.com

*Attorneys for Defendants*

*The Trustees of Princeton University, a not-for-profit educational corp. of the State of New Jersey (incorrectly referenced in the Complaint as "Princeton University"), Michele Minter, Regan Hunt Crotty, Joyce Chen Shueh, Walter Wright, Cole M. Crittenden, Kathleen Deignan, W. Rochelle Calhoun, Jill S. Dolan, and Sarah-Jane Leslie*