# EXHIBIT D

June 8, 2018

Dear Ms. Gage:

    I hereby submit the instant Appeal of Princeton University's decision dated May 25, 2018, which found me responsible for a violation of Princeton's Rights, Rules, and Responsibilities, Section 1.3 (the "Decision") and imposed a withholding of my degree until January 2019 and a permanent mark of suspension on my transcript (the "Sanction"). For the reasons detailed below, I respectfully request that Princeton overturn the Decision and Sanction and find me not responsible for the alleged violation.

    I am filing this appeal based on all three categories of appealable issues: procedural grounds; substantial relevant information that was not presented to the Sexual Misconduct panel; and the imposed penalty not falling within the range of imposed penalties for similar misconduct. There are several issues that I feel warrant additional review.

### A. There are Procedural Errors that Materially Affected the Outcome of the Case

1. The Decision was based largely on hearsay.

    The evidence relied on by the hearing panel in reaching the Decision was interviews with third parties who lacked firsthand knowledge of the allegations, as well as prox records that showed that the Complainant had entered the building and used the elevator. These witnesses could only provide hearsay information, almost exclusively obtained from the Complainant. Along with this, the panel even writes in the findings that I told them I was talking to Student C about a different encounter, yet the panel used Student C's testimony as evidence nonetheless.

    As for the prox records, the evidence that the Complainant entered the far end of the building and used the elevator does not uphold the claim that the Complainant ███████████████████████████████████ much less that they came to my room. The fact that my door was propped open at one point in the night does not mean it was opened for the Complainant to enter, as I have habitually propped my door open to go to the kitchen or pick up toilet paper down the hall. In fact, the prox records used by the panel even display these habits. The panel claims this was sufficient information to reach a decision of "Responsible" but admitted within the same pages that it was insufficient information for another charge which would have had similar evidence.

2. Evidence I presented was largely disregarded.

1

The panel does not mention the evidence that I submitted to support my case, such as the Complainant's numerous inconsistencies. These inconsistencies include, but are not limited to: the Complainant forgetting how they allegedly got to my room (named one route while prox records and eyewitnesses showed another); that they were wearing my boxers (I do not own boxers, which was mentioned in passing in the findings but should be emphasized); that they allegedly took nearly half an hour to return to their room upon waking up in the morning (we live in neighboring buildings and prox records show from my trip between their room and my room earlier how short it is); the odd timestamps on the Complainant's journal entries; the claim that I was "handsy" at the party (a submitted photo shows we weren't even close to each other, and then the Complainant denied making that statement after that evidence was released); the Complainant's inconsistent stories among the people they talked to about the case (many of whom were then interviewed by the panel to reach a conclusion); and the Complainant's undecidedness on my presence in places after the alleged incident (the Complainant expressed fearfulness of my presence yet continued to be in places they knew I would be, even recommending I film an event they would be performing in).

Additionally, the panel seemed to disregard the fact that the Complainant admitted to me that they had a urinary tract infection (UTI) that week (as proven by a screenshot message to another student). As a result, we agreed to not have sexual intercourse or penetrative sexual contact that week; however, the Complainant claimed that I digitally penetrated them.

Alongside this, I suggested to the panel that the combination of the Complainant's medication with their alcohol consumption that evening may have impaired their memory in some way, which is highly possible. The panel writes in the findings via footnote, however, that "there was no evidence of this." At the same time, the panel failed to ask the Complainant about their medication usage, what medications, possible side effects, effects when mixed with other substances, past known episodes regarding the medication, and so forth. In fact, the panel completely ignored my statement and asked nothing of the Complainant about medication and memory whatsoever. It is a fact of the matter that the Complainant's dormitory connects to mine via the basement along with three other buildings making it very possible for the Complainant to have moved out of ▮▮▮▮▮ undetected (also only mentioned in passing), thus making it possible that the Complainant had other experiences that night (sexual or nonsexual, with or without other people) that did not include me that the Complainant simply cannot recall correctly.

With regards to my break-up with the Complainant, the panel simply states that the Complainant and I were in a previous relationship. However, that is an immense understatement and oversimplification that cuts out over four pages' worth of my initial testimony wherein I highlighted that the Complainant was markedly

upset over my "cheating" during our relationship at the beginning of the year, my feelings about the Complainant's manipulative tendencies, and – most significantly – the fact that I told the Complainant the night before the alleged incident that I was no longer interested in being sexual partners with them (in response to which the Complainant performed sexual acts upon me anyway).

