<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN DOE, | : |
| Plaintiff, | : |
| v. | : Case No.: 3:19-cv-07853-BRM-TJB |
| TRUSTEES OF PRINCETON UNIVERSITY, *et al.*, | : **OPINION** |
| Defendants. | : |

Before this Court is a Motion to Dismiss (ECF No. 18) filed by Defendants Michele Minter, Regan Hunt Crotty, Joyce Chen Shueh, Walter Wright, Cole M. Crittenden, Kathleen Deignan, W. Rochelle Calhoun, Jill S. Dolan, Sarah-Jane Leslie and the Trustees of Princeton University (the "University") (collectively, "Defendants"). Plaintiff John Doe[1] ("Doe") opposes the motion. (ECF No. 25.) Having reviewed the parties' submissions filed in connection with the motion and having declined to hear oral argument pursuant to Federal Rule of Procedure 78(b), for the reasons set forth below and for good cause having been shown, the motion to dismiss is **GRANTED IN PART** as to Doe's federal claims (Counts 1-2) and **DENIED WITHOUT PREJUDICE IN PART** as to Doe's state law claims (Counts 3-8). Additionally, Doe is ordered to **SHOW CAUSE** why the Court should not dismiss his state law claims for lack of subject matter jurisdiction.

**I.    FACTUAL BACKGROUND**

The University is a private institution of higher education located in Princeton, New Jersey,

---

[1] The Court authorized Doe to proceed under a pseudonym. (ECF No. 9 ¶ 1.)

which receives some federal funding. (ECF No. 1 ¶ 17.) At the relevant times, Doe was enrolled at the University as an undergraduate student. (ECF No. 1 ¶ 16.) During their time at the University, Doe and fellow student Alex Roe[2] engaged in a sexual relationship, which later ended. (ECF No. 1 ¶ 87-88, 98.) Roe subsequently accused Doe of sexual assault. (ECF No. 1 ¶ 104-05.)

The University investigated Roe's claims and began disciplinary proceedings against Doe. (ECF No. 1 ¶ 114, 124.) At the conclusion of the proceedings, the University found Doe responsible for Non-Consensual Sexual Contact. (ECF No. 1 ¶ 126.) As a consequence, the University withheld Doe's undergraduate degree for a semester—functionally equivalent to a one-semester suspension—and noted this suspension on his transcript. (ECF No. 1 ¶ 128.) Doe appealed the discipline. (ECF No. 1 ¶ 132, 138.) The University rejected Doe's appeal. (ECF No. 1 ¶ 135, 139.)

Doe subsequently brought this action against the University and several of its administrators,[3] pointing to a host of irregularities and deficiencies with the University's disciplinary process. (ECF No. 1 ¶ 7.) Doe's complaint alleges the disciplinary process violated federal law barring gender discrimination by educational institutions receiving federal funding (ECF No. 1 ¶ 164-98) and state law (ECF No. 1 ¶ 199-248.) Defendants moved to dismiss Doe's entire complaint for failure to state a claim.

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a

---

[2] Pursuant to the Court's order, Alex Roe is a pseudonym. (ECF No. 9 ¶ 1.)

[3] Each of the Defendants other than the University was an administrator involved in some way with Doe's disciplinary proceedings. (ECF No. 1 ¶¶ 18-26.)

district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common

sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document integral to or explicitly relied upon in the complaint." *Burlington*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

## III.  DECISION

### A.  Title IX Claims[4]

Doe brings two separate claims under Title IX of the Education Amendments of 1972 ("Title IX"): an "erroneous outcome" claim and a "selective enforcement" claim. Both fail for the same reason: Doe has not alleged sufficient facts to show any of his negative treatment occurred on the basis of Doe's sex.

Subject to certain exceptions not applicable here, under Title IX, "[n]o person in the United

---

[4] This Court has jurisdiction over Doe's Title IX claims. *See* 28 U.S.C. § 1331.

States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "This provision, which is enforceable through an implied private right of action, was enacted to supplement the Civil Rights Act of 1964's bans on racial discrimination in the workplace and in universities." *Doe v. Columbia Univ.*, 831 F.3d 46, 53 (2d Cir. 2016) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714–15 (2d Cir. 1994)); *see A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 805 (3d Cir. 2007). "Because Title IX prohibits (under covered circumstances) subjecting a person to discrimination on account of sex, it is understood to bar the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Id.*

