UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---------------------------------------------------------------X

JOHN DOE,                                               :
                                                        :
                          Plaintiff,                    :
                                                        :
v.                                                      : Civil Action No.19-cv-07853
                                                        :
PRINCETON UNIVERSITY,                                   :
MICHELE MINTER, REGAN HUNT                              :
CROTTY, JOYCE CHEN SHUEH,                               :
WALTER WRIGHT, COLE M.                                  :
CRITTENDEN, KATHLEEN DEIGNAN,                           :
W. ROCHELLE CALHOUN,                                    :
JILL S. DOLAN, and SARAH-JANE LESLIE,                   :
                                                        :
                          Defendants.                   :

---------------------------------------------------------------X

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

**NESENOFF & MILTENBERG, LLP**
**Attorneys for Plaintiff**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION ....................................................................................... 1

PROCEDURAL HISTORY .......................................................................... 2

STATEMENT OF FACTS ........................................................................... 2

ARGUMENT .............................................................................................. 6

    I.  LEGAL STANDARD ........................................................................ 6

    II. PLAINTIFF SUFFICENTLY ALLEGES CONTRACT CLAIMS ................. 10

        A.  Plaintiff Sufficiently Alleges All Elements of an Express Contract
            Claim .................................................................................... 10

        B.  Plaintiff Sufficiently Alleges Breach of Implied Contract ....................... 16

        C.  Plaintiff Sufficiently Alleges Breach of the Covenant of Good
            Faith and Fair Dealing ............................................................ 17

    III.  PLAINTIFF SUFFICNTLY ALLEGES COMMON LAW DUE
         PROCESS .................................................................................. 19

    IV.  PLAINTIFF SUFFICENTLY ALLEGES NEGLIGENCE AND
         RESPONDEAT SUPERIOR CLAIMS .......................................... 23

        A.  Defendants Owed Plaintiff a Duty of Care, and Breached that
            Duty ..................................................................................... 23

        B.  The Charitable Immunity Act Does Not Warrant Dismissal ................... 27

    V.  THERE IS NO BASIS TO DISMISS PLAINTIFF'S CLAIM WITH
        PLAINTIFF'S CLAIMS WITH PREJUDICE ............................... 29

CONCLUSION .......................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

Cases

*Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)..................................7

*Atria v. Vanderbilt Univ.*, 142 Fed. Appx. 246, 252 (6th Cir. 2005) ...........................25

*Barker v. Our Lady of Mount Carmel Sch.*, No. 12-CV-4308, 2016 WL 4571388, at *15

   (D.N.J. Sept. 1, 2016).........................................................................................13

*Bavendam v. Pearson Educ., Inc.*, 13-CV-3096 (FSH), 2013 WL 5530008, at *5 n.7

   (D.N.J. Oct. 3, 2013) ..........................................................................................8

*Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 86 (1978).................15

*Bell Atl. v. Twombly*, 550 U.S. 544, 556 (2007) .......................................................6, 7

*Bridgewater Wholesalers, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co.*, No. 14-CV-3684

   (SDW).................................................................................................................7

*Carter v. Reynolds*, 175 N.J. 402, 408–09, 815 A.2d 460, 463–64 (2003) ..................23

*Collick v. William Paterson Univ.*, No. 16-471 (KM) (JBC), 2016 WL 6824374, at *23

   (D.N.J. Nov. 17, 2016)................................................................................12, 19

*Creative Concepts Mfg. Ltd. v. Team Beans LLC*, No. 17-CV-6066 (BRM) (DEA), 2018 WL

   2002800, at *4 (D.N.J. Apr. 30, 2018) .................................................................18

*Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016)...............................................7

*Doe v. Harvard Univ.,* 2020 WL 2769945, at *5 (D. Mass. May 28, 2020)..................9

*Doe v. Princeton Univ.*, No. 17-CV-1614 (PGS), 2018 WL 2396685, at *3

   (D.N.J. May 24, 2018) ..............................................................................7, 13, 28

*Doe v. Princeton Univ.*, No. 18-CV-16539 (MAS) (LHG), 2019 WL 161513, at *9

    (D.N.J. Jan. 9, 2019) ...................................................... 11, 14

*Doe v. Purdue Univ.*, 928 F.3d 652, 663 (7th Cir. 2019)............................................ 21

*Doe v. Univ. of S.*, No. 09-CV-62, 2011 WL 1258104, at *21 (E.D. Tenn. Mar. 31, 2011) ........ 25

*Doe v. Univ. of Scis.*, Docket No. 19-2966, 2020 WL 2786840, at *5

    (3d Cir. May 29, 2020) ............................................... 10, 14, 15

*Fields v. Thompson Printing Co.*, 363 F.3d 259, 270 (3d Cir. 2004)............................................ 17

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 421 F. Supp. 2d 831, 833

    (D.N.J. 2006)............................................................ 10

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) ..................................... 7

*Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635, 644 (3d Cir.1998) ................................... 16

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 161 (3d Cir. 2010) ....... 21

*Greene v. BMW of N. Am.*, No. 11-CV-04220 (WJM), 2014 WL 47940, at *3

    (D.N.J. Jan. 7, 2014) ..................................................... 8

*Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005)............................................ 7

*Hernandez v. Don Bosco Preparatory High*, 322 N.J. Super. 1 (App. Div. 1999) .... 13, 19, 21, 22

*Hills v. Bank of Am.*, No. CIV.A. 13-4960 ES, 2015 WL 1205007, at *4

    (D.N.J. Mar. 17, 2015) ................................................... 19

*Kumon N. Am., Inc. v. Timban*, No. 13–CV-4809, 2014 WL 2812122, at *7–8

    (D.N.J. June 23, 2014) ................................................... 18

*Lax v. Princeton Univ.*, 343 N.J. Super. 568, 573 (App. Div. 2001) ........................................... 28

*Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015)............................ 8

iv

*Mason v. Roman Catholic Archdiocese of Trenton*, No. 18-CV-10733 (MAS) (TJB), 2019 WL

    1320299, at *6 (D.N.J. Mar. 22, 2019) ..................................................................................... 28

*McMahon v. Salmond*, 573 Fed. Appx. 128, 132 (3d Cir. 2014) ........................................... 10, 15

Menaker v. Hofstra University, 18-3089-CV, 2019 WL 3819631, at *8

    (2d Cir. Aug. 15, 2019) ............................................................................................................ 8

*Mesadieu v. Union Cty.*, 17-CV-9014 (JMV) (JBC), 2019 WL 2004308, at *7

    (D.N.J. May 6, 2019) ................................................................................................................. 21

*Mittra v. Univ. of Med. & Dentistry of New Jersey*, 316 N.J. Super. 83, 92

    (App. Div. 1998) ................................................................................................................. 13, 22

*Moe v. Seton Hall University*, No. 09-CV-01424, 2010 WL 1609680, at *5

    (D.N.J. Apr. 20, 2010) ........................................................................................................ 12, 16

*Napolitano v. Trustees of Princeton Univ.*, 186 N.J. Super. 548 (App. Div. 1982) ... 11, 13, 16, 20

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ................................................. 6, 7

*ProCentury Ins. Co. v. Harbor House Club Condo. Ass'n, Inc.*, 652 F. Supp. 2d 552, 555

    (D.N.J. 2009) .............................................................................................................................. 6

*Prof'l Cleaning and Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc.*, 245 Fed. Appx. 161,

    165 (3d Cir. 2007) ................................................................................................................... 29

*Romeo v. Seton Hall Univ.*, 378 N.J. Super. 384, 395 (App. Div. 2005) ............................... 13, 22

*Rowe v. Mazel Thirty, LLC*, 209 N.J. 35, 45 (2012) ............................................................. 23, 26

*Salisbury Univ.*, 123 F. Supp. 3d at 763 ..................................................................................... 25

*Sapp v. Premier Educ. Grp., LP* .................................................................................................. 20

*Shaw v. Femenella & Associates*, No. 03-CV-5895 (GEB), 2005 WL 3320757, at *3

    (D.N.J. Dec. 7, 2005) .............................................................................................................. 23

*State v. Lisa*, 391 N.J. Super. 556, 575 (App. Div. 2007), *aff'd*, 194 N.J. 409 (2008) ................26

