<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN DOE,<br><br>                Plaintiff,<br><br>         v.<br><br>PRINCETON UNIVERSITY, et al.,<br><br>                Defendants. | Case No. 3:19-CV-07853-BRM-TJB<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

       Before this Court is a Motion to Dismiss (ECF No. 39) filed by Defendants Michele Minter, Regan Hunt Crotty, Joyce Chen Shueh, Walter Wright, Cole M. Crittenden, Kathleen Deignan, W. Rochelle Calhoun, Jill S. Dolan, Sarah-Jane Leslie (the "Individual Defendants") and the Trustees of Princeton University (the "University") (collectively, "Defendants") seeking to dismiss Plaintiff John Doe's ("Doe") Amended Complaint ("Amended Complaint" or "Am. Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6). Doe opposes the motion. (ECF No. 42.) Pursuant to Federal Rule of Civil Procedure 78(b), this Court did not hear oral argument. For the reasons set forth herein and for good cause shown, Defendants' Motion to Dismiss (ECF No. 39) is **GRANTED in part and DENIED in part**.

**I.    BACKGROUND**

      **A.    Facts Relating to the Motion to Dismiss**

       The underlying facts are set forth in the Court's February 28, 2020 Opinion. (*See* ECF No. 31). In the interest of judicial economy, the Court refers the parties to that Opinion for a full recitation of the factual background of this dispute.

### B. Procedural History

On March 5, 2019, Doe filed a complaint alleging the University and several of its administrators violated two separate claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX") and several state laws following the University's investigation and subsequent disciplinary action against Doe stemming from allegations of sexual abuse brought by Alex Roe ("Roe") against Doe. (ECF No. 1.) On July 10, 2019, Defendants moved to dismiss Doe's entire complaint for failure to state a claim. (ECF No. 18.) On August 19, 2019, Doe filed an opposition. (ECF No. 25.) On February 28, 2020, the Court dismissed both Title IX claims (Counts I and II) with prejudice[1] and denied without prejudice Defendants' motion to dismiss the state law claims. (*See* ECF Nos. 31 and 32.) The Court ordered Doe to show cause as to why the Court should not dismiss the state law claims for lack of subject matter jurisdiction. (*Id.*)[2] On March 13, 2020, Doe filed the Amended Complaint solely amending his jurisdictional allegations. (ECF No. 33-1.) Thereafter, on March 23, 2020, the Court, following review of the parties' submissions (ECF Nos. 34 and 35) concerning the Court's order to show cause (ECF No. 32), Doe's declaration (ECF No. 34-1), and the Amended Complaint (ECF No. 33-1), found it possessed subject matter jurisdiction over Doe's state law claims, and the portion of the Court's

---

[1] Doe filed a motion for reconsideration concerning the Court's dismissal of the Title IX claims which is currently pending before the Court. (*See* ECF Nos. 49, 52 and 53.) The motion for reconsideration does not impact the present motion to dismiss because the motion to dismiss involves state law analysis only.

[2] While no party challenged the Court's subject matter jurisdiction over the state claims, the Court, in recognizing its "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party," (*Hartig Drug Co. v. Senjuu Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016)), ordered Doe to show cause as to why the state claims should not be dismissed.

order (ECF No. 32) requiring Doe to show cause was discharged. (*See* ECF No. 37.) On April 6, 2020, Defendants filed a motion to dismiss the Amended Complaint seeking dismissal of Doe's state law claims. (ECF No. 39-1.) On June 4, 2020, Doe filed its opposition. (ECF No. 42.) The Court finds Doe's state law claims are now ripe for adjudication.

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability

requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### III. DECISION

Doe asserts a host of state law claims against Defendants. The Court will address each one in turn.

### A. Common Law Due Process: Fundamental Fairness in School Disciplinary Proceedings against the University (Count 3)

Defendants argue Doe's Amended Complaint fails to state a common law due process or fundamental fairness claim because: (1) there is no freestanding common law due process or fundamental fairness claim against a private university under New Jersey law as it only exists within the context of a contract claim; and (2) even if New Jersey recognized a non-contract based common law due process or fundamental fairness claim against private universities, Doe has not pled facts showing he was denied due process or that the disciplinary proceedings were fundamentally unfair. (ECF No. 39-1 at 31–33.)

