**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN DOE,**<br><br>                    Plaintiff,<br><br>        v.<br><br>**PRINCETON UNIVERSITY,** *et al.*,<br><br>                    Defendants. | Civil Action No. 19-7853 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

      Presently, before the Court is a Motion to Dismiss filed by Defendants Princeton University ("Princeton" or "the University"), Michele Minter ("Minter"), Regan Hunt Crotty ("Crotty"), Joyce Chen Shueh ("Shueh"), Walter Wright ("Wright"), Cole M. Crittenden ("Crittenden"), Kathleen Deignan ("Deignan"), W. Rochelle Calhoun ("Calhoun"), Jill S. Dolan ("Dolan"), and Sarah-Jane Leslie ("Leslie") (hereinafter collectively referred to as "Defendants"[1]) seeking to dismiss Plaintiff John Doe's ("Doe") Title IX claims pursuant to Federal Rule 12(b)(6). (ECF No. 73.)  Defendants filed a brief in support of their Motion to Dismiss. ("Moving Br.", ECF No. 73-1).  Doe opposed and referenced the previous memorandum of law in opposition.  ("Opp'n Br.", ECF No. 68).  Defendants filed a Reply.  ("Reply Br.", ECF 75).

      The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons set forth below, Defendants' Motion to Dismiss will be DENIED.

---

[1] The individual Defendants remain listed in the case caption and thus are referenced herein, however, the claims against the individual Defendants were dismissed in the Court's February 28, 2020 Opinion and corresponding Order. (ECF No. 55.)

I.      **BACKGROUND AND PROCEDURAL HISTORY**

In the interest of judicial economy, the Court refers the parties to the facts and procedural history set forth in the February 28, 2020 Opinion. (ECF No. 31, *Doe v. Trustees of Princeton Univ.*, Civ. No. 31907853, 2020 WL 967860 (D.N.J. Feb. 28, 2020)) ("February 2020 Opinion"). The Court will recount the relevant portions herein and will also incorporate the relevant background set forth in the February 2020 Opinion. *Id.*

On February 28, 2020, this Court issued an Opinion that (1) granted in part Defendants' Motion to Dismiss with prejudice as to Doe's Title IX claims of the Amended Complaint (Counts I–II) and (2) denied without prejudice Defendants' Motion to Dismiss as to Doe's state law claims (Counts III–VIII). *Id.* at 14.

On October 7, 2020, Doe filed a Motion for Reconsideration of the Court's February 2020 Opinion. (ECF No. 49.) On December 17, 2020, the Court granted Doe's Motion for Reconsideration, and vacated its prior dismissal of Title IX Claims (Counts I and II).[2] (ECF No. 56.) On April 26, 2021, Defendants filed a Renewed Motion to Dismiss the remaining Title IX claims of the Amended Complaint. (ECF No. 73.)[3]

Doe has not filed another Amended Complaint. Accordingly, the Court will rely upon the allegations alleged in the First Amended Complaint ("FAC") (ECF No. 33) and will assume such allegations to be true.

---

[2] On May 29, 2020, the Third Circuit adopted a new pleading standard for Title IX claims, which the Court found to be an intervening change in controlling law. *See Doe v. Univ. of Sciences*, 961 F.3d 203, 209 (3rd Cir. 2020).
[3] On February 5, 2021, Defendants filed a Motion to Dismiss. (ECF No. 65.) On April 9, 2021, the Court administratively terminated Defendants' Motion to Dismiss, and provided that the Motion will be active when "all briefs have been exchanged between the parties." (ECF No. 71.)