As further evidence of this, the panel completely failed to mention in their findings that the Complainant in this case seems to have used the Title IX investigation as a way to punish me surreptitiously by excluding me from the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ well (the former of which I was involved in for two years before the Complainant) and attempted to jeopardize my position within them through actions such as sending multiple messages to members of both groups claiming I am a sexual assailant and "unsafe to be around" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; asking the officers of both groups to ban me from their activities; and spreading word of the panel's findings near instantly to exercise control over me with malicious intent. They were even able to convince ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ activities, which explicitly goes against both the no-contact order and regulations in place by the Office of the Dean of Undergraduate Students (ODUS). The Complainant even went so far to alienate me before filing the investigation, using the many months between the alleged incident and the filing of the case to spread falsehoods about me among many people (which again were inconsistent), most notably approaching an individual directly upon finding out I was dating her while they expressed jealousy and frustration of the burgeoning relationship to me. I find the Complainant's behavior questionable because they showed no respect for the confidentiality of the Title IX proceedings; overstated the terms of the no-contact order; and used language that tends to evoke hostility toward me and pity for themself. This evidence is undoubtedly important to the decision for it shows the Complainant's use of the system to release their own personal scorn, yielding their testimony as highly questionable. This Title IX investigation served their purposes of manipulation following my breaking up with them as stated above so well that it was beneficial to their thirst for vengeance to fabricate such a story.

**B.  There Exists Substantive Relevant Information Not Previously Presented**

There is possible new evidence that I ask the appeal board to look into, which I feel may materially affect the outcome of this matter. First, I feel that there needs to be an additional look at the prox records, considering some new information. The prox records show that the Complainant entered my building and used an elevator, and that I then propped my door for one minute about five minutes later. My father and I recently walked this route and timed it: it took forty-five seconds. The panel claims that

3

my door being opened proves they came to my room, but five minutes is an inordinate amount of time for the Complainant to take. I emphatically stand by that the Complainant never came to my room that night/early morning.

Furthermore, I would like the board to view other prox records of mine, which demonstrate that I habitually left my door open for one minute at a time here and there as I roamed my own building to go to the kitchen, trash room, toilet paper restock spot, etc. (I have broken this habit in the past few months out of fear for personal safety associated with this case).

Additionally, ███████████████████████████████ should have been interviewed and that their testimony could provide pertinent information in this matter. The Complainant claims I was severely intoxicated and awake later than I maintain, which would have ███████████████████████████████

Alongside this, it also seems unusual that the students who lived on my floor were not interviewed. While the Complainant claims that they kept saying "no" and "stop" over an extensive period of time in the middle of the night, this means someone within an adjacent room could have heard this. The walls of ███████ are certainly not sound-proof evidenced by one of my direct neighbors asking me many times throughout the year to turn down my music while it was on a moderate volume; she can hear things in my room as her bed lies along the opposite side of the wall where my bed is placed. ███████████████████████████████ that lives right across the hall from my room, an individual who not only could have heard something but would have been obligated both morally and positionally to intervene. The residents of my floor may have information about any sort of interactions that did or did not exist in my dormitory.

With that, it is peculiar that there were interviews with Students A, B, C, D, E, G, H and K, and that there are written statements from Student F, and one each from Student G and H. But if there's a Student H and a Student K, what happened to Students I and J? I am unsure of the reason those are skipped over, and am left to wonder if those witnesses have given exculpatory evidence that the hearing panel has not provided. Procedurally, it is unfair to me that I was not told what these students said or wrote. If their evidence was inculpatory to me and the panel considered it, I was not given the opportunity to rebut it. If their evidence portrayed me as innocent, it is completely unfair that the panel did not reference it in their findings. Along the same lines, it is unfair that I was not told the names of the individuals and given the chance to cross-examine them or even describe my relationships to them in front of the panel.

4

As part of substantive relevant information that was not previously presented, I ask the appeals board to look once again at the above evidence that was mishandled. It is my firm belief that this carelessness on the panel's behalf constitutes the evidence as being "not previously presented" as it was not presented to the appeals board or disciplinary committee in the findings.

### C. The Imposed Penalty as Compared to Similar Misconduct

It is fundamentally unfair to me that I cannot put into context the penalty imposed upon me as it compares to the penalties imposed upon others for similar misconduct. First, because Title IX proceedings are confidential and there is no catalog of Title IX cases and the penalties imposed for each, I have no way of knowing whether the penalty imposed upon me compares to the penalties of similar cases. Second, it is unclear to me how my withheld diploma will be reflected upon my transcript. I spoke to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ about this and he stated that my transcript will at least read "suspended," but it is still uncertain whether it will reference sexual misconduct or Title IX; as this information has not been presented to me, the extent of my penalty is still vague. That being said, a permanent mark on my transcript is an overly extreme penalty for this alleged offense considering that it would forever affect my marketability among employers for the rest of my life; this is especially true for a case so poorly handled and determined on such minimal evidence. Along with this, I was instructed to meet with a clinician due to my inability to participate in a community integrity program, but I am still mystified as to whether or not I am to continue meetings or if I have satisfied that requirement, and what does count as satisfactory if the former. I still do not know what my penalty is or for how long. I should be permitted to view the cases of others found responsible of sexual misconduct to be able to compare my penalty as to not leave me in the dark. Please do not allow this request to overshadow my argument that the event in question did not happen and that the panel severely mishandled my proceedings.

### D. Conclusion

For the reasons stated above, I respectfully request that the Decision and Sanction be overturned. I greatly appreciate your consideration of this appeal.

Sincerely,

▮▮▮▮▮▮▮▮▮▮