An "erroneous outcome" claim is based on allegations that plaintiff "was innocent and wrongfully found to have committed an offense." *Yusuf*, 35 F.3d at 715. "Plaintiffs who claim that an erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Id.* However, "[i]f no such doubt exists based on the record before the disciplinary tribunal, the claim must fail." *Id.* "[T]he pleading burden in this regard is not heavy." *Id.* A complaint meets the pleading requirement if it alleges "particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the charge." *Id.* It may also allege procedural flaws affecting the evidence. *Id.* However, "allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Id.* "The fatal gap is . . . the lack of a particularized allegation relating to a causal connection between the flawed

outcome and gender bias. A plaintiff must . . . also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Id.* Examples of allegations might include "statements by members of the disciplinary tribunal, statements by pertinent university officials, [] patterns of decision-making that also tend to show the influence of gender[,] . . . [or] statements reflecting bias by members of the tribunal." *Id.*

A "selective enforcement" claim asserts, "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Id.* To state a "selective enforcement" claim, a plaintiff must "demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University." *Mallory*, 76 F. App'x at 641; *see Curto v. Smith*, 248 F. Supp. 2d 132, 146–47 (N.D.N.Y. 2003) (dismissing a Title IX claim under *Yusuf* analysis for failure to state a selective enforcement claim where academically-expelled female sought to compare more favorable treatment of male who had been dismissed due to misconduct).

Both Doe's claims under Title IX fail because "he failed to sufficiently plead Defendant[s'] conduct was motivated by a gender bias." *Doe v. Rider Univ.*, Civ. No. 16-4882, 2018 WL 466225, at *9 (D.N.J. Jan. 17, 2018). Absent from Doe's complaint is mention of any statements or conduct by administrators involved in Doe's discipline specifically suggesting any gender bias. *See Rider*, 2018 WL 466225, at *8. Nor does Doe allege any facts showing the disciplinary outcomes in cases like Doe's vary by sex. *See Doe v. Princeton Univ.*, 790 F. App'x 379, 383 (3d Cir. 2019). Doe's allegation that the University "has engaged in a pattern of unfair investigations and adjudications resulting in serious sanctions being imposed on male students, while not making comparable efforts with respect to allegations of sexual violence and abusive conduct made against non-male students" (ECF No. 1 ¶ 178), standing alone, is "too 'generalized' and 'conclusory' to

raise an inference of" gender bias. *See Princeton*, 790 F. App'x at 383.

Not all of Doe's allegations are too generalized or conclusory, but the facts alleged therein do not demonstrate the plausibility of Doe's claim that the University acted against Doe because of his sex. For instance, Doe alleges survey results showing significantly more male students than female students believe the University does not hold perpetrators of sexual misconduct accountable (ECF No. 1 ¶ 76), but a disparity in student perception by sex does not equate with a disparity in disciplinary outcomes because of sex. *Cf. Doe v. Oberlin Coll.*, Civ. No. 17-1335, 2019 WL 1439115, at *6-7 (N.D. Ohio Mar. 31, 2019) (noting statistical evidence concerning disciplinary outcomes did not make a plausible claim gender bias infected disciplinary cases due to an insufficient data set). Doe also alleges the University was under pressure to comply with Title IX (ECF No. 1 ¶¶ 71-74, 77-78), but pressure to comply with Title IX does not equate with a failure to comply with Title IX. *See Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d 1064, 1078 (D. Colo. 2017); *Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875, 887 (N.D. Ohio 2017), *appeal docketed*, No. 19-3342 (6th Cir. filed Apr. 17, 2019); *Austin v. Univ. of Ore.*, 205 F. Supp. 3d 1214, 1226-27 (D. Ore. 2016), *aff'd*, 925 F.3d 1133 (9th Cir. 2019). Nor can Doe rely on his allegation that the University faced a Title IX investigation for offering self-defense classes to women but not men (ECF No. 1 ¶ 75), because nothing in the complaint demonstrates this disparate treatment extended to Doe's disciplinary proceeding.

Finally, Doe points to irregularities in his own disciplinary proceedings. (ECF No. 1 ¶¶ 113-40.) Although Doe has thoroughly detailed the problems he alleges plagued his disciplinary process, none of Doe's allegations show Doe's sex is the reason for these shortcomings. *See Doe v. Cummins*, 662 F. App'x 437, 453 (6th Cir. 2016).

Doe's allegations fail to put forward the kind of facts necessary to plausibly demonstrate

Doe's sex impacted the result in his disciplinary proceedings. *See Doe v. Princeton Univ.*, 790 F. App'x 379, 383 (3d Cir. 2019). Because Doe "failed to sufficiently plead Defendant[s'] conduct was motivated by a gender bias," neither of Doe's Title IX claims can withstand the University's motion to dismiss. *Rider Univ.*, 2018 WL 466225, at *9. Therefore, Defendants' motion to dismiss is granted as to Counts 1 and 2. (ECF No. 1 ¶¶ 164-98.)