*Tafuto v. New Jersey Inst. of Tech.*, No. 10-CV-4521 (PGS), 2011 WL 3163240, at *5

    (D.N.J. July 26, 2011) .........................................................................................................29

*Yapak, LLC v. Massachusetts Bay Ins. Co.*, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009)....17

*Zimmer v. New Jersey Div. of Child Prot. & Permanency*, No. 15-CV-2524 (FLW) (DEA), 2016

    WL 234844, at *8 (D.N.J. Jan. 20, 2016) (citation omitted), *aff'd*, 741 Fed. Appx. 875

    (3d Cir. 2018).....................................................................................................................8

## **Statutes**

N.J.S.A. § 2A:53A-7 *et seq.*..................................................................................................... 26, 28

## **Rules**

Federal Rule of Civil Procedure 8(a) ........................................................................................... 6

## **INTRODUCTION**

Plaintiff John Doe ("Doe" or "Plaintiff") submits this memorandum of law in opposition to the motion to dismiss Plaintiff's First Amended Complaint ("Amended Complaint") filed by Defendants Princeton University ("Princeton" or the "University"), Michelle Minter, Regan Hunt Crotty, Joyce Chen Shueh, Walter Wright, Cole M. Crittenden, Kathleen Deignan, W. Rochelle Calhoun, Jill S. Dolan, and Sarah-Jane Leslie (collectively "Defendants").

As set forth in substantial detail in the Amended Complaint, Defendant Princeton: (i) violated Plaintiff's right to common law due process; (ii) breached its express contract with him; (iii) breached its implied contract with him; and (iv) breached the implied covenant of good faith and fair dealing in its contractual relationship with him. Plaintiff also alleges that all Defendants were negligent in their handling of the Title IX investigation and further alleges that Princeton is liable under the theory of *respondeat superior* for the negligent acts of the individual Defendants, each an employee of Princeton during the relevant time period.

At its core, Defendants' motion to dismiss is primarily a substantive disagreement with the facts of the Amended Complaint, utterly missing the mark on the standard for such a motion—to test the allegations of the Amended Complaint while *presuming all facts to be true and drawing all inferences in favor of the non-moving party*. Defendants conspicuously ignore or misrepresent huge swaths of the Amended Complaint, which provide considerable factual detail. Instead, Defendants simply cherry-pick a handful of allegations with which they disagree as the basis for their motion. Such a tactic is inappropriate and unavailing at this stage of the litigation. The Amended Complaint sufficiently sets forth factual allegations providing a plausible basis for the causes of action alleged. That is all that is needed. Defendants' motion should be denied.

## PROCEDURAL HISTORY

On March 5, 2019, Plaintiff filed his Complaint in this matter (ECF No. 1).  On July  10, 2019, Defendants moved to dismiss Plaintiff's Complaint (ECF No. 18).  On February 27, 2020, this Court dismissed Plaintiff's claims for violation of Title IX of the Education Acts of 1972, 20 U.S.C. § 1681 *et seq*., denied without prejudice Defendants' motion to dismiss the state law claims, and directed Plaintiff to show cause as to whether this Court retained subject matter jurisdiction over the state law causes of action in light of the dismissal of the federal claims, permitting Plaintiff to amend his Complaint to address the jurisdictional question (ECF No. 32).

On March 13, 2020 Plaintiff filed his Amended Complaint and his brief to Show Cause on jurisdiction (ECF Nos. 33 and 34). On March 23, 2020, this Court ruled that it has subject matter jurisdiction over Plaintiff's state law causes of action (ECF No. 37).  On April 6, 2020, Defendants filed the instant motion to dismiss the Amended Complaint (ECF No. 39).

## STATEMENT OF FACTS

A full accounting of the facts underlying Plaintiff's claims can be found in the Amended Complaint (ECF No. 33).  For the Court's convenience, the pertinent facts are as follows:

Plaintiff John Doe, and fellow Princeton student Alex Roe—who was born female and now identifies as gender non-binary—dated on and off from Plaintiff's sophomore year through his senior year at Princeton.   Am. Compl. ¶¶ 1-2, 84-87.   Plaintiff and Roe's romantic relationship was rocky—Plaintiff cheated on Roe, and Roe was constantly verbally abusive and emotionally manipulative towards Plaintiff.  *Id.* ¶¶ 2; 88-99.  On or about November 3, 2017, Plaintiff told Roe that he no longer wanted to be in a relationship.  Roe told Plaintiff that he was being "pathetic," "petty," and "sad," and cajoled him into one last sexual encounter, wherein Roe performed oral sex on Plaintiff.  *Id.* ¶ 100.  Plaintiff and Roe had minimal contact after that, other than a second conversation wherein Plaintiff reiterated he did not want to date Roe. *Id.* ¶ 104.

A few weeks after Plaintiff broke up with Roe, Roe began to allege, for the first time ever, after two years of dating, that Plaintiff sexually assaulted Roe. *Id.* ¶ 105. Roe's claims of assault were all over the map – ranging from claims of a single alleged incident that was "confusing and ambiguous," to claims of constant and continuous assaults throughout the relationship. Roe told some people that Plaintiff pinned Roe down and "raped" Roe, specifically using the phrase "sex without consent;" while Roe told others that Plaintiff pinned Roe down and digitally penetrated Roe's vagina, and still others that Roe could not recall whether there was any penetration, and still others that the two simply "kissed" after Roe initially said no but then said yes. *Id.* ¶ 106. Roe told some people that Plaintiff pressured Roe into sex and Roe eventually "gave in," "said yes," and "might as well enjoy it," while telling others that during sexual intercourse, Plaintiff asked Roe if what he was doing was sexual assault, to which Roe replied, "no." *Ibid.* While Roe was making these wildly inconsistent claims, Roe continued to attend group events with Plaintiff, including a birthday celebration for his sister. *Id.* ¶¶107-08.

In February of 2018, Plaintiff began dating someone new. *Id.* ¶ 109. Shortly thereafter, Roe told Plaintiff that "upon talking with a friend, Roe 'bec[a]me convinced'" that Plaintiff had "sexually assaulted [Roe] multiple times," and demanded an apology. Plaintiff refused to apologize for something he did not do. *Id.* ¶ 109. Roe then began contacting their mutual friends alleging that Plaintiff was "dangerous." *Id*. ¶ 110. [1] A week later, Roe filed a formal Title IX complaint against Plaintiff. *Id.* ¶¶ 114-15. Because Plaintiff was *never* provided a copy of Roe's initial complaint/report, to this day Plaintiff does not know precisely what behavior Roe *originally* alleged to have occurred. *Id.* ¶ 149.

---

[1] Roe would later renege on these claims, speciously explaining that Roe only meant Plaintiff was *emotionally* dangerous. *Id.* ¶ 113.

On or about March 19, 2018, Plaintiff received an email from Defendant Crotty stating: "Unfortunately, allegations have been made with my office that on or about Saturday, November 4, 2017, you allegedly engaged in non-consensual sexual contact with another student ([Roe]) in your dormitory room." *Id.* ¶ 115.  There were no further details.  Defendant Crotty, the Director of Title IX Administration at Princeton, informed Plaintiff that a panel of three employees—*herself*, Shueh, and Wright—would both investigate and adjudicate the allegations. *Id.* ¶¶ 115.  Roe had two interviews with the Panel, each time giving conflicting information and changing Roe's story. *Id.* ¶¶ 117-118; 121.  Plaintiff also had two interviews with the Panel, wherein he gave consistent testimony: that Roe was not in his room on the night of November 4, 2017, and the story was fabricated after he broke up with Roe. *Id.* ¶¶ 120; 122-123. Princeton's "investigation" consisted of the following: (i) interviewing several of Roe's friends, none of whom saw Roe enter Plaintiff's room on the night in question, and almost all of whom simply reported what Roe had told them (which was considerably different as to each witness); and (ii) reviewing the proximity card records for Roe and Plaintiff, and the electronic door records for Roe and Plaintiff's rooms on the night in question. *Id.* ¶¶ 106; 122.