Initially, the Court notes Doe's "due process" claim could be duplicative of his breach of contract claim. Indeed, a common law fundamental fairness claim based on a contractual relationship between a private university student and the university does exist under New Jersey law. *Moe v. Seton Hall University*, No. Civ. A. No. 2:09-01424, 2010 WL 1609680, at *5 (D.N.J. Apr. 20, 2010) (finding that, in context of private university student, "no traditional due process claim was viable, but the contract claim remained") (citing *Hernandez v. Don Bosco Preparatory High*, 730 A.2d 365 (N.J. Super. Ct. App. Div. 1999) and *Napolitano v. Trustees of Princeton Univ.*, 453 A.2d 263 (N.J. Super. Ct. App. Div. 1982)); *Doe v. Univ. of Scis.*, 961 F.3d 203, 216 (3d Cir. 2020) (finding university breached its contractual obligation to provide Doe fairness). The Court, however, finds Count 3 has an independent substantive basis and it will not be dismissed as duplicative at this stage. *See loanDepot.com v. CrossCountry Mortg., Inc.*, 399 F. Supp. 3d 226, 238 (D.N.J. 2019) (finding that where a claim "potentially has something to add," the court would refuse to dismiss it "as duplicative at this [motion to dismiss] stage").

Doe contends the Amended Complaint sufficiently alleges the University violated his common law due process rights to a fundamentally fair proceeding. (ECF No. 42 at 19.)

5

Specifically, Doe alleges the disciplinary process failed to comply with the University's established policies, and was one-sided and biased. (*Id.* at 20.) Doe alleges certain evidence was withheld from him including "all of the witness identities and, on information and belief, some of the witness statements and Alex Roe's own initial statement, and that no real effort was undertaken to assess Roe's credibility." (*Id.* at 21.)[3]

"A common law fundamental fairness claim based on a contractual relationship between a private university student and the university does exist under New Jersey law." *Sapp v. Premier Educ. Grp., LP*, No. CV 15-8591 (RMB/AMD), 2016 WL 6434137, at *12 (D.N.J. Oct. 28, 2016). In this context, the scope of review of the University's actions is limited to a determination of "whether the procedures followed were in accordance with the institution's rules and regulations." *Moe*, 2010 WL 1609680, at *4 (quoting *Napolitano*, 453 A.2d at 263). "In other words, a student in a private university contesting disciplinary proceedings, including expulsion, will not prevail if the university adhered to its own rules, the procedures followed were fundamentally fair, and the decision was based on 'sufficient' evidence.'" *Moe*, No. 2010 WL 1609680, at *5. Therefore, so long as the University followed its own procedures, Doe's claim will fail. *See Kimberg v. Univ. of Scranton*, 411 F. App'x 473, 481 (3d Cir. 2010); *Doe v. Princeton Univ.*, No. CV1816539, 2019 WL 161513, at *8 (D.N.J. Jan. 9, 2019); *Clayton v. Trustees of Princeton Univ.*, 608 F. Supp. 413,

---

[3] Doe further contends he was not given proper notice or an opportunity to be heard. First, with respect to notice, Doe alleges he never received a copy of Roe's initial statement or the identities of the witnesses against him. Second, with respect to an opportunity to be heard, a fundamental element of this right is the right to be heard by a neutral arbiter. According to Doe, Defendant Regan Crotty, who served as both investigator and adjudicator, was personally under pressure as Princeton's Director of Title IX Administration, to convict and severely punish males accused of sexual assault, and therefore, deprived Doe of an opportunity to be heard by a neutral arbiter. (*Id.* at 21–22.)

415 (D.N.J. 1985) (finding that, where plaintiff could not establish university "deviated from its established regulations," fundamental fairness was met – which "is all that the law requires").

The Court now turns to whether Doe has plausibly alleged the University failed to provide him fairness. Doe has alleged several violations of Princeton's Rules, Rights, and Responsibilities ("RRR"), including, *inter alia*:

    a. "The Title IX Coordinator may investigate allegations of violations of this policy even absent the filing of a formal complaint or report . . . . The Title IX Coordinator may need to proceed with an investigation even if a complainant specifically requests that the matter not be pursued." (Section 1.3.10.1 of the RRR.)

    b. "All panelists will have training in investigating and evaluating conduct prohibited under the policy. The panelists will also be impartial and unbiased." (Section 1.3.12.1 of the RRR.)

    c. "The panel will interview witnesses as necessary . . . . In all meetings, there will be a designated note taker. At the conclusion of each interview, the notes will be reviewed with the interviewee." (Section 1.3.12.1 of the RRR.)

    d. "Conduct an inquiry and determine, by a preponderance of the evidence" whether the Policy was violated." (Section 1.3.12 of the RRR.)