    **A.   The February 2020 Opinion**

In response to Defendants' Motion to Dismiss, the Court granted in part Defendants' Motion to Dismiss with respect to Doe's Title IX claims. Guided by the previously held pleading standard, the Court identified Doe's two separate Title IX claims as an "erroneous outcome" claim and a "selective enforcement" claim. 2020 WL 967860 at *5. While the Court outlined the legal pleading standards for each claim, the Court primarily reasoned that Doe's Title IX claims do not sufficiently show that "any of his negative treatment occurred on the basis of Doe's sex." *Id*. Specifically, the Court stated,

> Absent from Doe's complaint is mention of any statements or conduct by administrators involved in Doe's discipline specifically suggesting any gender bias. Nor does Doe allege any facts showing the disciplinary outcomes in cases like Doe's vary by sex. Doe's allegation that the University "has engaged in a pattern of unfair investigations and adjudications resulting in serious sanctions being imposed on male students, while not making comparable efforts with respect to allegations of sexual violence and abusive conduct made against non-male students" (ECF No. 1 ¶ 178), standing alone, is "too 'generalized' and 'conclusory' to raise an inference of" gender bias.

*Id*. at *8 (internal citations omitted). The Court noted that, "[n]ot all of Doe's allegations are too generalized or conclusory, but the facts alleged therein do not demonstrate the plausibility of Doe's claim that the University acted against Doe because of his sex." *Id*. at *9. First, the Court explained that Doe's argument and furnishing of survey results which highlighted that a "significantly more male students than female students believe the University does not hold perpetrators of sexual misconduct accountable," is not demonstrative of gender bias because "a disparity in student perception by sex does not equate with a disparity in disciplinary outcomes because of sex." *Id*. (internal citations omitted). Next, the Court rejected Doe's argument that the University was under pressure to comply with Title IX, because "pressure to comply with Title IX does not equate with a failure to comply with Title IX." *Id*. (internal citations omitted). Lastly,

3

the Court explained that Doe cannot rely upon his allegation that the "University faced a Title IX investigation for offering self-defense classes to women but not men because nothing in the complaint demonstrates this disparate treatment extended to Doe's disciplinary proceeding." *Id*. The Court held that while "Doe points to irregularities in his disciplinary proceedings," and has "thoroughly detailed the problems he alleges plagued his disciplinary process, none of Doe's allegations show sex is the reason for these shortcomings." *Id*. at *10.

## II.  LEGAL STANDARD

### A.  Motion to Dismiss

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  When considering a motion under 12(b)(6), a district court must accept as true the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  A court is, however, permitted to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009).  A court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler*, 578 F.3d at 211.

### B.  Title IX Claim

Title IX of the Education Amendments of 1972 states that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving [f]ederal financial assistance." 20 U.S.C. § 1681(a).  "This provision, which is enforceable through an implied private right of action, was enacted to supplement the Civil Rights Act of 1964's bans on racial discrimination in

4

the workplace and in universities." *Doe v. Columbia Univ.*, 831 F.3d 46, 53 (2d Cir. 2016) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714-15 (2d Cir. 1994)); *see A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 805 (3d Cir. 2007). Title IX "bar[s] the imposition of university discipline when sex is a motivating factor in the decision to discipline." *Univ. of Sciences*, 961 F.3d at 209 (quoting 831 F.3d at 53 (2d Cir. 2016)).

In *Univ. of Sciences*, this Circuit explicitly held that, "to state a claim under Title IX, the alleged facts, if true, must support a plausible inference that a federally-funded college or university discriminated against a person on the basis of sex." 961 F.3d at 209. In accordance with the Seventh Circuit, this Circuit directs district courts to ask, "more directly: do the alleged facts, if true, raise a plausible inference that the university discriminated against [the student] 'on the basis of sex'?" *Id.* (citing *Doe v. Purdue Univ.*, 928 F.3d 652, 667–68 (7th Cir. 2019)).

### III. DISCUSSION

As a preliminary matter, federal courts have original jurisdiction over cases presenting federal questions. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.") In the instant matter, Plaintiff asserts two federal causes of action: Title IX of the Education Amendments of 1972 (Count I) and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. (Count II).