### B.  State Law Claims

In addition to his Title IX claims, Doe brings a host of state law claims in Counts 3 through 8. (ECF No. 1 ¶¶ 199-248.) No party challenges the Court's subject matter jurisdiction over these claims. However, "federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. v. Senjuu Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)).

Doe has identified two potential sources of subject matter jurisdiction over his state law claims: diversity jurisdiction and supplemental jurisdiction. Because this Court has questions concerning its subject matter jurisdiction over Doe's state law claims, Doe shall show cause why this Court should not dismiss his state law claims for lack of subject matter jurisdiction. In light of the jurisdictional questions, the Court will deny without prejudice Defendants' motion to dismiss the state law claims, with leave to re-file if the Court exercises jurisdiction over Doe's state law claims.[5]

### 1.  Diversity Jurisdiction

First, Doe asserts the Court possesses diversity jurisdiction over this action. A district court

---

[5] Because of the jurisdictional uncertainty, the Court finds good cause to modify the time for Defendants to serve a responsive pleading. *See* Fed. R. Civ. P. 6(b)(1)(A), 12(a)(4).

possesses diversity jurisdiction over a civil action if the parties are "citizens of different states." *See* 28 U.S.C. § 1332(a)(1). Diversity jurisdiction "requires complete diversity of the parties; that is, no plaintiff can be a citizen of the same state as any of the defendants." *Grand Union Supermarkets of V.I., Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003). Additionally, "the matter in controversy [must] exceed[] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). "The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it." *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).

In this case, the record may not be sufficient for this Court to conclude it possesses diversity jurisdiction. (ECF No. 1 ¶¶ 16-26, 155-63.) Each party may brief the Court concerning the existence of diversity jurisdiction. Specifically, the parties should address the citizenship of every party to the case, as well as the amount in controversy. In response to the order to show cause, Doe may amend his jurisdictional allegations to strengthen his basis for diversity jurisdiction. *See* 28 U.S.C. § 1653.

### 2. Supplemental Jurisdiction

Even if the Court lacks diversity jurisdiction, Doe asserts the Court possesses supplemental jurisdiction over his state law claims. A district court possesses supplemental jurisdiction over any state law "claims are so related to claims in [an] action within [the district court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This Court has original jurisdiction over Doe's Title IX claims because they arise under federal law. *See id.* § 1331. Doe's state law claims all "form part of the same case or controversy" as his Title IX claims. *Id.* § 1367(a). Accordingly, the Court

possesses supplemental jurisdiction over Doe's state law claims.

The Court even "retain[s] its statutory supplemental jurisdiction over the state-law claims" after having "dismiss[ed] [Doe's] federal claim[s]." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 640 (2009).  However, the Court may decline to exercise its supplemental jurisdiction in light of that dismissal.  28 U.S.C. § 1367(c)(3); *see also Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 567 (3d Cir. 2017).  The decision to exercise or decline supplemental jurisdiction is committed to the Court's discretion.  *See Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 805 F.3d 98, 112 (3d Cir. 2015).  "That discretion, however, is not unbridled." *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009).  This "Court should 'consider . . . the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise [supplemental] jurisdiction over" the state law claims "or to dismiss [those] claim[s] without prejudice." *De Ritis v. McGarrigle*, 861 F.3d 444, 459 n.13 (3d Cir. 2017).  Although the Court has discretion to exercise or decline jurisdiction over the state law claims,[6] the Court will ordinarily decline to exercise supplemental jurisdiction if the Court has dismissed all the claims over which the Court possesses original jurisdiction.  *See, e.g.*, *Mesadieu v. City of Linden*, 791 F. App'x 294, 296 (3d Cir. 2020).

If the Court lacks diversity jurisdiction over Doe's state law claims, the Court must decide whether or not, in its discretion, to exercise supplemental jurisdiction over Doe's state law claims. Accordingly, any party may brief the Court concerning whether the Court should exercise supplemental jurisdiction in absence of diversity jurisdiction.

---

[6] The Court may even choose to exercise supplemental jurisdiction over some, but not all, of the state law claims. *See Southerland v. Hardaway Mgmt. Co.*, 41 F.3d 250, 256-57 (6th Cir. 1994).

## IV. CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss is **GRANTED IN PART** as to Doe's Title IX claims and **DENIED WITHOUT PREJUDICE IN PART** as to Doe's state law claims, with leave to re-file if the Court exercises jurisdiction over Doe's state law claims. Additionally, Doe is ordered to **SHOW CAUSE** why the Court should not dismiss his state law claims for lack of subject matter jurisdiction. An appropriate order accompanies this Opinion.

*/s/Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**