Even though Roe gave conflicting accounts of when and how Roe allegedly went to Plaintiff's room, and even though Roe's accounts also conflicted with Roes' own witness statements and the proximity card records, Princeton did not review the security footage from the dorms to determine whether Roe actually went to Plaintiff's room on the night in question, nor did Princeton interview Plaintiff's neighbors to see if they could confirm or deny that Roe went to Plaintiff's room that night. *Id.* ¶¶ 151, 177.

The Panel ultimately found Plaintiff responsible for nonconsensual sexual contact with Roe. *Id.* ¶ 127.  Despite the fact that (i) every witness gave a substantially different account of

4

what Roe alleged to have happened (and when), (ii) many of those accounts included Roe *admitting* that Roe did not believe there was a sexual assault, that Roe expressly said "yes" to sexual conduct and assured Plaintiff that he was not committing an assault, or that the contact was limited to "kissing," (iii) the proximity card records did *not* line up with Roe's story, and (iv) Roe's claims arose for the first time in two years right after being dumped by Plaintiff, the Panel concluded that Roe was more credible and Roe's allegations were true "by a preponderance of the evidence." *Id.* ¶¶ 106, 121, 127-28, 134, 177.

Defendants Crittendon and Deignan determined Plaintiff's Sanction: a one-semester withholding of Plaintiff's transcript, the functional equivalent of a one-semester suspension.[2] *Id.* ¶ 129.  Most of the "reasons" given for the severity of the sanction were simply the Panel's conclusions that Roe did not consent, including a copy/paste of the Policy definition of consent. *Id.* ¶ 130.  Plaintiff appealed the decision and sanction, which appeal was assigned to Defendants Calhoun, Dolan, and Leslie.  Plaintiff's appeal was summarily rejected, with no explanation other than a form-response that the Appeal Panel reviewed all relevant information.  *Id.* ¶¶ 133-37.  As to the sanction, the Appeal Panel literally copy/pasted from the initial sanction letter and added no further analysis or explanation.  *Id.* ¶ 138.

Princeton's conduct policies, including the Sexual Discrimination and Misconduct Policy ("the Policy"), are contained within Princeton's published Rules, Rights, Responsibilities ("RRR") document.  The RRR outlines the school's expectations for its students, and sets forth Princeton's promises to its students in return. Am. Compl. ¶¶ 142-45.  According to the Policy: (i) Princeton "has an obligation to make reasonable efforts to investigate and address complaints or reports of sex or gender discrimination, including sexual misconduct, whenever it becomes

---

[2] Plaintiff had already completed his senior year at that point and so could not be suspended.

aware of such a complaint or report;" (ii) "[t]he Title IX Coordinator may need to proceed with an investigation even if a complainant specifically requests that the matter not be pursued;" (iii) "[a]ll panelists will have training in investigating and evaluating conduct prohibited under the policy" and "[t]he panelists will also be impartial and unbiased;" (iv) "the panel will interview witnesses as necessary;" (v) "[t]he panel will prepare a case file of all interview summaries, witness statements, and other documents," which will be presented to the complainant and respondent;  (vi) the Title IX Panel will "conduct an inquiry and determine, by a preponderance of the evidence" whether the Policy was violated;" and (vii) "[p]enalties will be determined based on the seriousness of the misconduct as compared to like cases in the past, and the student's previous disciplinary history (if any)."  *Id.* ¶¶ 147–155.

## ARGUMENT

### I.   LEGAL STANDARD.

Federal Rule of Civil Procedure 8(a) requires simply that a Complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim."  *ProCentury Ins. Co. v. Harbor House Club Condo. Ass'n, Inc.*, 652 F. Supp. 2d 552, 555 (D.N.J. 2009).  Rather, a Complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted).  Notice-pleading "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  *Id.* (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 556 (2007)).

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404

F.3d 744, 750 (3d Cir. 2005).  In reviewing the motion, the district court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under *any reasonable reading of the complaint*, the plaintiff *may* be entitled to relief."  *Phillips*, 515 F.3d at 233 (emphasis added). In that regard, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Twombly*, 550 U.S. at 556).  "The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail."  *Doe v. Princeton Univ*., No. 17-CV-1614 (PGS), 2018 WL 2396685, at *3 (D.N.J. May 24, 2018) *aff'd*, 790 F. App'x 379 (3d Cir. 2019) ("Princeton I").  Even where "the facts a plaintiff alleges in a complaint may turn out to be self-serving and untrue," a court at the motion-to-dismiss stage "is not engaged in an effort to determine the true facts."  *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).  "If the complaint is found sufficient to state a legal claim, the opposing party will then have ample opportunity to contest the truth of the plaintiff's allegations and to offer its own version" through discovery.  *Ibid.*

Moreover, the *Twombly* pleading standard "does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations and quotations omitted) (cited with approval by *Bridgewater Wholesalers, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co.*, No. 14-CV-3684 (SDW) (SCM), 2015 WL 3448120, at *6 (D.N.J. May 29, 2015).  Thus, the mandatory presumption of truth and the beneficial inference in favor of the Plaintiff apply not only to facts based on direct personal knowledge, but

also those alleged on "information and belief." *Bavendam v. Pearson Educ., Inc.*, 13-CV-3096 (FSH), 2013 WL 5530008, at *5 n.7 (D.N.J. Oct. 3, 2013) ("[P]laintiffs' reliance on the use of "information and belief" in their complaints does not prevent the complaints from stating a plausible claim . . . ."); *see also Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015) (denying motion to dismiss and noting that the Ninth, Seventh, and Second Circuit all presume truth of "information and belief" allegations).  Courts in the Third Circuit also give weight to "information and belief" allegations where "the belief is based on factual information that makes the inference of culpability plausible." *Zimmer v. New Jersey Div. of Child Prot. & Permanency*, No. 15-CV-2524 (FLW) (DEA), 2016 WL 234844, at *8 (D.N.J. Jan. 20, 2016), *aff'd*, 741 Fed. Appx. 875 (3d Cir. 2018); *see also Greene v. BMW of N. Am.*, No. 11-CV-04220 (WJM), 2014 WL 47940, at *3 (D.N.J. Jan. 7, 2014) (where first complaint was dismissed for failure to allege that defendant "knew with certainty" that its product would fail, amended complaint alleging that "on information and belief, [defendant] knew with certainty that the Tires would fail" was sufficient to preclude dismissal under Rule 12).

Throughout their brief, Defendants inappropriately attempt to argue the underlying merits of Princeton's disciplinary decision, as an end-run around the seventy-five page Amended Complaint. *See e.g.* Defs.' Br. 23-28.  As the Second Circuit has cautioned, district courts must not engage in substantive fact-finding or evaluation of the truth of Plaintiff's allegations on a Rule 12 motion.  *Menaker v. Hofstra Univ.,* 935 F.3d 20, 31 (2d Cir. 2019) (reversing dismissal where district court "failed to draw all reasonable inferences in [Plaintiff]'s favor and made improper findings of fact.").

Defendants' Motion to Dismiss annexes the following exhibits, which were not annexed to Doe's Amended Complaint: (i) Princeton's RRR (Defs' Exh. A); (ii) May 25, 2018, Decision

Letter (Defs' Exh. B); (iii) May 17, 2018 Memorandum from the Title IX Panel ("Panel Memo") (Defs' Exh. C); (iv) Doe's June 8, 2018 Appeal (Defs' Exh. D); and (v) Princeton's June 26, 2018, Decision on Doe's Appeal (Defs' Exh. E).

Defendants abuse the narrow circumstances in which documents outside the Amended Complaint may be considered.  While the District Court of New Jersey, in *Princeton I, supra,* stated that a Court *may* consider certain documents outside the Complaint which were both incorporated by reference and "integral" to the claim (2018 WL 2396685, at *2 n.1), recent caselaw suggests that such consideration must be strictly circumscribed. *See e.g. Doe v. Harvard Univ.,* 2020 WL 2769945, at *5 (D. Mass. May 28, 2020) (declining to consider the final investigative report to dispute Plaintiff's allegations, explaining: "although Plaintiff has referenced the Final Report, it is generally because he disagrees with its conclusions and not because he has adopted the university's investigatory findings."). The same logic applies here.