(*See* Am. Compl. ¶¶ 148, 150–51, 153.)

Doe alleges the University violated its own policies by failing to address Doe's report that Roe had sex with him while he was incapacitated (*id.* ¶ 148); failing to provide impartial and unbiased panelists (*id.* ¶ 150); failing to interview witnesses who could have shed light on Doe's condition, behavior, and statements in the hours immediately following the alleged assault, despite

7

Doe's express requests for them to do so (*id.* ¶ 51); and failing to conduct a genuine inquiry and interview potentially exculpatory witnesses (*id.* ¶ 153).

The Court finds the Amended Complaint sufficiently asserts the University failed to adhere to its own rules. *Univ. of Scis.*, 961 F.3d at 215 (providing that where Doe alleges the university failed to conduct an investigation in a meaningful way, including failing to make a fair and equitable inquiry into credibility determinations, Doe plausibly alleged the university "deprived him of fairness"). Because Doe has sufficiently alleged the University failed to follow its own procedures during the disciplinary proceedings, the Court concludes Doe has stated a claim for denial of his right to fundamental fairness. *See Sapp*, 2016 WL 6434137, at *12.

Accordingly, Defendants' Motion to Dismiss Count 3 is **DENIED**.

**B. Breach of Contract against the University (Count 4), Breach of Implied Contract/ Quasi Contract against the University (Count 5), and Breach of Implied Covenant of Good Faith and Fair Dealing against the University (Count 6)**

Defendants contend Doe has failed to allege the University failed to follow the terms of RRR and therefore breached its contract with Doe. Defendants argue: (1) the RRR is not a binding, strictly enforceable contract; and (2) Doe has not pled facts that, if true, would show that the University violated the particular provisions of the RRR on which Doe relies—let alone that the University substantially violated the RRR, as is required under New Jersey law. (ECF No. 39-1 at 18–20.) According to Defendants, the allegations show the University more than "substantially complied" with the RRR. (*Id.* at 23.) Doe contends the Amended Complaint sufficiently alleges an express contractual agreement existed between Doe and the University. (ECF No. 42 at 10.) According to Doe, "[i]n exchange for Plaintiff's enrollment and tuition, Princeton agreed to provide an education and confer a degree upon Plaintiff's completion of the degree requirements and compliance with Princeton's other policies. These policies are set forth in the RRR, which

8

Princeton disseminates each year." (*Id.* at 10–11.) Doe alleges several breaches of the University's RRR, including: (i) failure to address Doe's report that Roe had sex with him while he was incapacitated (Am. Compl. ¶ 148); (ii) failure to investigate Doe's report of Roe possibly kissing a drunk female student without proper consent (*id.*); (iii) failure to sufficiently investigate concerns raised by Doe's sister, in the Fall of 2018, that Roe had been stalking her (*id.*); (iv) deliberate failure to set forth the date the complaint was first received, and failure to provide Doe a copy of the initial complaint (*id.* ¶ 149); (v) on information and belief, failure to properly train the panelists, who were partial and biased (*id.* ¶150); (vi) failure to interview any of Doe's neighbors as to what they may have seen or heard on the night in question (*id.* ¶ 151); (vii) failure to provide Doe with all of the witness statements and evidence against him (*id.* ¶ 152); (viii) failure to "conduct an inquiry and determine, by a preponderance of the evidence" whether the Policy was violated (*id.* ¶ 153); and (ix) failure to take into account the appropriate factors in issuing the sanction (*id.* ¶ 154). (ECF No. 42 at 14–15.)

Under New Jersey law, "a cause of action exists for breach of contract when the plaintiff can demonstrate that there exists '[a] valid contract, defective performance by the defendant, and resulting damages.'" *Zelnick v. Morris town-Beard Sch.*, 137 A.3d 560, 566 (N.J. Sup. Ct. Law. Div. 2015) (quoting *Coyle v. Englander's*, 488 A.2d 1083 (N.J. Super. Ct. App. Div. 1985)). New Jersey courts, however, have cautioned that "the relationship between the university and its students should not be analyzed in purely contractual terms." *Mittra v. Univ. of Med. & Dentistry of N.J.*, 719 A.2d 693, 694 (N.J. Super. Ct. App. Div. 1998); *Mucci v. Rutgers*, No. CIV. 08-4806, 2011 WL 831967, at *19 (D.N.J. Mar. 3, 2011). "While recognizing that the tuition paid by the student in order to be educated at a university may in some circumstances be considered contractual consideration," New Jersey courts have "nevertheless emphasized the necessity for