#### C. Decision Documents

Alongside Defendants' Motion to Dismiss, Defendants have submitted Exhibits B-E.[4] Doe argues that Defendants' Exhibits are documents outside the pleadings and should not be reviewed

---

[4] Exhibit B: University's Sexual Misconduct Panel Decision Letter dated May 25, 2018; Exhibit C: Title IX Panel Memorandum ("Panel Memo") sent to Doe as an attachment to Exhibit B; Exhibit D: Doe's Appeal to the Appeals Panel dated June 8, 2018; Exhibit E: Appeals Panel's Decision dated June 26, 2018 (collectively referred to as "Decision Documents")

by the Court. (Opp'n Br. at 15.) Specifically, Doe opposes the Court's review of the Panel Memo. (*Id.*)

When evaluating a complaint under Rule 12(b)(6), district courts are sometimes confronted with whether it should consider documents outside of the pleadings and, if so, whether the court may disregard the well-pled facts of a complaint in favor of facts in an external document. Generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). But when a document is "integral to or explicitly relied upon in the complaint," it "may be considered without converting the motion to dismiss into one for summary judgment" under Rule 56. *Id.*

Doe argues that because the Panel Memo contains Princeton's findings and conclusions and not the underlying evidence it should not be considered to prove the truth of the matters asserted therein. (Opp'n Br. at 15.) In support, Doe cites to other judicial decisions that have held that a court's reliance on a school's investigation report to refute the allegations of a pleading is improper on a Rule 12(b)(6) Motion. *Id.* Defendants argue that the Court can consider the Decision Documents because Doe relies on the documents throughout the Amended Complaint. (Reply Br. at 12; e.g., FAC ¶¶ 127–128, 134.) Defendants encourage this Court to examine the February 2020 Opinion, where the Court provided that,

> [T]he Third Circuit has held that a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56. Specifically, courts may consider any "document integral to or explicitly relied upon in the complaint."

(internal citations omitted) 2020 WL 967860 at *2. After a careful review of the FAC, the Court finds that the Decision Documents were relied upon and referenced throughout the FAC. (*See*

6

FAC ¶¶ 114–141.) Doe even concedes that this Circuit permits review of documents referenced in the pleadings when ruling on a Rule 12(b)(6) Motion. (Opp'n Br. at 18.) Therefore, review of the Decision Documents is appropriate, however, consideration only goes so far. When the truth of facts in the Decision Documents are contested by the well-pleaded facts of Doe's FAC, the facts in the FAC will prevail. 961 F.3d at 210; 30 F. 4th at 343 (finding it improper when the District Court noted that the Pane's credibility determinations were supported by sufficient evidence because that finding contradicted Doe's assertion that the Panel rendered inconsistent credibility determinations).

### A. Title IX Claim:

To state a claim under Title IX, Doe must allege facts that, if true, support a plausible inference that Princeton discriminated against him based on his sex. *Univ. of Sciences*, 961 F.3d at 209. While Doe is "free to characterize [his] claims however [he] wish[es]," he alleges facts to support his allegation under the following categories: (1) external pressure, (2) disparate treatment, (3) selective enforcement, and (4) the instant facts mirror the facts in *Univ. of Sciences*. *Id.*

#### i. *External Pressure*

First, Doe argues that Princeton was under pressure to aggressively prosecute and severely punish men accused of sexual misconduct. (FAC ¶¶ 45, 61, 67, 71, 75; Opp'n Br at 20.) In the Renewed Motion, Defendants argue that Doe's allegations of "pressure" to address sexual assault do not sufficiently allege gender-biased decision-making by the University. (Moving Br. at 23.) Defendants argue that while Doe cites to series of general guidance documents, including "DoEd—FAQs, Q&As, and Dear Colleague Letters, as well as a 2014 Resolution Agreement ...," Doe cannot rely on such allegations alone. (*Id.*; FAC ¶¶ 32-80.) Defendants rely on *Univ. of Sciences*, and reiterate that, "allegations about pressure from DoEd and the 2011 Dear Colleague