Most of the documents submitted by Defendants in support of their motion represent Princeton's *ultimate findings and conclusions*, not the *underlying evidence*. The gravamen of Plaintiff's claim is that Defendants' conclusions did not match the evidence.  Thus, Princeton's presentation of its own conclusions in order to justify those very conclusions is tautological and runs counter to the standard for a motion to dismiss, which is not an evaluation of the underlying merits.  Defendants' references to these documents for substantive disputes of fact must be disregarded. (*see, e.g.*, Defs' Br. at 23-27).[3]

---

[3] Documents such as the Panel Memo consist of unsworn hearsay, reliance upon which to dispute Plaintiff's factual allegations is completely inappropriate at the motion to dismiss stage of litigation. Flouting the applicable standard, Defendants seek to use these extraneous documents to defeat Plaintiff's allegations, which must be accepted as true at this juncture. For example, Defendants cite to the Panel Memo, which stated that "Roe's story was further corroborated by an electronically time-stamped journal entry," and rely on that claim *to prove the substantive matters asserted therein*. (Defs.' Br. 13).  On information and belief, what Roe presented was

## II.    PLAINTIFF SUFFICIENTLY ALLEGES CONTRACT CLAIMS.

Contrary to Defendants' arguments (Defs' Br. at 18-31), Plaintiff has sufficiently alleged his claims for (i) breach of contract (Am. Compl. ¶¶ 213-217); (ii) breach of implied contract (Am. Compl. ¶¶ 218-225); and (iii) breach of implied covenant of good faith and fair dealing (Am. Compl. ¶¶ 226-233).

### A.  Plaintiff Sufficiently Alleges All Elements of an Express Contract Claim.

The Third Circuit has recognized that students in New Jersey may bring "a viable breach-of-contract type claim" against their schools. *McMahon v. Salmond*, 573 Fed. Appx. 128, 132 (3d Cir. 2014).  To state a claim for breach of contract, a plaintiff must allege "that a valid contract existed, Defendant materially breached the contract and Plaintiff suffered damages as a result of the breach." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 421 F. Supp. 2d 831, 833 (D.N.J. 2006). As noted in *Princeton I*, the Court "may intervene where the institution violates in some substantial way its rules and regulations pertaining to student dismissals." *Princeton I*, 2018 WL 2396685, at *8 (D.N.J. May 24, 2018), *aff'd*, 790 F. App'x 379 (3d Cir. 2019) (internal quotation marks omitted, citing to *McMahon*, 573 Fed. Appx. at 132).  Plaintiff John Doe sufficiently alleges a contract with Princeton, substantial or material breach of that contract, and damages.  Defendants' motion to dismiss should be denied.

Plaintiff sufficiently alleges that an express contractual agreement existed between Plaintiff and Princeton.  In exchange for Plaintiff's enrollment and tuition, Princeton agreed to

---

actually just a word document with the date typed in by Roe, a far cry from an "electronic time-stamp."  This is precisely the sort of fact dispute that is not appropriate on a Rule 12 motion and precisely the reason this Court should disregard Princeton's attempt to rely on documents outside the pleadings, such as the Panel Memo.  Factual disputes are a matter for a later date.  *See Doe v. Univ. of Scis.*, Docket No. 19-2966, 2020 WL 2786840, at *5 (3d Cir. May 29, 2020) ("The District Court erred when it noted that it was 'skeptical' of Doe's claim . . . .  By indulging its skepticism, the District Court misapplied the familiar standard that governs motions to dismiss under Rule 12(b)(6).")

provide an education and confer a degree upon Plaintiff's completion of the degree requirements and compliance with Princeton's other policies. These policies are set forth in the RRR, which Princeton disseminates each year.  The RRR outlines Princeton's expectations from each student, as well as Princeton's promises to each student, including with respect to the disciplinary process.   Am. Compl. ¶¶ 142-48, 214.   Plaintiff thus sets forth consideration and mutual promises of the parties, giving rise to a plausible inference of a contractual relationship.  *See Doe v. Princeton Univ.*, No. 18-CV-16539 (MAS) (LHG), 2019 WL 161513, at *9 (D.N.J. Jan. 9, 2019) ("Princeton II") ("Plaintiff has plausibly alleged the existence of a contract between Princeton and Plaintiff" based on Plaintiff's tuition and the RRR.); *see also Napolitano v. Trustees of Princeton Univ.*, 186 N.J. Super. 548 (App. Div. 1982) ("The student pays a tuition which might . . . represent a contractual consideration.").

Plaintiff also sufficiently alleges that Princeton materially and substantially breached its contract.  Plaintiff identifies numerous, specific provisions of the RRR and lists the precise ways in which Defendants failed to comply with such provisions, including Princeton's failure to adequately investigate, evaluate, and adjudicate Roe's claims against Plaintiff and Plaintiff's claims against Roe, as well as Princeton's failure to provide impartial and unbiased decision-making.  Am. Compl. ¶¶ 148-55, 215.  These claims are sufficient to survive a motion to dismiss.  *See Princeton II*, 2019 WL 161513, at *9 (Plaintiff "plausibly alleged that Princeton has breached [its] contract by denying Plaintiff's extension of time for 'good cause.'"); *Doe v. Rider*, No. 3:16-CV-4882-BRM-DEA 2018 WL 466225, at *13 (D.N.J. Jan. 17, 2018) (allegations that "the Policy requires 'a trained investigator or investigators to promptly, fairly and impartially investigate the complaint,' but that [Defendant] was neither fair nor impartial" sufficient to state contract claim); *Collick v. William Paterson Univ.*, No. 16-471 (KM) (JBC), 2016 WL 6824374,

at *23 (D.N.J. Nov. 17, 2016), *adhered to on denial of reconsideration*, No. CV 16-471 (KM) (JBC), 2017 WL 1508177 (D.N.J. Apr. 25, 2017), and *aff'd in part, remanded in part*, 699 F. App'x 129 (3d Cir. 2017) (allegations that "Defendants did not adhere to [university]'s own rules, that the procedure they followed was unfair, and that the decision was not based on sufficient evidence" sufficient to state breach of contract); *Moe v. Seton Hall University*, No. 09-CV-01424, 2010 WL 1609680, at *5 (D.N.J. Apr. 20, 2010) ("Plaintiff alleges that the University failed to comply with its own rules in regard to grading, personal leave, and failed to follow its own policies for handling grievances and complaints. That is sufficient[.]").

Finally, Plaintiff sufficiently alleges damages. Plaintiff states that, as a result of Princeton's flawed disciplinary process, he was wrongfully found responsible for sexual misconduct, improperly disciplined, and denied the timely conferral of his degree.  As a direct and foreseeable result, he has been denied the ability to begin his career on schedule, and has suffered damaged education and career prospects by virtue of the false finding of sexual misconduct, which carries a particularly strong stigma in the current social and political climate. Am. Compl. ¶¶ 156-65, 216-217.  Moreover, Defendants do not dispute this aspect of Plaintiff's claim. Plaintiff adequately alleges a contractual relationship, breach, and damages.