independence of a university in dealing with the academic failures, transgressions or problems of a student." *Romeo v. Seton Hall Univ.*, 875 A.2d 1043, 1049 (N.J. Super. Ct. App. Div. 2005) (citation omitted). New Jersey courts have rejected "a rigid application of contractual principles to university-student conflicts" and have limited a court's "scope of review to a determination whether the procedures followed were in accordance with the institution's rules and regulations." *Mittra*, 719 A.2d at 697; *Behne v. Union Cty. Coll.*, No. CV146929, 2018 WL 566207, at *7 (D.N.J. Jan. 26, 2018). The Court finds Doe has pled sufficient facts required to survive a Rule 12(b)(6) motion. Doe has plausibly alleged the existence of a contract between the University and Doe. Doe has also plausibly alleged the University breached that contract. *See Doe v. Princeton Univ.*, 2019 WL 161513, at *9.

Accordingly, Defendants' Motion to Dismiss Count 4 is **DENIED**.

The Court now turns to Doe's breach of implied contract and breach of the covenant of good faith and fair dealing claims. Defendants argue Doe has failed to allege a breach of implied contract claim because Doe has not pled facts showing any "tacit understanding" between himself and the University. (ECF No. 39-1 at 28.) Doe contends he has sufficiently alleged that the conduct of the parties "implies a tacit understanding to be bound by the terms of the RRR." (ECF No. 42 at 16.)

The elements of an implied-in-fact contract are the same as the elements of an express contract: "consideration, mutual assent, legal capacity, and legal subject matter." *Demodulation, Inc. v. Applied DNA Scis., Inc.*, No. 2:11-CV-00296, 2014 WL 12857171, at *11 (D.N.J. June 11, 2014) (citation omitted). The parties' conduct may manifest assent, and "a promise may be implied when a court may justifiably infer that the promise would have been explicitly made, had attention been drawn to it." *Id.*; *see Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635, 644 (3d Cir. 1998).

Defendants argue Doe has failed to allege a breach of an implied covenant of good faith and fair dealing because (1) there is no enforceable contract between the University and Doe and (2) even if a contractual relationship existed between the University and Doe that could give rise to a claim for breach of an implied covenant of good faith and fair dealing, such a claim would fail because it is redundant of Doe's contract claim. (ECF No. 39-1 at 30.) Doe argues he sufficiently alleged breach of the covenant of good faith and fair dealing because he alleges the University performed its contractual obligations in bad faith. Specifically, according to Doe, the University's gender bias during the course of the investigation "would implicate violation of the covenant of good faith." (ECF No. 42 at 17–18.)

Under New Jersey law, "every contract in New Jersey contains an implied covenant of good faith and fair dealing." *Wade v. Kessler Inst.*, 778 A.2d 580, 584 (N.J. Super. Ct. App. Div. 2001), *aff'd as modified*, 798 A.2d 1251 (N.J. 2002); *Sons of Thunder, Inc. v. Borden*, 690 A.2d 575, 587 (N.J. 1997) (same). Indeed, [t]he implied covenant is an independent duty and may be breached even where there is no breach of the contract's express terms." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000) (citing *Sons of Thunder*, 690 A.2d at 575). While there is no universally-accepted test for establishing a breach of the duty of good faith and fair dealing, "two elements appear to recur with some frequency: (1) the defendant acts in bad faith or with a malicious motive, (2) to deny the plaintiff some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract." *Yapak, LLC v. Massachusetts Bay Ins. Co.*, No. CIV. 3:09-CV-3370, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009) (citing *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assos.*, 864 A.2d 387 (N.J. 2005)). In addition, "in the absence of a contract, there can be no breach of an implied

11

covenant of good faith and fair dealing." *Collick v. William Paterson Univ.*, No. 16-471 , 2016 WL 6824374, at *9 (D.N.J. Nov. 17, 2016); *Wade*, 778 A.2d at 586.