7

Letter cannot alone support a plausible claim of Title IX sex discrimination." *Id*.; 961 F.3d at 210. Insofar as Doe cannot rely on the instant allegations concerning "external pressure," the Court finds that Doe's allegations go beyond the arguments outlined in *Univ. of Sciences*. In *Univ. of Sciences*, the plaintiff alleged that "USciences, in its implementation and enforcement of the Policy, succumbed to pressure from the federal government." 961 F.3d at 209. And that, "after the United States Department of Education ("DoEd") issued the 2011 Dear Colleague USciences limited procedural protections afforded to male students in sexual misconduct cases." *Id*. Here, Doe argues that Princeton was under additional pressure for its years of failure to address claims of sexual assault and harassment allegedly committed by male students and faculty. (FAC ¶ 61.) Doe outlines a timeline of Princeton's failure to adequately respond to allegations of assault. (FAC ¶¶ 69–76.) Doe specifically cites to a survey that found that, "the percentage of male students who believe that Princeton does not hold perpetrators of sexual misconduct accountable for their actions was nearly double the percentage of female students who felt that way." (FAC ¶ 77.) Nonetheless, Defendants argue that even if the University adopted a general practice of being biased against male students accused of sexual assault in efforts to comply with DoE, this alone is insufficient to support a plausible inference of gender bias. (Moving Br. at 26.)

In accordance with the Third Circuit, "allegations about pressure from DoEd and the 2011 Dear Colleague Letter cannot alone support a plausible claim of Title IX sex discrimination," *See Purdue Univ.*, 928 F.3d at 669, however, this Court finds that Doe's allegations are relevant because it factors into the "total mix" of information supporting a plausible Title IX discrimination claim. *See Univ. of Sciences*, 961 F.3d at 210.

8

## *ii. Disparate Treatment*

Next, Doe argues that there were numerous instances of disparate treatment in his disciplinary process that uniformly benefitted Alex Roe ("Roe"). (Opp'n Br. at 24.) Doe alleges that (1) the Title IX Panel presumed Roe to be credible from the start, (2) did not conduct a proper investigation, and (3) made determinations that conflicted with actual evidence. (FAC ¶¶ 7, 134, 153(c), 177(a), 194(d).) Concerning credibility, Doe argues that Roe made many inconsistent statements throughout the investigation, and thus the Panel's determination that Roe was more credible than Doe was improper. (Opp'n Br. at 25.) From November 2017 through February 2018, Doe alleges that Roe told different stories concerning the alleged assault. (FAC ¶¶ 106, 121, 134,153(c).) Further, Doe alleges that Roe's account of the events changed throughout her interviews with the Title IX Panel. (FAC ¶121.) Defendants argue that "Doe's and Roe's different accounts forced the Panel to undertake the "difficult" task of making credibility determinations as between their two stories." (Moving Br. at 6.) But, based on corroborating evidence, the Panel credited Roe's account. (*Id*. at 7.) Therefore, Defendants argue that Doe's series of speculative arguments are based critically on his disagreement with the University's evidentiary determinations, rather than allegations which support a showing of gender bias. (Moving Br. at 21.)

In alleging an improper investigation, Doe alleges that the Title IX Panel did not seek or produce surveillance footage and did not interview any of Doe's neighbors. (FAC ¶¶ 177(j)-(k), 178(f), 196(f).) Doe pleads that the Panel declined to interview any of the people Doe was with in the hours immediately following the alleged assault and chose solely to rely on the witnesses who had no personal knowledge and who merely repeated Roe's narrative of events. (FAC ¶ 177(b).) Defendants argue that the Panel conducted a thorough investigation, including

9

interviewing eight witnesses in addition to Doe and Roe, and conducted a review of electronic evidence. (Reply Br. at 8.)

Moreover, Doe pleads that the Panel made determinations that conflicted with actual evidence. (FAC ¶ 177(a).) Specifically, Doe argues that the Panel improperly interpreted the proxy card and door records as supporting Roe's story and contradicting his, even though the timing of the records contradicted Roe's timeline and the records were equally consistent with Doe's proffered explanations for the records. (FAC ¶ 134.) Albeit Doe's detailed allegations, Defendants argue that the alleged procedural "flaws" are insufficient to show that the determination was the result of gender bias, (Moving Br. at 20), and encourage this Court to examine the Court's February 2020 Opinion, in which the Court noted that, "[a]lthough Doe has thoroughly detailed the problems he alleges plagued his disciplinary process, none of Doe's allegations show Doe's sex is the reason for these shortcomings." 2021 WL 194806, at 7.