Defendants misstate the law when they cite a string of inapposite cases to support their proposition that it is "doubtful" that New Jersey law permits contractual obligations based on the provisions of a student handbook.[4] (Defs' Br. at 19). The cases cited by Defendants involve

_____

[4] Defendants likewise string-cite cases from other jurisdictions, purportedly indicating a trend amongst federal courts to find that Student Handbooks are not enforceable contracts.  However, cases across jurisdictions have found the provisions of student handbooks and related documents to be enforceable in contract. *See, e.g., Doe v. Harvard Univ.,* No. 1:18-CV-12150-IT, 2020 WL 2769945, at *9 (D. Mass. May 28, 2020) ("As Harvard is a private university, the relationship between the student and the university is based on state contract law (internal citation omitted)); *Doe v. Belmont Univ.,* 334 F. Supp. 3d 877, 890 (M.D. Tenn. 2018) ("A disciplinary action by a

Plaintiffs who either failed to allege the existence of a contract altogether, or failed to identify a specific contractual term that was breached; and second, all but one of Defendants' cases were decided on summary judgment, not at the motion to dismiss stage.  *See Barker v. Our Lady of Mount Carmel Sch.*, No. 12-CV-4308, 2016 WL 4571388, at *15 (D.N.J. Sept. 1, 2016) (on summary judgment, holding Plaintiffs "have not identified what contract or contractual provision Defendants allegedly breached."); *Romeo v. Seton Hall Univ.*, 378 N.J. Super. 384, 395 (App. Div. 2005) (on appeal from summary judgment, holding the school's generic statement that it does not discriminate is not an enforceable unilateral contract); *Mittra v. Univ. of Med. & Dentistry of New Jersey*, 316 N.J. Super. 83, 92 (App. Div. 1998) (on summary judgment, holding "plaintiff failed to identify any specific rule or regulation that was violated by UMDNJ in dismissing plaintiff for academic reasons."); *Napolitano*, 186 N.J. Super. at 571 (on appeal from summary judgment and hearing, finding student failed to prove substantive violation); *Hernandez v. Don Bosco Preparatory High*, 322 N.J. Super. 1 (App. Div. 1999) (on appeal from summary judgment addressing procedural rights of student expelled from private high school).

In *Princeton I,* where a student's contract claim was dismissed on a Rule 12 motion, the court found that Plaintiff failed to allege any specific provisions of the RRR that Princeton violated, instead relying on "very general and vague" statements, such as "[t]he purpose of the regulations is to protect the well-being of the Princeton community."  2018 WL 2396685, at *7. That is plainly not the case here.

---

university is the appropriate subject matter of a breach of contract action."); *Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 810 (E.D. Pa. 2017 ("[A] student can bring a cause of action against [an] institution for breach of contract where the institution ignores or violates portions of the written contract." (internal citations omitted)); *Doe v. Syracuse Univ.*, No. 5:18-CV-377, 2019 WL 2021026, at *10 (N.D.N.Y. May 8, 2019) ("In New York, the relationship between a university and its students is contractual in nature." (internal quotation marks and citations omitted)).

In the instant case, Plaintiff alleges narrow, specific provisions of the RRR and provides an explanation of precisely how each provision was substantially and materially breached. Am. Compl. ¶¶ 148-55, 215. These are not generic promises of "nondiscrimination;" they are specific promises with respect to the steps, requirements, and procedural guarantees of the disciplinary process for sexual misconduct complaints. Thus, this case is more like *Princeton II*, which permitted Plaintiff's contract claims to go forward, finding that the allegation of a *single* specific breach—that Princeton failed to extend the disciplinary process for "good cause"—sufficed to survive a Rule 12 motion. 2019 WL 161513, at *9. *See also Rider*, 2018 WL 466225, at *13-14 (denying university's motion to dismiss student's breach of contract claim).

Moreover, Defendants improperly attempt to argue the underlying factual merits of Plaintiff's breach claims (Defs.' Br. 23-28). *See Princeton II.*, 2019 WL 161513, at *9 (question of breach is "more appropriately resolved at the summary judgment stage of litigation"). As is evident by *Princeton II*, substantive arguments about whether a breach occurred are reserved until the fact record is developed. Likewise, Defendants' frequent citation to and reliance upon the Panel Memo to disprove Plaintiff's allegations of breach must be disregarded by the court. As discussed above, Plaintiff's factual allegations of breach must be credited by the Court at this juncture. *See Doe v. Univ. of Scis.*, Docket No. 19-2966, 2020 WL 2786840, at *5 (3d Cir. May 29, 2020) ("The District Court erred when it noted that it was "skeptical" of Doe's claim . . . . By indulging its skepticism, the District Court misapplied the familiar standard that governs motions to dismiss under Rule 12(b)(6).")

Plaintiff has alleged, *inter alia*, the following substantial breaches of Princeton's policies and procedures: (i) failure to address Plaintiff's report that Roe had sex with him while he was incapacitated (Am. Compl. ¶148); (ii) failure to investigate Plaintiff's report of Roe possibly

kissing a drunk female student without proper consent. (Am. Compl. ¶148); (iii) failure to sufficiently investigate concerns raised by Plaintiff's sister, in the Fall of 2018, that Roe had been stalking her (Am. Compl. ¶148); (iv) deliberate failure to set forth the date the complaint was first received, and failure to provide Plaintiff a copy of the initial complaint;(Am. Compl. ¶149); (v) on information and belief, failure to properly train the panelists, who were partial and biased(Am. Compl. ¶150); (vi) failure to interview any of Plaintiff's neighbors as to what they may have seen or heard on the night in question (Am. Compl. ¶151); (vii) failure to provide Plaintiff with all of the witness statements and evidence against him (Am. Compl. ¶152); (viii) failure to "conduct an inquiry and determine, by a preponderance of the evidence" whether the Policy was violated (Am. Compl. ¶153); and (ix) failure to take into account the appropriate factors in issuing the sanction (Am. Compl. ¶154).

Defendants' claim that courts "routinely" accord universities deference in both academic and disciplinary proceedings is a red-herring. (Defs' Br. at 22).  Although it is true that "courts have a limited role in resolving *academic* conflicts between students and universities," *McMahon*, 573 Fed. Appx. at 131–32 (emphasis added), this higher level of deference is *not* mandated when the claims involve general misconduct.  *See Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 86 (1978) (noting "significant difference between the failure of a student to meet academic standards and the violation by a student of valid rules of conduct," which "calls for far less stringent procedural requirements in the case of an academic dismissal"); *Doe v. Univ. of Scis.,* No. 19-2966, 2020 WL 2786840, at *7 (3d Cir. May 29, 2020) (noting that while judicial deference is more appropriate in cases where a university investigates matters "uniquely within the institution's province" such as academic integrity, deference is not appropriate where "[t]he investigation and fair adjudication of alleged criminal activity like

sexual assault is not uniquely within the province of colleges and universities."); s*ee also Napolitano*, 186 N.J. Super. at 563 ("We do not view this case as involving an appeal from a finding of general misconduct; instead, we are concerned with the application of academic standards by the authorities at Princeton."); *Collick* 2016 WL 6824374, at *22 n.22 ("Academic failure cases present public policy concerns not present in ordinary misconduct cases.")

As this Court astutely reasoned nearly a decade ago, when denying a University's motion to dismiss a student's contract claims,

> To the extent that *Mittra* is contrary authority, . . . that case was expressly limited to academic performance, by which the Appellate Division meant an evaluation of the student's "ability to master the required curriculum."   Here, by contrast, the gravamen of the dispute does not relate to mastery of academic materials, but relates to whether . . . the University complied with its own procedures for grading and for adjudicating grievances. Although "[r]igid application of contract principles to controversies concerning student academic performance would tend to intrude upon academic freedom and to generate precisely the kind of disputes that the courts should be hesitant to resolve,"  by contrast, *the sort of dispute alleged here does not raise those policy concerns*.

*Moe*, 2010 WL 1609680, at *5 (D.N.J. Apr. 20, 2010) (citations omitted).

Plaintiff sets forth sufficient facts to plausibly allege contract, breach, and damages. Defendants fail to meet their burden of proving that no claim has been stated, instead seeking to argue no substantial breach.  Defendants' arguments fail, and their motion should be denied.

### B. Plaintiff Sufficiently Alleges Breach of Implied Contract.

A plaintiff stating a claim for breach of an implied contract must allege the same elements required in an express contract: offer, acceptance, and consideration. *Gardiner v. V.I. Water & Power Auth.,* 145 F.3d 635, 644 (3d Cir.1998). Proof of an implied-in-fact contract comes from "conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Id.*

16

In the instant case, in addition to the ordinary contract elements already addressed above, Plaintiff sufficiently alleges that the conduct of the parties implies a tacit understanding to be bound by the terms of the RRR.  Indeed, the entire basis of Princeton's discipline of Plaintiff is that he allegedly violated the RRR, and throughout the process, Defendants consistently referred to the RRR and the policies therein in justifying their actions and setting forth their alleged standards. Am. Compl. ¶¶ 113-15, 127-30, 136-38.  Defendants cannot simultaneously rely upon the RRR to discipline Plaintiff and then claim that they never intended to be bound by the RRR. Thus, Plaintiff sufficiently alleges an implied-in-fact contract, and Defendants' motion should be denied.