Here, because Doe's breach of implied contract/quasi contract claim and breach of the covenant of good faith and fair dealing claims rely on the same set of sufficiently pled facts as the breach of contract claim, these claims will not be dismissed. *See Moe*, 2010 WL 1609680, at *5 (permitting breach of contract claim, breach of quasi-contract claim, breach of implied contract claim, and breach of the covenant of good faith and fair dealing claim to proceed against private university); *Doe*, 2019 WL 161513, at *9 (finding that, because Doe's breach of the covenant of good faith and fair dealing claim relied on the same set of sufficiently pled facts as Doe's breach of contract claim, the court would also deny dismissal of the breach of covenant of good faith and fair dealing claim).

Finally, Defendants argue even if the contract theories are valid, they should be dismissed because Doe has been given a fair procedure. (*See* ECF No. 39-1 at 31.) Doe alleges otherwise and points to specific defects in the disciplinary proceeding. At this stage, that is all Doe must do. *Moe*, 2010 WL 1609680, at *5.

Accordingly, Defendants' Motion to Dismiss Counts 4, 5, and 6 is **DENIED**.

### C. Negligence against all Defendants (Count 7) and Respondeat Superior against the University (Count 8)

Defendants argue Doe's negligence claim fails because: (1) it is barred by New Jersey's Charitable Immunity Act, N.J. Stat. Ann. § 2A:53A-7(a) (the "NJCIA"); (2) neither the University nor the Individual Defendants owed a duty of care to Doe; and (3) even if such a duty existed, Doe has failed to sufficiently allege any breach of that duty. (*See* ECF No. 39-1 at 11–17.) Doe contends Defendants owed Doe a duty of care and breached that duty of care. (ECF No. 42 at 23.) Further,

Doe argues the NJCIA does not warrant dismissal because it does not protect against Defendants' gross negligence. (*Id.* at 28.)

>The NJCIA provides:
>>No nonprofit corporation . . . organized exclusively for . . . educational purposes or its trustees, directors, officers, employees, agents, servants or volunteers shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation . . . .

N.J. Ann. Stat. § 2A:53A–7.

The NJCIA, however, does not confer immunity for "damage by a willful, wanton or grossly negligent act of commission or omission." N.J.S.A. 2A:53A-7(c). "[A]n entity qualifies for charitable immunity when it . . . was promoting [religious, charitable, or educational] objectives and [for non-profit] purposes at the time of the injury to plaintiff who was then a beneficiary of the charitable works." *O'Connell v. State*, 795 A.2d 857, 860 (N.J. 2002) (internal quotation marks and citation omitted). This "involves two inquiries": (1) "whether the organization pleading the immunity, at the time in question, was engaged in the performance of the objectives it was organized to advance," and (2) "whether the injured party was a direct recipient of those good works." *Green v. Monmouth Univ.*, 206 A.3d 394, 403 (N.J. 2019) (internal quotation marks and alterations omitted). Under the first inquiry, New Jersey courts "have found a broad variety of activities offered by educational institutions to advance their educational objectives." *Id.* at 406. Under the second inquiry, a student "engaging in educational pursuits" is "per se a beneficiary" of a university. *O'Connell*, 795 A.2d at 861 (quoting G*raber v. Richard Stockton Coll. of N.J.*, 713 A.2d 503, 507 (N.J. Super. Ct. App. Div. 1998)).

13

The Court in *Lax v. Princeton University*, 779 A.2d 449 (2001), found the University to be devoted to educational purposes and therefore entitled to immunity under the NJCIA. *Shaw v. Femenella & Assocs.*, No. CIV.03-5895, 2005 WL 3320757, at *4 (D.N.J. Dec. 7, 2005) ("It is undisputed that Princeton is a non-profit corporation organized exclusively for educational purposes."). Here, Doe concedes "[a]t all relevant times herein, Plaintiff was an enrolled undergraduate student at Princeton University." (Am. Compl. ¶ 16.). Therefore, because Doe's Amended Complaint "recognized that he was benefiting from the educational program at University during the time of [Doe's] allegations," his negligence claim against the University fails.[4] *Doe*, 2018 WL 2396685, at *8–9.[5] Doe's negligence claim against the Individual

---

[4] Doe's argument the Amended Complaint makes no mention of Princeton's founding nor its particular organization and therefore "does not establish Princeton or its employees as qualified entities under the NJCIA" is misplaced. (ECF No. 42 at 27.) The NJCIA is an affirmative defense, and as such, Defendants bear the burden of persuasion. Defendants have established that they meet the criteria of the NJCIA. *Mottola v. City of Union City*, Civ. A. No. 05-CV-3964, 2006 WL 2177405, at *2 (D.N.J. July 31, 2006). Indeed, it is undisputed that the University is a private educational institution and Doe himself concedes he was a student at the University at all relevant times. (*See* ECF No. 33-1 ¶ 16.) Therefore, the University is entitled to immunity under the NJCIA.