### iii. Selective Enforcement

Doe also claims that Princeton selectively enforced its policies as to male students versus non-male students, and specifically ignored reports of numerous policy violations by Roe. (FAC ¶ 194; Opp'n Br. 27.) A selective-enforcement claim asserts that, "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceedings was affected by the student's gender." *Yusuf*, 35 F.3d at 715.

Doe alleges that he notified Princeton's Title IX administrator, Crotty, of the Roe's possible violations of Princeton's sexual misconduct policy. (FAC ¶ 120.) Doe told Crotty that on one occasion when he was drinking with some friends, he became severely intoxicated and acted inebriated by sitting on the ground crying and friends bringing him water. (FAC ¶ 93.) Following this intoxicated night, Doe alleges that, "when he woke up the next morning, Roe was in his bed."

10

(*Id*.) Doe provides that he had no memory of "going to bed with Roe," and "numerous witnesses saw Roe pursuing Doe while he was extremely intoxicated and incapacitated by alcohol." (*Id*.) Additionally, Doe told Crotty that Roe had a pattern of engaging in sexual activity with intoxicated students and alleges that that Roe bragged to him about hooking up with a "drunk" female student who "may have been questioning her sexuality." (FAC ¶ 97.) Doe argues that Princeton was on notice of Roe's continued violations of Princeton's policy but choose to ignore them. (Opp'n Br. at 28.) Further, Doe alleges that Princeton insufficiently responded to reports that Roe was harassing and stalking Doe's sister, another Princeton student. (FAC ¶ 194.)

Defendants argue that Doe does not sufficiently allege a policy violation by Roe. (Moving Br. at 29.) Defendants stipulate that Doe only alleges that he once woke up next to Roe after an intoxicated night but does not allege that any sexual activity took place while he was asleep. *Id*. Ultimately, Defendants contend that Doe's allegations concerning selective enforcement are conclusory and do not allege specific facts demonstrative of gender bias. (*Id*.)

### iv. University of the Sciences

Doe argues that the instant facts mirror the factual allegations raised in *Univ. of Sciences*. (Opp'n Br. at 29.) Defendants argue that the allegations are materially different than those found sufficient to sustain a Title IX claim. (Moving Br. at 28.)

In *Doe v. University of Sciences*, this Circuit found that the filed complaint contained plausible allegations supporting the reasonable inference that the University discriminated against the plaintiff on account of his sex. 928 F.3d at 209. Particularly, in *Univ. of Sciences*, the plaintiff alleged that, "USciences yielded to external pressure when implementing and enforcing the Policy," and secondly alleged "that sex was a motivating factor in USciences's investigation and decision to impose discipline." *Id*. In addition to raising allegations concerning pressure from

DoEd and the 2011 Dear Colleague Letter, plaintiff contended that, the University was motivated by sex when it chose to investigate him but not investigate three female students who allegedly violated the University's policy. *Id*. at 210. Critically, the plaintiff alleged selective enforcement when the University failed to consider the alcohol consumption of the plaintiff and the participating female student when both parties engaged in sexual activity. *Id*. Plaintiff alleged that despite him, and the other female student having consumed the same number of alcoholic drinks, the University identified plaintiff as the initiator of sexual activity, and did not similarly consider the female student in violation of the University's policy. *Id*.

Additionally, the plaintiff alleged selective enforcement when the University failed to investigate two female students who allegedly breached the University's confidentiality provision by colluding with each other about the investigation concerning the Plaintiff. *Id*. at 211.