### C. Plaintiff Sufficiently Alleges Breach of the Covenant of Good Faith and Fair Dealing.

"Pursuant to New Jersey law, all contracts have an implied covenant of good faith and fair dealing, which prohibits either party from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Rider*, 2018 WL 466225, at *14 (quoting *Fields v. Thompson Printing Co.*, 363 F.3d 259, 270 (3d Cir. 2004)).  While there is no bright line test for establishing a breach of this covenant, "two elements appear to recur with some frequency: (1) the defendant acts in bad faith or with a malicious motive, (2) to deny the plaintiff some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract." *Collick*, 2016 WL 6824374, at *23 (citing *Yapak, LLC v. Massachusetts Bay Ins. Co.*, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009)).

In addition, although covenant claims are frequently subsumed by a plaintiff's contract claim, courts permit plaintiffs to assert an independent covenant claim "to allow redress for a contracting party's bad-faith performance of an agreement . . . and to rectify a party's unfair

exercise of discretion regarding its contract performance." *Creative Concepts Mfg. Ltd. v. Team Beans LLC*, No. 17-CV-6066 (BRM) (DEA), 2018 WL 2002800, at \*4 (D.N.J. Apr. 30, 2018) (quoting *Kumon N. Am., Inc. v. Timban*, No. 13–CV-4809, 2014 WL 2812122, at \*7–8 (D.N.J. June 23, 2014)).

In the instant case, contrary to Defendants' assertions (Defs. Br. at 31), Plaintiff alleges that Princeton performed its contractual obligations in bad faith, motivated by gender bias and institutional self-preservation, as well as abused its discretion in finding Plaintiff responsible and imposing and unduly harsh and essentially unexplained sanction. Am. Compl. ¶¶ 129-32; 149; 226-33.  In *Univ. of Scis.*, 2020 WL 2786840, at \*5-6 the Third Circuit recently found that a University's decision not to pursue potential policy violations by complainant, *regardless of whether the male respondent filed a formal complaint*, coupled with federal pressure on the University after the Dear Colleague Letter, sufficiently alleged bias on the basis of sex. Plaintiff's allegations in the Amended Complaint mirror these claims, and thus also sufficiently allege that Princeton acted with gender bias in making the relevant determination.  (Am. Compl. ¶¶ 148, 178).  Undoubtedly, such a bias would implicate violation of the covenant of good faith.

By way of example, and not limitation: (i) the "justifications" for imposing Plaintiff's sanction were mostly just the Panel's conclusions that Roe did not consent, including a basic copy/paste of part of the Policy definition of consent (Am. Compl. ¶130; 136-38); (ii) other than a general statement that the Panel reviewed and considered all relevant information, the Appeal Denial did not provide any substantive reasoning for upholding the Finding and failed to address Plaintiff's concern over the missing witnesses, Student I and Student J. (Am. Compl. ¶¶ 136-37); and (iii) the Panel's final report issued with the Finding carefully avoids setting forth the date the

18

complaint was first received, and, in fact, Plaintiff was never provided a copy of the initial complaint or statement (Am. Compl. ¶149).

Depending on the facts developed in discovery, Plaintiff's allegations, as more fully set forth in the Amended Complaint, may be found to support either substantive violations of the contract, or violations of the inherent covenant of good faith and fair dealing.  At this stage of the litigation, Plaintiff sufficiently alleges facts to meet either standard.  As such, Defendants' motion to dismiss should be denied.  *See Rider*, 2018 WL 466225, at *14 (permitting covenant claims to proceed, based on allegation that university Dean acted with "ill motives"); *Collick*, 2016 WL 6824374, at *24 ("It may be that this cause of action is superfluous in light of the allegations of a straightforward breach of contract. Nevertheless, the motion to dismiss [the covenant claim] is denied."); *Hills v. Bank of Am.*, No. CIV.A. 13-4960 ES, 2015 WL 1205007, at *4 (D.N.J. Mar. 17, 2015) ("Under New Jersey law, a claim for breach of the duty of good faith and fair dealing requires a showing of 'bad motive or intention' ... though at the pleading stage all that is required is an allegation of bad faith." (internal citations omitted)).

## III.   PLAINTIFF SUFFICIENTLY ALLEGES COMMON LAW DUE PROCESS.

Plaintiff sufficiently alleges a common law due process claim against Princeton, in accordance with New Jersey law. In *Hernandez v. Don Bosco Preparatory High*, 322 N.J. Super. 1 (App. Div. 1999), the New Jersey Superior Court, Appellate Division, addressed as a matter of first impression the question of whether a private secondary school student could allege a due process claim against his school.  While finding that private school students are not entitled to the full panoply of due process protections accorded to public school students under the constitution, the court found that "due process safeguards can [not] be cavalierly ignored or disregarded," and thus held, "a private high school, when expelling a student for misconduct . . .

19

must adhere to its own established procedures for dismissal[] . . . [and] follow a procedure that is fundamentally fair." *Id.* at 21.  Notably, the court in *Hernandez* expressly held that this standard is lower than that required of private universities, which must employ more rigorous safeguards. *Ibid.* ("[T]he procedural rights of a private university student will be more aggressively protected by the courts when compared to the procedural rights of an expelled student at a private high school.").  Thus, not only did *Hernandez* find a common law due process claim existed, it also held that the standards for meeting due process are *higher* in the university setting.  Likewise, in *Napolitano*, 186 N.J. Super. at 570, the Appellate Division, after numerous hearings and on a full factual record, made a substantive finding that a student disciplined for plagiarism received adequate procedural protections "under due process considerations."

Indeed, this court, in *Sapp v. Premier Educ. Grp., LP*,[5] cited by Defendants, expressly acknowledged the general viability of a due process claim against a private school.  In *Sapp*, the District Court, after dismissing Plaintiff's contract claims, separately analyzed Plaintiff's request for leave to amend her complaint to add a common law fundamental fairness claim.  After finding that Plaintiff failed to substantively meet the elements of such a claim, the court denied the motion as futile.  *Id.* at *12. Contrary to Defendants' assertion, however, the court did not find that there was no such claim available—if it did, it need not have evaluated the merits of the claim.

In the instant case, Plaintiff sufficiently alleges that Princeton violated his common law due process rights to a fundamentally fair proceeding. Am. Compl. ¶¶ 201-212.  Specifically, Plaintiff alleges that the disciplinary process failed to comply with Princeton's established policies, and was one-sided and biased.  In addition, Plaintiff alleges that certain evidence was

---

[5] No. 15-CV-8591 (RMB) (AMD), 2016 WL 6434137 (D.N.J. Oct. 28, 2016).

withheld from him, including all of the witness identities and, on information and belief, some of the witness statements and Alex Roe's own initial statement, and that no real effort was undertaken to assess Roe's credibility.   As the Seventh Circuit recently held, the act of withholding evidence upon which the adjudicator relied in a disciplinary proceeding is "sufficient to render the process fundamentally unfair" under a due process analysis.  *Doe v. Purdue Univ.*, 928 F.3d 652, 663 (7th Cir. 2019); *see also Doe v. Univ. of Scis.*, 2020 WL 2786840, at *9 ("[T]he basic elements of federal procedural fairness in a Title IX sexual-misconduct proceeding include a real, meaningful hearing and, when credibility determinations are at issue, the opportunity for cross-examination of witnesses. . . . USciences's contractual promises of "fair" and "equitable" treatment to those accused of sexual misconduct require at least a real, live, and adversarial hearing and the opportunity for the accused student or his or her representative to cross-examine witnesses.").   Thus, Plaintiff adequately alleges that Princeton did not meet the minimal common law due process standards.  *See also Hernandez*, 322 N.J. Super. at 21.