[5] Moreover, in *Doe v. Princeton Univ.*, 790 F. App'x 379, 387 (3d Cir. 2019), the Third Circuit specifically discussed the NJCIA in the context of the University's investigation and adjudication of sexual assault complaints:

> Princeton recognizes the harm of sexual misconduct, and, to further its educational mission, Princeton prohibits sexual misconduct within its community, investigates the claims, and disciplines violators. As a student, Doe is a beneficiary of these protections and procedures. Princeton thus is immune from a negligence claim arising from its investigation and adjudication of Doe's sexual assault complaint.

Here, Doe was a beneficiary of Princeton's "protections and procedures" and as such, under the NJCIA, the University is immune from a negligence claim arising from its investigation and subsequent disciplinary action taken against Doe. *See id.* (citing *Green*, 206 A.3d at 403).

14

Defendants also fails. *See Mason v. Roman Catholic Archdiocese of Trenton*, No. Civ. 1810733, 2019 WL 1320299, at *6 (D.N.J. Mar. 22, 2019) (determining the NJCIA applied to individual actors expressly referenced in the statute).

Regarding Doe's gross negligence theory—which would remove Defendants from protection of the immunity under the NJCIA—Doe contends, among other things, the University failed to properly train its employees, had improper motives, refused to address withheld/missing evidence and failed to conduct a genuine review and give Doe's claim due consideration and analysis. (ECF No. 42 at 28.) However, merely using phrases such as "gross negligence," does not mean the factual allegations support such a claim. *Lindstrom v. St. Joseph's Sch. for the Blind, Inc.*, No. CV 15-8084, 2016 WL 5723658, at *10 (D.N.J. Sept. 30, 2016). Here, given the totality of the allegations and giving Doe the benefit of every favorable inference (as this Court must when resolving a Rule 12(b)(6) motion), the Court finds Doe's allegations do not sound in something more than mere negligence.

Accordingly, Defendants' Motion to Dismiss Count 7 is **GRANTED**.

Finally, Doe alleges "[The University as] the employer for Defendants Minter, Crotty, Shueh, Wright, Crittenden, Deignan, Calhoun, Dolan, and Leslie, [] is vicariously responsible for the negligent acts of its employees committed during the course of their employment." (ECF No. 33-1 at ¶ 245.) Defendants argue because Doe's negligence claim against the Individual Defendants is deficient as a matter of law, Doe's respondeat superior claim against the University also fails. (ECF No. 39-1 at 18.) Doe argues he has sufficiently alleged a claim for respondeat superior against the University. (ECF No. 42 at 23.)

The Court finds because both the University and the Individual Defendants are immune under the NJCIA, the respondeat superior claim necessary fails. *See Bartlett v. Push To Walk*, No.

15

2:15-CV-7167, 2018 WL 1726262, at *2–7 (D.N.J. Apr. 10, 2018) (finding issue of respondeat superior "moot" where exculpatory clause precluded suit against either employer or employee based on claims of negligence); *V.A. ex rel., M.A. v. New Jersey Nat. Guard Youth Challenge Program*, Civ. A. No. 06-347, 2007 WL 2010940, at *4 (D.N.J. July 9, 2007) (recognizing that where immunity attached, the entity would be "immune from vicarious liability under the doctrine of *respondeat superior* for [employee's] conduct"); *Nazzaro v. United States*, 304 F. Supp. 2d 605, 612 (D.N.J. 2004); *Rivera v. Alonso*, No. Civ. A. 88-5529, 1989 WL 124959, at *4 (D.N.J. Oct. 18, 1989).

Accordingly, Defendants' Motion to Dismiss Count 8 is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**. Specifically, Defendants' Motion to Dismiss Counts 3, 4, 5, and 6 is **DENIED**, and Defendants' Motion to Dismiss Counts 7 and 8 is **GRANTED** and **DISMISSED WITHOUT PREJUDICE**. An appropriate order follows.

Dated: December 16, 2020

                                                */s/ Brian R. Martinotti*
                                                **BRIAN R. MARTINOTTI**
                                                **UNITED STATES DISTRICT JUDGE**