Defendants argue that Doe's allegations are substantially different than the allegations alleged in *Univ. of Sciences* because (1) Doe did not explicitly allege that any sexual activity took place while he was incapacitated, (Moving Br. at 29), and that (2) Doe never filed a formal complaint (Reply Br. at 2). The Court is unpersuaded by Defendants' arguments that the instant matter is substantially different than the one alleged in *Univ. of Sciences*. In *Univ. of Sciences*, the plaintiff never filed a formal complaint before the school concerning the three women's alleged Policy violations, but Plaintiff alleged that the University was on notice of the women's' alleged Policy violations. *Id*. at 211. Thus, the plaintiff alleged that the University enforced the Policy against him alone because of his sex. *Id*. Similarly here, Doe never filed a formal complaint before Princeton, but Crotty was on explicit notice of Roe's possible Policy violations because Doe told Crotty during one of his interviews. Likewise, in *Univ. of Sciences*, the plaintiff alleged that notwithstanding the comparable intoxication of both participants, the University determined him

to be the initiator of sexual activity because of his gender. *Id*. at 210. Here, Doe contends that the Panel interpreted the proxy card and door records as supporting Roe's story and contradicting his, notwithstanding that the records were equally consistent with Doe's proffered explanations for the records. (FAC ¶ 134.)

In *Doe v. Purdue*, outside of the Dear Colleague Letter, the court found that plaintiff had alleged other circumstantial evidence of bias. The court explained that the case against the plaintiff boiled down to a "he said/she said" and the University was tasked with deciding who to believe. 928 F.3d 652, 669 (7th Cir. 2019). The court found the University's decision to credit the alleged victim recount of events over the plaintiff's raised a plausible inference of gender bias because of greatest weight, Purdue's Dean of Students and Title IX Coordinator had not even spoken directly with the alleged victim. *Id*. at 669. Furthermore, the Advisory Committee panel members did not (1) read the investigative report, (2) talk to plaintiff, and (3) did not hear from plaintiff's witnesses, including his male roommate who maintained that he was in the room at the time of the alleged assault and that Jane's rendition of events was false. *Id*. Moreover, within the same month plaintiff was disciplined, the University's center advertised to its community an article from The Washington Post titled "Alcohol isn't the cause of campus sexual assault. Men are." *Id*. Taken together, the court found that plaintiff had raised a plausible inference that he was denied a benefit on the basis of his sex. *Id*. at 670. Here, the Court finds itself in a similar posture, as Doe's alleged Policy violation boils down to a "he said/she said," and Princeton was tasked with deciding who to believe.

Drawing all reasonable inferences in the light most favorable to Doe, as we must at this stage, it is plausible that sex was a motivating factor in Princeton's investigation and disciplinary decision of Doe. The Court gives its greatest weight to the fact that Doe explicitly shared with

13

Crotty of an occasion when following an intoxicated night Roe, Doe alleges that, "when he woke up the next morning, Roe was in his bed." (FAC ¶ 93.)  Doe provided to Crotty that he had no memory of "going to bed with Roe," and "numerous witnesses saw Roe pursuing Doe while he was extremely intoxicated and incapacitated by alcohol." *Id*.  Said differently, if Roe had made such allegations to Crotty, would Princeton consider the allegations in the same way it did when Doe made them. At this stage of the litigation, this is unclear.  Nonetheless, although Princeton suggests another explanation for why it treated the alleged violations differently, anti-male bias is still a plausible explanation.  And we must construe the facts in the light most favorable to Doe at this stage. *See Phillips v. Cnty. of Allegheny*, 515 F.3d, 224, 233 (3d Cir. 2008).

Doe plausibly alleges that Princeton enforced the Policy against him alone because of his sex.  When Doe's allegations of disparate treatment and selective enforcement are combined with his allegations related to external pressure and the similarities between this matter and the facts alleged in *Univ. of Sciences*, the Court concludes that he states a plausible claim of sex discrimination.  928 F.3d at 209; *See Purdue*, 928 F.3d at 668–70.

### IV.     <u>CONCLUSION</u>

For the reasons stated above, the Court will deny Defendants' Motion to Dismiss.  An appropriate Order will follow.

Date: **February 6, 2023**

                                        s/ Zahid N. Quraishi
                                        **ZAHID N. QURAISHI**
                                        **UNITED STATES DISTRICT JUDGE**