Moreover, even taking a more traditional view of basic due process requirements—notice and an opportunity to be heard—Plaintiff was not afforded due process here.  First, with respect to notice, Plaintiff alleges that he was never provided a copy of Roe's initial statement, nor the identities of the witnesses against him.  Second, with respect to an opportunity to be heard, a fundamental element of this right is the right to be heard *by a neutral arbiter.  Mesadieu v. Union Cty.*, 17-CV-9014 (JMV) (JBC), 2019 WL 2004308, at *7 (D.N.J. May 6, 2019) (citing *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 161 (3d Cir. 2010)).  Plaintiff was denied this right, as Defendant Crotty, who served as both investigator and adjudicator, was personally under pressure as Princeton's Director of Title IX Administration, to convict and

severely punish males accused of sexual assault. Am. Compl. ¶¶ 20, 61-75; 150.  Indeed, the new

Title IX regulations expressly preclude the "single-investigator" model employed by Princeton,

where the investigatory and adjudicatory functions are combined under one person (or group).

*See* Dept. of Ed., Summary of Major Provisions of the Department of Education's Final Rule

(May 6, 2020), https://www2.ed.gov/about/offices/list/ocr/docs/titleix-summary.pdf ("The

decision-maker . . . cannot be the same person as the Title IX Coordinator or the

investigator . . .").  Thus, Plaintiff adequately alleges that he was denied the most basic elements

of due process under its traditional formulation.

Finally, while Defendants correctly note that New Jersey courts have viewed "the

relationship between a student and a private university [as] unique, not purely contractual or

associational," *Hernandez*, 322 N.J. Super. at 19, no New Jersey court since *Hernandez* has

rejected either a student's contract claim or a common law due process/fundamental fairness

claim as legally invalid *per se*.  In the one post-*Hernandez* case cited by Defendants, the Plaintiff

never sought to press a due process claim, and so the issue was not before the court.  *See Romeo*,

378 N.J. Super. 384 (permitting contract claim to proceed to summary judgment).[6]  Thus, the due

process claim advanced by Plaintiff, although potentially overlapping with his contract claim, is

legally viable and adequately alleged under the relevant law.  Defendants' motion should be

denied.

## IV.    PLAINTIFF SUFFICIENTLY ALLEGES NEGLIGENCE AND *RESPONDEAT SUPERIOR* CLAIMS.

Contrary to Defendants' arguments (Defs' Br. at 11-18), Plaintiff has sufficiently pled his

claims for negligence against Princeton as well as the individual Defendants named herein, i.e.

---

[6] The same applies to *Mittra*, 316 N.J. Super. 83, which was decided before *Hernandez*.  While
the court declined to apply "strict contract *principles*," it did accept and evaluate Plaintiff's
contract *claims*.

Defendants Minter, Crotty, Shueh, Wright, Crittenden, Deignan, Calhoun, Dolan, and Leslie. Plaintiff has also sufficiently pled his *respondeat superior* claim against Princeton."To prevail on a negligence claim under New Jersey law, a plaintiff must establish the following elements: (1) duty of care; (2) breach of duty; (3) proximate cause; and (4) actual damages." *Shaw v. Femenella & Associates*, No. 03-CV-5895 (GEB), 2005 WL 3320757, at *3 (D.N.J. Dec. 7, 2005) (denying motion to dismiss plaintiff student's negligence claims against Princeton University).  Under the theory of *respondeat superior*, an employer "can be found liable for the negligence of an employee causing injuries to third parties, if at the time of the occurrence, the employee was acting within the scope of his or her employment." *See generally¸ Carter v. Reynolds*, 175 N.J. 402, 408–09, 815 A.2d 460, 463–64 (2003) (internal citations omitted).

### A. Defendants Owed Plaintiff a Duty of Care, and Breached that Duty.

Under New Jersey law,

> Whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy. That inquiry involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.

*Rowe v. Mazel Thirty, LLC*, 209 N.J. 35, 45 (2012).  In the instant case, Plaintiff sufficiently alleges that Defendants owed him a duty of care. Specifically, Plaintiff alleges that the individual defendants, as Princeton employees tasked with investigating and adjudicating student disciplinary matters, owed Plaintiff a duty to conduct those proceedings with due care.  Am. Compl. ¶¶ 19-27, 234-43. The opportunity to exercise due care rests entirely with Defendants, and the public naturally has a high interest in ensuring that universities do not impose discipline arbitrarily or without cause.  In addition, the attendant risk to a negligent

23

investigation/adjudication is extremely high, as it can result in permanent educational, professional, and reputational harm for the student.  Am. Compl. ¶¶ 156-65.

Plaintiff alleges that this duty arose from, *inter alia*, the individual Defendants' positions and participation in the disciplinary process, separate and apart from Princeton's contractual duties as set forth in the RRR. Am. Compl. ¶¶ 235-38.  While Plaintiff's contractual claims are only alleged against Princeton and focus on the RRR, Plaintiff's negligence claims are directed towards the individual Defendants and focus on a more general duty of care in conducting student disciplinary proceedings.  Indeed, even without a specific process for discipline set forth in the RRR, it could hardly be argued that Princeton's employees can act without principle or limit in disciplining students.  Therein lies the duty of care.

Plaintiff also asserts negligence liability against Princeton (Am. Compl. ¶¶ 244-250) under a theory of *respondeat superior.*  All individual Defendants were employees, acting within the scope of their employment, as they negligently handled the Title IX investigation against Doe. Far from asserting "conclusory" allegations (*see* Defs' Br. at 17), Plaintiff has amply pled the duties owed to him by Defendants and the breach of those duties.  By way of example, not limitation: (i) Princeton, through its agents and employees, withheld witness identities from Plaintiff; (ii) Princeton, through its agents and employees, refused to give Plaintiff unfettered access to the full investigative file/all of the evidence against him; (iii) Defendants failed to investigate avenues that could have concretely proven or disproven Roe's claim, or interview witnesses who could provide firsthand, contemporaneous information, instead relying almost exclusively on "evidence" created by Roe after the fact; (iv) The Title IX Panel, i.e. Defendants Crotty, Shueh and Wright ("collectively, the "Title IX Panel"), wrote off inconsistencies between Roe and Roe's witnesses, and found that the witnesses were reliable insofar as they supported

Roe and were "confused" insofar as they contradicted Roe; (v) the Title IX Panel placed the burden of proof on Plaintiff to disprove Roe's story, failing to afford him a presumption of innocence; (vi) the Title IX Panel failed to apply the appropriate evidentiary standard; (vii) the Title IX Panel disregarded potential bias/conflicts of the witnesses and Roe's motivation to lie; (viii) the Title IX Panel members were biased and conflicted; and (ix) Defendants were inadequately trained. Am. Compl. ¶¶ 105-113, 117-128, 133-135, 149-153, 154, 177.

Several courts addressing the precise issue of whether a school and its employees owed a student a duty of care in carrying out the school's disciplinary process, have found that such a duty exists, or at least, that the plaintiff students sufficiently alleged a duty to escape dismissal on a Rule 12 motion—including this very court. *See, e.g., Collick*, 2016 WL 6824374, at *26 (denying university's motion to dismiss negligence claims by student accused of sexual misconduct); *see also Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 763 ( D. Md. 2015) (denying motion to dismiss where "Plaintiffs allege that SU Defendants were negligent in their direct and personal treatment of Plaintiffs, as evidenced by their failure to adhere to SU's policies and procedures" in adjudicating sexual misconduct allegations against Plaintiffs); *Doe v. Univ. of S.*, No. 09-CV-62, 2011 WL 1258104, at *21 (E.D. Tenn. Mar. 31, 2011) (denying summary judgment where "a jury could find that the harm caused by the University's allegedly and arguably haphazard implementation of its own Sexual Assault Policies was foreseeable, especially where here, as there, the harm was severe: a wrongful conviction by a disciplinary committee"); *Rollins v. Cardinal Stritch Univ.*, 626 N.W.2d 464, 470 (Minn. Ct. App. 2001) ("[C]ommon law imposes a duty on the part of private universities not to expel students in an arbitrary manner."). *See also*, regarding conduct in general disciplinary proceedings, *Atria v. Vanderbilt Univ.*, 142 Fed. Appx. 246, 252 (6th Cir. 2005) (reversing summary judgment

dismissing student's negligence claim, reasoning that "[t]he gravity of the harm posed by [the professor's conduct] is severe: a wrongful conviction by a disciplinary committee could ruin a student's chances of admittance to graduate school.").  Plaintiff thus sufficiently alleges a duty of care.

Defendants argue that Plaintiff cannot allege negligence without alleging a "special relationship" between the parties.  Defs.' Br. 14-15.  Defendants' argument is misplaced.  The "special relationship" analysis applies in determining whether one person owes a duty to *rescue or protect from third parties*, which is separate and distinct from an ordinary duty of care.  *See State v. Lisa*, 391 N.J. Super. 556, 575 (App. Div. 2007), *aff'd*, 194 N.J. 409 (2008) (describing *Poole v. Janieski*[7] as addressing "the duty to render aid to another").  In determining a duty of care under general negligence principles, New Jersey courts employ the balancing test outlined in *Rowe,* 209 N.J. 35, *supra*, which tips in favor of finding a duty here.

Plaintiff also adequately alleges breach and damages.  Specifically, Plaintiff alleges that the individual Defendants proceeded in the disciplinary process despite insufficient training, were motivated by improper considerations such as political expedience, and failed to exercise a reasonable degree of care in the investigation of Roe's and Plaintiff's claims. Am. Compl. ¶¶ 234-43.  Plaintiff further alleges that as a result of Defendants' failure to exercise due care, he was improperly found responsible for sexual misconduct and sanctioned with the delayed conferral of his degree, resulting in economic and reputational harm. Am. Compl. ¶¶ 156-65.  Thus, Plaintiff sufficiently alleges all aspects of a negligence[8] claim against Defendants.

---

[7] 259 N.J. Super. 83 (Law Div. 1992).  Defendants improperly cite *Poole* as setting forth the applicable standard.  Defs.' Br. 14.

[8] For clarity, Plaintiff alleges gross negligence by Defendant Princeton and its employees/agents. Am. Compl. ¶¶ 239.

Defendants' motion should be denied.

**B.  The Charitable Immunity Act Does Not Warrant Dismissal.**

The New Jersey Charitable Immunity Act (NJCIA), N.J.S.A. § 2A:53A-7 *et seq.*, provides immunity to any "nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes or its trustees, directors, officers, employees, agents, servants or volunteers," from ordinary negligence claims for money damages by a plaintiff who "is a beneficiary" of the organization at the time of the injury.  N.J.S.A. 2A:53A-7(a).  However, the NJCIA does not confer immunity for "damage by a willful, wanton or grossly negligent act of commission or omission."  N.J.S.A. 2A:53A-7(c).  In addition, "Charitable immunity is an affirmative defense, as to which . . . defendants bear the burden of persuasion. . . .  Consequently, [courts] cannot dismiss a complaint on a motion to dismiss unless it is clear from the face of the complaint that the immunity applies—*i.e.*, that plaintiffs have pled themselves out of court."  *Collick*, 2016 WL 6824374, at *27 (denying university's motion to dismiss negligence claims under NJCIA).

"[A]n entity qualifies for charitable immunity when it '(1) was formed for nonprofit purposes; (2) is organized exclusively for religious, charitable or educational purposes; and (3) was promoting such objectives and purposes at the time of the injury to plaintiff who was then a beneficiary of the charitable works."  *Id.* *26 (citations omitted).  Defendants fail to meet their burden of proving immunity under the NJCIA at the motion to dismiss stage.

First, the Amended Complaint makes no mention of Princeton's founding nor its particular organization.  It simply notes that Princeton is a "partially federally funded private university."  Am. Compl. ¶ 18.  This does not establish Princeton or its employees as qualified entities under the NJCIA.  Second, Plaintiff seeks equitable relief in addition to money damages, which is not immunized under the statute.  Am. Compl. at 75 (ix) ("Prayer for Relief").  Third,

27

se

Plaintiff alleges gross negligence and intentional and willful conduct by Princeton and its employees, including the employees' improper training, improper motives, refusal to address withheld/missing evidence, intentional non-disclosure of relevant dates, and failure to conduct a genuine review and give Plaintiff's claims due consideration or analysis. Am. Compl. ¶¶ 125-32, 133-40, 237-39.  Fourth, Defendants fail to prove that Plaintiff was a beneficiary at the time of injury.  The Decision Letter was issued on May 25, 2018, *after* Plaintiff had completed all of his coursework. Am. Compl. ¶ 127.  Plaintiff's appeal was denied on June 26, 2018—weeks after Plaintiff completed his courses and left campus, and in fact, after Princeton's commencement. Am. Compl. ¶ 136, *see also* http://www.princeton.edu/mediakits/2018/graduation/.  As such, many of the actions complained of, and the injuries incurred therefrom, happened after Plaintiff had completed his studies and left campus, and was thus no longer a beneficiary of Princeton.

Defendants have failed to prove, based on the Amended Complaint, that they are entitled to charitable immunity as a matter of law, and the cases they rely on are distinguishable.  In one of Defendants' cited cases, the negligence claims were dismissed because Plaintiff *conceded* that the NJCIA applied.  *Mason v. Roman Catholic Archdiocese of Trenton*, No. 18-CV-10733 (MAS) (TJB), 2019 WL 1320299, at *6 (D.N.J. Mar. 22, 2019).  The *Lax* case, also cited by defendants, was determined on summary judgment, not on a Rule 12 motion.  *Lax v. Princeton Univ.*, 343 N.J. Super. 568, 573 (App. Div. 2001).  Finally, the Plaintiff in *Princeton I*[9] was a student for the full duration of the events underlying his complaint. *Princeton I*, 2018 WL 2396685, at *9.  None of those factors is present here. Defendants' motion should be denied.

---

[9] Defendants cite the affirmance of *Princeton I, Doe v Princeton Univ.*, 790 Fed. App. 379 (3rd Cir. 2019), but fail to note that this decision does not constitute binding precedent since it was not an opinion of the full court. (790 Fed. App. at note *)

## V.     THERE IS NO BASIS TO DISMISS PLAINTIFF'S CLAIMS WITH PREJUDICE.

Defendants ask this court to dismiss Plaintiff's state law claims with prejudice.  Defs.' Br. 34.  This extreme sanction is entirely unwarranted. As described above, Plaintiff's claims are adequately pled and should not be dismissed at all.

"When a defendant's motion to dismiss is granted, the court should 'freely' provide the plaintiff with leave to amend its dismissed causes of action 'when justice so requires.'" *Tafuto v. New Jersey Inst. of Tech.*, No. 10-CV-4521 (PGS), 2011 WL 3163240, at *5 (D.N.J. July 26, 2011) (quoting Fed. R. Civ. P. 15(a)(2)).  As the Third Circuit has directed, "[l]iberality is the keystone." *Prof'l Cleaning and Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc.*, 245 Fed. Appx. 161, 165 (3d Cir. 2007).  "[A]n amendment should be allowed whenever there has not been undue delay, bad faith on the part of the plaintiff, or prejudice to the defendant as a result of the delay." *Ibid.*

Indeed, even in the *Tafuto* case, cited by Defendants, this court granted plaintiff leave to amend his complaint for a third time in order to restate his Title IX claims.  *Tafuto*, 2011 WL 3163240 at *5.   The court denied leave to amend, *for a third time*, Plaintiff's selective enforcement and deliberate indifference claims, because Plaintiff failed to identify a comparator—instead merely alleging that the school took complaints of plaintiff's death threats more seriously than plaintiff's complaints of sexual harassment. *Tafuto* is clearly distinguishable. Indeed, Defendants' numerous attempts to argue the underlying merits of the case clearly indicate that Plaintiff's Amended Complaint meets the necessary pleading standards. Defendants' motion should be denied in its entirety, and to the extent this Court does dismiss any of Plaintiff's claims, such dismissal should be without prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this court deny Defendants'

motion in its entirety.  Should this Court dismiss any of the claims in the Amended Complaint,

Plaintiff should be granted leave to amend.

**Dated:** **New York, New York**
**June 4, 2020**

**NESENOFF & MILTENBERG, LLP**

By: <u>/s/ Adrienne Levy</u>
Adrienne Levy, Esq.
Andrew T. Miltenberg, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
T. (212) 736-4500
alevy@nmllplaw.com
amiltenberg@nmllplaw.com

**CC:  All counsel (via ECF)**

30